1  Clyde DeWitt
   California State Bar No. 117911
2  Law Offices of Clyde DeWitt,
        A Professional Corporation
3  2800 28th Street, Suite 321
   Santa Monica, CA 90405-6201
4  (310) 392-2600
   Fax (310) 362-8667
5  *clydedewitt@earthlink.net*

6  Counsel for Plaintiff, Seven Cities Enterprises, Inc.

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11  SEVEN CITIES ENTERPRISES, INC.,        Case Number 5:08-CV-01563-JW

12        Plaintiff                         Hon. James Ware

13  v.                                      **NOTICE OF MOTION AND
                                            MOTION FOR A PRELIMINARY
14                                          AND PERMANENT INJUNCTION**

15  CITY OF SALINAS,                        Date: September 8, 2008
                                            Time: 9:00 a.m.
16        Defendant                         Courtroom: 8

17                                          1. NOTICE OF MOTION;

18                                          2. [PROPOSED] ORDER;
                                            3. MEMORANDUM OF POINTS AND AUTHORITIES;
19                                          4. DECLARATION OF WILLIAM H. ANDRUS;
                                            5. DECLARATION OF JAMES VOCELKA; AND
20                                          6. DECLARATION OF CLYDE DEWITT.

21      TO ALL COUNSEL AND PARTIES OF RECORD:

22      PLEASE TAKE NOTICE that on Monday, the 8th day of September, 2008, at 9:00

23  AM, or as soon thereafter as the matter can be heard, before Hon. James Ware, in Courtroom

24  Number 8, Fourth Floor, 280 South First Street, San Jose, CA 95113, Plaintiff will bring a

25

26

27

28
   K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-008-p-Notice Mot Injunc.wpd    **Page 1**

   **NOTICE OF MOTION AND MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1  motion and hereby moves for an order, in substantially the form of the Proposed Order

2  submitted herewith, for a preliminary injunction and a permanent injunction.[1]

3       In support of said motion, Plaintiff offers the following:

4       1.      This Notice;

5       2.      The supporting Memorandum of Points and Authorities, filed herewith;

6       3.      The [Proposed] Order, submitted herewith;

7       4.      The Declaration of William H. Andrus, filed herewith;

8       5.      The Declaration of James Vocelka, filed herewith; and

9       6.      The Declaration of Clyde DeWitt, filed herewith.

10 along with any arguments and evidence that may be presented in connection with any reply

11 papers to be filed and at the hearing on this motion.

12 Dated: July 3, 2008.                          Respectfully Submitted,

13                                               CLYDE DeWITT
                                                 LAW OFFICES OF CLYDE DeWITT, APC
14

15

16 By: _____
                                                 Clyde DeWitt
17                                               Counsel for Plaintiff
                                                 Seven Cities Enterprises, Inc.
18

19

20

21

22

23

24 _____

25 [1]      Plaintiff has concurrently filed a motion seeking to consolidate the hearing on
the Motion for Preliminary Injunction with final trial.  If that motion is not granted, this
26 motion will be reduced to one seeking only a preliminary injunction.

27 _____

28 K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-008-p-Notice Mot Injunc.wpd    **Page 2**

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1

## PROOF OF SERVICE BY FEDERAL EXPRESS

2

[Pursuant to Calif. Code of Civil Procedure § 1013a(3)
and Fed.R.Civ.P. 5]

3

4      I am a resident of and/or employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action. I work at the Law Offices of Clyde DeWitt, located at 2800 28th Street, Suite 321, Santa Monica,

5      California 90405-6201.

6      I am readily familiar with this law firm's practice for mailing with Federal Express and, in the ordinary course of business, any correspondence delivered to our firm's mail room

7      employee(s) for the purpose of being sent through Federal Express is routinely deposited with Federal Express on the same day.

8

9      On the date shown below, I served the foregoing document on the interested parties in this action, by placing a true copy thereof enclosed in a Federal Express envelope/pak/box, with postage thereon fully prepaid, and either: (1) personally delivering it to our firm's mail

10     room employee(s) for deposit with Federal Express pursuant to our firm's ordinary business practice; or (2) personally depositing such correspondence directly with Federal Express,

11     addressed as follows:

12     **Vanessa Vallarta, Esq.**
       **City Attorney**

13     **Georgina B. Mendoza, Esq.**
       **Deputy City Attorney**

14     **200 Lincoln Avenue**
       **Salinas, CA 93901**

15

16     I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

17     Executed on July 3, 2008.

18

19     _____

20                      Clyde DeWitt

21

22

23

24

25

26

27

28     K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-008-p-Notice Mot Injunc.wpd    **Page 3**

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1  Clyde DeWitt
   California State Bar No. 117911
2  Law Offices of Clyde DeWitt,
        A Professional Corporation
3  2800 28th Street, Suite 321
   Santa Monica, CA 90405-6201
4  (310) 392-2600
   Fax (310) 362-8667
5  *clydedewitt@earthlink.net*

6  Counsel for Plaintiff, Seven Cities Enterprises, Inc.

7
                IN THE UNITED STATES DISTRICT COURT
8
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
                        SAN JOSE DIVISION
10

11  SEVEN CITIES ENTERPRISES, INC.,          Case Number 5:08-CV-01563-JW

12          Plaintiff                        Hon. James Ware

13  v.                                       **[PROPOSED] PRELIMINARY
                                             INJUNCTION AND [PROPOSED]
14  CITY OF SALINAS,                         PERMANENT INJUNCTION**

15          Defendant                        Date: September 8, 2008
                                             Time: 9:00 a.m.
16                                           Courtroom: 8

17                                           1. NOTICE OF MOTION;

18                                           2. [PROPOSED] ORDER;
                                             3. MEMORANDUM OF POINTS AND AUTHORITIES;
19                                           4. DECLARATION OF WILLIAM H. ANDRUS;
                                             5. DECLARATION OF JAMES VOCELKA; AND
20                                           6. DECLARATION OF CLYDE DEWITT.

21         Plaintiff's Application for a Preliminary Injunction is GRANTED. Therefore, until

22  this Court enters a final judgment herein, the Defendant City of Salinas, its officers,

23  employers and agents, and anyone working in concert with any of them, are hereby enjoined

24  from enforcing Section 37-50.020 of the Salinas Municipal Code, entitled, "Adult

25

26

27

28

1  entertainment facilities," against Plaintiff, its officers, directors, owners, employees, agents,

2  successors or anyone acting in concert with any of them.

3        Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the Court dispenses

4  with the requirement of any security on the grounds that (1) the high probability of success

5  on the merits favors exercising the Court's discretion to dispense with such security, (2) it

6  appears unlikely that the defendant municipal corporation would incur any significant cost

7  or damages as a result of the injunction, and (3) to require a bond would have a negative

8  impact on Plaintiff's constitutional rights, as well as the constitutional rights of members of

9  the public.

10        On or before the ___ day of _____, 2008, Plaintiff is ordered to file and

11  serve proposed findings of fact and conclusions of law as required by Rule 52(a) of the

12  Federal Rules of Civil Procedure. If Defendant has any objections to any of Plaintiff's

13  proposed findings of fact and/or conclusions of law or wishes to propose additional findings

14  of fact and/or conclusions of law of its own, such objections and/or additional proposed

15  findings of fact and/or conclusions of law shall be filed and served on or before the ___ day

16  of _____, 2008. If Plaintiff has any objections to any findings of fact and/or

17  conclusions of law proposed by Defendant, such objections shall be filed and served on or

18  before the ___ day of _____, 2008.

19        Signed this ___ day of _____, 2008.

20

21                                UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

**[PROPOSED] PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**

1

## PERMANENT INJUNCTION

2       Plaintiff's Application for a Permanent Injunction is GRANTED.  Therefore, the

3  Defendant City of Salinas, its officers, employers and agents, and anyone working in concert

4  with any of them, are hereby enjoined from enforcing Section 37-50.020 of the Salinas

5  Municipal Code, entitled, "Adult entertainment facilities," against Plaintiff, its officers,

6  directors, owners, employees, agents, successors or anyone acting in concert with any of

7  them.

8       On or before the ___ day of _____, 2008, Plaintiff is ordered to file and

9  serve proposed findings of fact and conclusions of law as required by Rule 52(a) of the

10  Federal Rules of Civil Procedure.  If Defendant has any objections to any of Plaintiff's

11  proposed findings of fact and/or conclusions of law or wishes to propose additional findings

12  of fact and/or conclusions of law of its own, such objections and/or additional proposed

13  findings of fact and/or conclusions of law shall be filed and served on or before the ___ day

14  of _____, 2008.  If Plaintiff has any objections to any findings of fact and/or

15  conclusions of law proposed by Defendant, such objections shall be filed and served on or

16  before the ___ day of _____, 2008.

17       Thereafter, the Court will enter final judgment.  This is a permanent injunction but not

18  a final judgment.

19       Signed this ___ day of _____, 2008.

20

21                                      ‾UNITED STATES DISTRICT JUDGE‾

22

23

24

25

26

27  _____

28  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-009-p-Injunc - Proposed Order.wpd **Page 3**

**[PROPOSED] PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**

1  Prepared and Respectfully Submitted on July 3, 2008,

2                                      CLYDE DeWITT
                                       LAW OFFICES OF CLYDE DeWITT, APC
3

4                                      By: _____
5                                             Clyde DeWitt

6                                      Counsel for Plaintiff
                                       Seven Cities Enterprises, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**

1

## PROOF OF SERVICE BY FEDERAL EXPRESS

2

[Pursuant to Calif. Code of Civil Procedure § 1013a(3)
and Fed.R.Civ.P. 5]

3

4    I am a resident of and/or employed in the County of Los Angeles, State of California.
I am over the age of eighteen years and not a party to the within entitled action. I work at the
5    Law Offices of Clyde DeWitt, located at 2800 28th Street, Suite 321, Santa Monica,
California 90405-6201.

6    I am readily familiar with this law firm's practice for mailing with Federal Express
and, in the ordinary course of business, any correspondence delivered to our firm's mail room
7    employee(s) for the purpose of being sent through Federal Express is routinely deposited
with Federal Express on the same day.

8

9    On the date shown below, I served the foregoing document on the interested parties
in this action, by placing a true copy thereof enclosed in a Federal Express envelope/pak/box,
with postage thereon fully prepaid, and either: (1) personally delivering it to our firm's mail
10   room employee(s) for deposit with Federal Express pursuant to our firm's ordinary business
practice; or (2) personally depositing such correspondence directly with Federal Express,
11   addressed as follows:

12   **Vanessa Vallarta, Esq.**
     **City Attorney**
13   **Georgina B. Mendoza, Esq.**
     **Deputy City Attorney**
14   **200 Lincoln Avenue**
     **Salinas, CA 93901**

15

16   I declare under penalty of perjury under the laws of the United States and the State
of California that the foregoing is true and correct.

17   Executed on July 3, 2008.

18

19

20   Clyde DeWitt

21

22

23

24

25

26

27

28

**[PROPOSED] PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**

1  Clyde DeWitt
   California State Bar No. 117911
2  Law Offices of Clyde DeWitt,
          A Professional Corporation
3  2800 28 th Street, Suite 321
   Santa Monica, CA 90405
4  Fax (310) 362-8667
   *clydedewitt@earthlink.net*
5
   Attorneys for Plaintiff, Seven Cities Enterprises, Inc.
6

7           IN THE UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                    SAN JOSE DIVISION

10

11  SEVEN CITIES ENTERPRISES, INC.,          Case Number 5:08-CV-01563-JW

12        Plaintiff,                         Hon. James Ware

13  v.                                       **MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT OF
14  CITY OF SALINAS,                         MOTION FOR PRELIMINARY AND
                                             PERMANENT INJUNCTION AND
15        Defendant.                         MOTION TO CONSOLIDATE
                                             HEARINGS ON (1) MOTION FOR
16                                           PRELIMINARY INJUNCTION AND
                                             (2) MOTION FOR PERMANENT
17                                           INJUNCTION**

18                                           Date: September 8, 2008
                                             Time: 9:00 a.m.
19                                           Courtroom: 8

20                                           1. NOTICE OF MOTION;
                                             2. [PROPOSED] ORDER;
21                                           3. MEMORANDUM OF POINTS AND AUTHORITIES;
                                             4. DECLARATION OF WILLIAM H. ANDRUS;
22                                           5. DECLARATION OF JAMES VOCELKA; AND
                                             6. DECLARATION OF CLYDE DEWITT.
23

24

25

26

27  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd    **Page 1**

28        MEMORANDUM OF POINTS AND AUTHORITIES
   IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

1

# TABLE OF CONTENTS

2

Pages

3 TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

4 TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

5 BACKGROUND AND SUMMARY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

6 FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

7       PLAINTIFF'S BUSINESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

8       THE CITY'S ZONING ORDINANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

9 ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

10    I.     PLAINTIFF SEEKS ONLY INJUNCTIVE RELIEF, AND ASKS

11            THAT THE HEARING ON THIS MOTION FOR PRELIMINARY

12            INJUNCTION BE CONSOLIDATED WITH TRIAL . . . . . . . . . . . . . . .  10

13    II.    PLAINTIFF IS OVERWHELMINGLY LIKELY TO PREVAIL ON

14            THE MERITS OF THIS CONSTITUTIONAL CHALLENGE TO THE

15            CITY'S ZONING ORDINANCE, BECAUSE IT LACKS THE

16            PROCEDURAL SAFEGUARDS CLEARLY REQUIRED OF ANY

17            SUCH LICENSING SCHEME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

18    III.   THE ABRIDGEMENT OF FIRST AMENDMENT RIGHTS

19            INHERENTLY CONSTITUTES IRREPARABLE INJURY, AND

20            THE BALANCE OF HARDSHIPS FAVORS INJUNCTIVE RELIEF

21            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

22 CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**
i

1

## TABLE OF AUTHORITIES

2

Pages

3

U.S. SUPREME COURT CASES

4

5  *City of Los Angeles v. Alameda Books, Inc.*,
       535 U.S. 425, 122 S.Ct. 1728 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6  *City of Renton v. Playtime Theatres, Inc.*,
       475 U.S. 41, 106 S.Ct. 925 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13
7

8  *Elrod v. Burns*,
       427 U.S. 347, 373-74, 96 S.Ct. 2673 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9  *Forsyth County v. Nationalist Movement*,
       505 U.S. 123, 112 S.Ct. 2395 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
10

11 *Freedman v. State of Maryland*,
       380 U.S. 51, 85 S.Ct. 734 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

12 *FW/PBS, Inc. v. City of Dallas*,
       493 U.S. 215, 110 S.Ct. 596 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
13

14 *Lakewood v. Plain Dealer Publishing Co.*,
       486 U.S. 750, 108 S.Ct. 2138 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

15 *Riley v. National Federation of Blind of N.C., Inc.*,
       487 U.S. 781, 108 S.Ct. 2667 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
16

17 *Young v. American Mini Theatres, Inc.*,
       427 U.S. 50, 96 S.Ct. 2440 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18

19

FEDERAL CASES

20

21 *801 Conklin Street Ltd. v. Town of Babylon*,
       38 F.Supp.2d 228 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

22 *CR of Rialto, Inc. v. City of Rialto*,
       975 F.Supp. 1254 (C.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17
23

24 *Dease v. City of Anaheim*,
       826 F.Supp. 336 (C.D. Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

25

26

27   K.\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd    **Page ii**

28

*Diamond v. City of Taft*,
    29 F.Supp.2d 633 (E.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gaudiya Vaishnava Soc'y v. City of San Francisco*,
    952 F.2d 1059 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Glacier Park Foundation v. Watt*,
    663 F.2d 882 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Hickerson v. City of New York*,
    997 F.Supp. 418 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lady J. Lingerie v. City of Jacksonville*,
    176 F.3d 1358 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mga Susu, Inc. v. County of Benton*,
    853 F.Supp. 1147 (D. Minn. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15-17

*Michenfelder v. Sumner*,
    860 F.2d 328 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*One-Eyed Jack, Inc. v. City of Daytona Beach*,
    165 F. Supp.2d 1322 (M.D. Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Price v. City of Stockton*,
    390 F.3d 1105 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Santa Fe Springs Realty Corp. v. City of Westminster*,
    906 F.Supp. 1341 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CALIFORNIA CASES

*Vo v. City of Garden Grove*,
    115 Cal.App.4th 425 (4th Dist. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

STATUTES

Fed. R. Civ. Proc. 65(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

SMC § 37-50.020(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

SMC § 37-50.020(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

SMC § 37-50.020(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SMC § 37-50.020(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**
iii

1    SMC § 37-50.020(b)(5-6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2    SMC § 37-50.02(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3    SMC § 37-50.160(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4    SMC § 37-50.160(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5    SMC § 37-60.520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6

MISCELLANEOUS

7

*http://municipalcodes.lexisnexis.com/codes/salinas/* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## BACKGROUND AND SUMMARY

Plaintiff owns and operates an adult book and video store in the City of Salinas. This case arises from the collision between Plaintiff's need to expand his business and the City's unconstitutional zoning regulations applicable to adult book and video stores.

Like most local governments, the City of Salinas has adopted provisions in its zoning regulations, restricting the location of "adult" or "sexually oriented" businesses.[1] Most significantly, these regulations prohibit locating such business in close proximity to residential zones and to "sensitive uses," such as schools and churches. Such ordinances have become common following a series of decisions of the United States Supreme Court, beginning in 1976, when the Court approved a Detroit ordinance requiring that such businesses be dispersed.[2] A decade later, the Court approved a Renton, Washington ordinance requiring separation from residential zones.[3] More recently, the Court has required more careful scrutiny of such ordinances.[4] However, the validity of Salinas' regulations under the time, place, or manner framework of analysis developed in these cases is not the primary issue here at this juncture.

Rather, the issue arises from the prior-restraint character of Salinas' ordinance. These zoning provisions allow adult businesses in only two zones. In either zone, the City's approval is required. As detailed below, such required approvals amount to licenses; and

---

[1]    In the parlance of the Salinas Municipal Code ("SMC"), the regulated businesses are "adult entertainment facilities." SMC § 37-50.020(b)(2). The Salinas Municipal Code is available online: *http://municipalcodes.lexisnexis.com/codes/salinas/*.

[2]    *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

[3]    *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

[4]    *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002).

1  there are stringent constitutional limitations for licensing requirements for adult businesses,

2  as spelled out in a line of Supreme Court cases culminating in *FW/PBS v. City of Dallas*.[5]

3  There, the Court squarely held that  licensing requirements for expressive adult businesses

4  are presumptively invalid, but could be valid if the licensing requirement (1) vests no

5  discretion in the licensor, and (2) includes brief and definite time limits by which the licensor

6  must issue or deny an application, along with allowing a  rejected applicant an adequate

7  avenue to obtain timely judicial review of the licensor's ruling.  As detailed below, each of

8  Salinas' zoning districts in which an adult business is permitted has an approval requirement

9  for adult businesses that runs afoul of these requirements from *FW/PBS* and a number of

10  related decisions.

11      Plaintiff's business has been operating at its present location for decades, going back

12  to at least the 1980s, if not earlier, but assuredly prior to Salinas' enactment of its special

13  zoning requirements for adult businesses.  Like most local zoning codes, Salinas' ordinance

14  includes a so-called "grandfather" clause, allowing existing businesses to continue to operate

15  notwithstanding enactment of zoning amendments that would prohibit a new business of the

16  same character at its location.  Plaintiff's business is a beneficiary of the grandfather

17  provisions found in Salinas' zoning regulations.

18      As with most grandfather provisions, Salinas' code prohibits expansion of a non-

19  conforming use.  It is in this regard that the Plaintiff has encountered the constitutional

20  problems with Salinas' adult-zoning regulations.

21      Plaintiff purchased the subject business in early 2005.  Analyzing the traffic in the

22  business, Plaintiff's management learned that the demand exceeded the supply with respect

23  to on-premise previewing of the videos.  That is perhaps no surprise since, insofar as Plaintiff

24

25      [5]    *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107

26  L.Ed.2d 603 (1990).

27  K.\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd      **Page 3**

28

1  is aware, this business is the only adult book and video store that ever has existed in Salinas,

2  and no other one exists anywhere near Salinas.

3      Upon the Plaintiff's application to expand, the City took the position that doing so

4  would violate the no-expansion clause of the grandfather provisions of the zoning ordinance,

5  as the business was not situated in either of the two zoning districts in which adult businesses

6  were permitted. The other stated reason for the denial was that there was inadequate parking.

7  As to the latter, Plaintiff will settle for whatever expansion the parking limitations will

8  accomplish and, should that be insufficient, then Plaintiff would seek to open a second

9  location in Salinas so that, in total, the supply will be sufficient to service the demand.

10

11                                  **FACTS**

12  **Plaintiff's business**

13      In early 2005, Plaintiff acquired an adult book and video store known as "L'Amour,"

14  located in a commercial zone in the City of Salinas. The business has two components. The

15  first is a retail section, where customers can purchase an array of prerecorded adult DVDs,

16  magazines, books, and related products, and can rent DVDs. This is much like an X-rated

17  version of Blockbuster, with other related products for sale. The other component consists

18  of a dozen private viewing areas where customers can privately view any one or more of

19  scores of adult motion pictures. This section is available to assist customers in making

20  purchase/rental selections (a preview function, of sorts) and to allow customers to view adult

21  motion pictures without taking them home, primarily to accommodate customers who do not

22  wish to bring such motion pictures home, for example because of the presence of children

23  at home.

24      After acquiring the business, Plaintiff significantly upgraded it. The quantity and

25  variety of inventory were vastly increased, and the private viewing areas were upgraded so

26

27  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd    **Page 4**

28

1    as to be more modern, more attractive, and with improved functionality, primarily allowing

2    a considerable increase in selection.  Having accomplished these upgrades, Plaintiff learned

3    that the demand for the business' products and services exceeded the supply.  As to the retail

4    component of the business, increased inventory reasonably accommodated the surprisingly

5    increased demand.  However, as to the viewing areas, the only available solution was to

6    increase their number.

7        Some explanation of how these viewing areas operate is required here.  These areas

8    are small cubicles, roughly four feet by six feet, designed and operated so as to serve only

9    one customer at a time.  Inside, there is a large television monitor, a selector switch and a

10   bill-acceptor, like the ones in vending machines.  A small television monitor allows the

11   customer to flip through the scores of movies from which the customer may choose by way

12   of the selector switch.

13       Significantly, these cubicles are akin to office cubicles in terms of manufacturing.

14   Like office cubicles, they are manufactured off site, and then assembled on site.  Thus, they

15   fit the description of business fixtures, rather than construction, presumably not requiring a

16   building permit for installation.[6]  However, whereas no one would ever think about obtaining

17   a building permit prior to installing office cubicles, adult businesses invariably are subject

18   to more exacting scrutiny than other businesses, and the City has taken the position that a

19   building permit was required.[7]

20       Believing that no permit was required, Plaintiff went forward and installed some

21   additional viewing cubicles in a vacant portion of the building.  Upon learning of this, the

22   _____

23       [6]    Unquestionably, electrical permits would be required for any additional
     junction boxes that would be required to accommodate the electrical needs of the viewing
24   mechanisms.

25       [7]    Apparently, the City's Uniform Building Code contains a provision requiring a
     building permit for installation of any movable partition that is over 59 inches high, a provision that
26   evidently is observed for the most part in the breach.

27   K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd    **Page 5**

28       **MEMORANDUM OF POINTS AND AUTHORITIES**
     **IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1  City issued an order to comply, taking the positions (1) that a building permit was required

2  and (2) that the portion of the building in which the new viewing areas were located could

3  not be used as part of an adult business because it had been leased for a period of time to a

4  tenant that operated an office use there, thus extinguishing the grandfather rights for that

5  portion of the building.  After a dialogue between the City and Plaintiff's representatives, in

6  which the City suggested that the new viewing areas be installed in an area of the business

7  that had consistently been used as part of an adult business, Plaintiff engaged an architect,

8  one James Vocelka, to prepare and submit a building permit application.

9       After the application was submitted, the City presented Plaintiff and Mr. Vocelka with

10  a list of required, relatively straightforward corrections, none of which involved either zoning

11  or parking.[8]  He responded with a corrected application, addressing each of the deficiencies

12  identified by the City.  The City responded with a second deficiency list, listing two

13  additional issues – zoning and parking – both of which would have been equally obvious

14  from the first application.

15       Based on Mr. Vocelka's expertise, he believes the parking issue can be addressed with

16  a re-configuration of the parking lot.  If that solution does not facilitate compliance with the

17  parking requirement, then a reduction in the number of additional booths is the alternative.

18  Should the latter be the case, Plaintiff would add whatever number of booths is permissible

19  given the parking situation.  Failing that, Plaintiff plans to search for an additional location

20  in Salinas sufficient to accommodate the demand.

21

22

23

24

─────────────────

25  [8]    There is nothing unusual about this.  Most every application for a building

26  permit in any city is met with a list from the plan checker of required corrections in the plans.

27

28

1  **The City's zoning ordinance**

2          The City regulates what the municipal code identifies as "Adult Entertainment

3  Facilities."    Pursuant to Salinas Municipal Code ("SMC") § 37-50.020(b)(1), Plaintiff's

4  business is an "Adult Bookstore" because "[t]wenty percent or more of the establishment's

5  stock, books, magazines, or other periodicals or films are devoted to 'specified sexual

6   activities' or 'specified anatomical areas'"[9] (materially all of it is so devoted), and "[t]wenty

7  percent or more of the establishment's films, peepshows, or other similar devices designed

8  for individual viewing on the premises by up to five persons are devoted to 'specified sexual

9  activities' or 'specified anatomical areas'" (they all are).

10          "Adult Entertainment Facilities" are defined in SMC § 37-50.020(b)(2) to specifically

11  include "Adult Bookstores," along with some other categories of sexually oriented

12

13

14   _____

15          [9]        Those two terms are defined in SMC § 37-50.020(b)(5-6) as follows:

16                 "(5) Specified Anatomical Areas.

17                         "(A) Less than completely and opaquely covered human
                        genitals, human buttocks, and human female breast
                        below a point immediately above the top of the areola;
18                      and

19                         "(B) Human male genitals in a discernibly turgid state,
                        even if completely and opaquely covered.

20                     "(6) Specified Sexual Activities.

21
                          "(A) Human genitals in a state of sexual stimulation or
22                       arousal;

23                         "(B) Sexual intercourse, masturbation, oral copulation, or
                        sodomy, whether between humans of the same or
24                      opposite sex or between humans and animals; and

25                         "(C) Fondling or other erotic touching or sexual
                        stimulation of human genitals, pubic region, buttock, or
26                      female breast."

27   K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd    **Page 7**

28

1  businesses, none of which apply here.[10]  Plaintiff's adult book and video store is an "Adult

2  Bookstore" as defined in SMC § 37-50.020(b)(1) – the only such business within the city

3  limits of Salinas.

4  Plaintiff's adult book and video store was in operation in its current configuration

5  prior to the City's enactment of any of the above regulations applicable to "Adult

6  Bookstores."  Thus SMC § 37-50.160(b)(1) applies: "A use, lawfully occupying a structure

7  or a site on the effective date of the ordinance codified in this chapter, or of amendments

8  thereto, that does not conform with the use regulations for the district in which it is located

9  or the applicable lot area per dwelling unit regulations shall be deemed a nonconforming

10  use. Nonconforming uses may only be continued subject to the requirements of this division."

11  Plaintiff's adult book and video store therefore is a lawful nonconforming use

12  because, after the business was established, the City amended its zoning ordinance to prohibit

13  adult entertainment businesses in the zoning district where L'Amour's adult book and video

14  store is located.  SMC § 37-50.160(b)(3) states, "No nonconforming use shall be enlarged

15  or extended to occupy any part of a structure or site that it did not occupy on the effective

16  date of the ordinance codified in this chapter, or of the amendments hereto that cause it to

17  become a nonconforming use."

18  According to SMC § 37-50.020(c)(3), "An adult entertainment facility shall only be

19  permitted where the applicable zoning district regulations specifically provide for adult

20  entertainment facilities," i.e., a new adult bookstore is not permitted in any zoning district

21  other than ICG and IG.

22

23

———————————————

24  [10]  For example, L'Amour is not an "Adult Live Entertainment Establishment" as
defined in SMC § 37-50.020(b)(3) because it offers no live entertainment, and it is not an
25  "Adult Motion Picture Theater" as defined in SMC § 37-50.020(b)(4) because its motion
pictures are never presented to an audience of five or more, as the private viewing areas are
26  limited to one person per screen.

27

28

1    In an IG zoning district, a new adult bookstore is permitted, but only if it acquires a

2 conditional use permit.  SMC § 37-60.520 requires that the City must make the following

3 findings before it will issue a conditional use permit:[11]

4    "The city planner or planning commission, as applicable, shall approve

5    an application for a conditional use permit as it was applied for or in modified

6    form if, on the basis of the application and testimony submitted, all of the

7    following findings can be made:

8    "(a) That the proposed location of the use *is in accordance with the objectives*

9    *of the Salinas general plan, this Zoning Code, and the purposes of the district*

10    *in which the site is located*;

11    "(b) That the proposed location of the conditional use and the proposed

12    conditions under which it would be operated or maintained are consistent with

13    the Salinas general plan and will *not be detrimental to the public health, safety,*

14    *or welfare of persons residing or working in or adjacent to the neighborhood*

15    *of such use, nor detrimental to properties or improvements in the vicinity or*

16    *to the general welfare of the city; and*

17    "(c) That the proposed conditional use complies with the provisions of this

18    Zoning Code, including any specific conditions required for the proposed use."

19    In an ICG zoning district, a new adult bookstore is permitted, but only subject to a

20 "site plan review," as defined in SMC.  However, nowhere does the SMC  set forth any brief

21 and certain time limits either (a) by which either an application for site plan approval must

22

23

24

25 _____

26    [11]    Emphasis added.

27 K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd    **Page 9**

28 **MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1 | be granted or denied, or (b) by which a conditional use permit application must be granted

2 | or denied.[12]

3

4 | **ARGUMENT**

5 | The City of Salinas' adult zoning regulations are facially unconstitutional in two

6 | regards. First, the conditions that must be met to obtain a conditional use permit, i.e. the

7 | findings the City must make under SMC § 37-60.520, subsections (a) and (b), afford the

8 | licensor constitutionally impermissible discretion in deciding whether to issue the conditional

9 | use permit. Second, the City's ordinances contain no time limits within which the City must

10 | grant or deny the conditional use permit required for an IG location, or must complete the

11 | requisite site plan review for location in an ICG zoning district. In both regards, the City's

12 | zoning code lacks the procedural safeguards the Supreme Court reaffirmed in the adult-

13 | business regulation context in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct.

14 | 596, 608, 107 L.Ed.2d 603 (1990).

15

16 | I. **Plaintiff seeks only injunctive relief, and asks that the hearing on this**

17 | **motion for preliminary injunction be consolidated with trial.**

18 | Plaintiff in this case seeks only injunctive relief, and suggests that the preliminary

19 | injunction hearing might best be consolidated with a final adjudication of the ordinance's

20 | constitutionality.

21 | "To obtain a preliminary injunction, Plaintiffs must show a likelihood of success on

22 | the merits and a possibility of irreparable injury, or that there are serious questions as to the

23 | merits and the balance of hardships tips in their favor." *Price v. City of Stockton*, 390 F.3d

24

25 | [12]    Attachment "d" to the Declaration of Clyde DeWitt includes the SMC

26 | provisions procedures for a site plan review.

27 |

28 |

1  1105, 1109 (9th Cir. 2004). A prima facie showing that the challenged provisions are

2  probably unconstitutional is the gravamen a case for preliminary injunction here, as

3  irreparable injury is then presumed given that First Amendment rights are at stake. *See 801*

4  *Conklin Street Ltd. v. Town of Babylon*, 38 F.Supp.2d 228, 235 (E.D.N.Y. 1999). Of course,

5  upon the court's determination that these provisions are in fact unconstitutional, a permanent

6  injunction should issue. *See Mga Susu, Inc. v. County of Benton*, 853 F.Supp. 1147, 1154 (D.

7  Minn. 1994).

8          This facial challenge to the City's ordinance involves no material factual dispute. The

9  ordinance says what it says; the City certainly is in no position to dispute the facts of the

10  situation concerning the location of the adult business based upon its extensive dealing with

11  it and inspection of it. Also, there is no right to a jury trial, given that only equitable relief

12  is sought.

13          Accordingly, this case is a poster child for invocation of the provision in Fed. R. Civ.

14  Proc. 65(a)(2), allowing the hearing of an application for a preliminary injunction to be

15  consolidated with final trial:

16          "(2) **Consolidating the Hearing with the Trial on the Merits.** Before

17          or after beginning the hearing on a motion for a preliminary injunction, the

18          court may advance the trial on the merits and consolidate it with the hearing.

19          Even when consolidation is not ordered, evidence that is received on the

20          motion and that would be admissible at trial becomes part of the trial record

21          and need not be repeated at trial. But the court must preserve any party's right

22          to a jury trial."

23          The Ninth Circuit has squarely approved application of this rule, essentially holding

24  that the straightforward language of the rule speaks for itself. *Michenfelder v. Sumner*, 860

25  F.2d 328, 337 (9th Cir. 1988). "Such action may be taken by stipulation, motion, or even *sua*

26

27  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd     **Page 11**

28
          MEMORANDUM OF POINTS AND AUTHORITIES
    IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION
                                    11

1   *sponte* so long as the procedures do not result in prejudice to either party." *Glacier Park*

2   *Foundation v. Watt*, 663 F.2d 882, 886 (9th Cir. 1981). Here, Plaintiff's motion is both for

3   a preliminary injunction and final adjudication. To afford the defendant the required,

4   reasonable notice and opportunity to prepare, Plaintiff has filed a separate motion to

5   consolidate the hearing on this motion with final trial under Rule 65(a)(2), leaving sufficient

6   time between the two hearings for the City to prepare, although its preparation for a

7   preliminary injunction hearing would seem identical to its preparation for final trial.

8

9   **II.    Plaintiff is overwhelmingly likely to prevail on the merits of this constitutional**

10           **challenge to the City's zoning ordinance, because it lacks the procedural**

11           **safeguards clearly required of any such licensing scheme.**

12           The City's adult zoning provisions are unconstitutional on their face, under principles

13   the Supreme Court has announced at the intersection of the First Amendment and Due

14   Process. These provisions entail two cardinal flaws: they lack brief, certain time limits

15   within which the City must act upon an application, and they vest impermissible discretion

16   to the licensing authority, which may deny a license under amorphous criteria. The courts

17   have uniformly invalidated such laws under the First Amendment, because they open the

18   door to censorship at the whim of the licensing authority.

19           Plaintiff's plans for expanding this expressive business could proceed in two different

20   ways. Depending upon the parking situation, Plaintiff will increase the number of viewing

21   areas it offers, and/or search for a second location – whatever it takes to accommodate

22   customer demand. However, the City's adult zoning ordinance is an impediment to either

23   option. Where, as here, an adult-business entrepreneur faces an ordinance creating an

24

25

26

27

28

1  unconstitutional impediment to the operation of an adult business, a challenge such as this

2  one is an available remedy.[13]

3      In *FW/PBS v. City of Dallas*, the Court invalidated certain provisions of an adult

4  business licensing ordinance, under a long line of its First Amendment/prior restraint

5  decisions.  The Court thus made clear that these rules, first announced in *Freedman v. State*

6  *of Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), apply to impose First

7  Amendment and Due Process limits upon the licensing of adult businesses such as Plaintiff's.

8          "While [p]rior restraints are not unconstitutional per se, any system of

9      prior restraint comes to this Court bearing a heavy presumption against its

10     constitutional validity." *Southeastern Promotions, Ltd. v. Conrad,* [] 420 U.S.

11     at 558, 95 S.Ct. at 1246. . . . Our cases addressing prior restraints have

12     identified two evils that will not be tolerated in such schemes.  First, a scheme

13     that places "unbridled discretion in the hands of a government official or

14     agency constitutes a prior restraint  and may result in censorship." *Lakewood*

15     *v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 2143, 100

16     L.Ed.2d 771 (1988). . . . "It is settled by a long line of recent decisions of this

17     Court that an ordinance which makes the peaceful enjoyment of freedoms

18     which the Constitution guarantees contingent upon the uncontrolled will of an

19     official – as by requiring a permit or license which may be granted or withheld

20     in the discretion of such official – is an unconstitutional censorship or prior

21     restraint upon the enjoyment of those freedoms." *Shuttlesworth [v.*

22     *Birmingham],* 394 U.S. at 151, 89 S.Ct. at 938-39.        S e c o n d ,  a  p r i o r

23     restraint that fails to place limits on the time within which the decisionmaker

24     must issue the license is impermissible. . . .  In *Freedman*, we addressed a

25  _____

26     [13]    *See, e.g., City of Renton v. Playtime Theatre*, *supra*.

27  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd    **Page 13**

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

motion picture censorship system that failed to provide for adequate procedural safeguards to ensure against unlimited suppression of constitutionally protected speech. Like a censorship system, a licensing scheme creates the possibility that constitutionally protected speech will be suppressed where there are inadequate procedural safeguards to ensure prompt issuance of the license. In *Riley v. National Federation of Blind of N.C., Inc.*, 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988), this Court held that a licensing scheme failing to provide for definite limitations on the time within which the licensor must issue the license was constitutionally unsound, because the delay compel[led] the speaker's silence. The failure to confine the time within which the licensor must make a decision contains the same vice as a statute delegating excessive administrative discretion. Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion. A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech."

17
*FW/PBS*, 493 U.S. at 225-26 (string and secondary citations omitted.).

18
19
20
21
22
23

These procedural safeguards apply with equal force whenever government would impose pre-conditions for the operation of an expressive business. While the regulation involved here is a zoning permit, rather than an adult-business license, the fact that the permit requirements stand to stymie speech renders *FW/PBS* applicable. For example, shortly after the *FW/PBS* decision was handed down, the district court in *Dease v. City of Anaheim*, 826 F.Supp. 336 (C.D. Cal. 1993), applied the *FW/PBS* requirements to Anaheim's conditional

24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1  use permit, which applied to adult businesses, in that case an adult cabaret.[14]  Much like

2  conditional use permit requirements in general and Salinas' in particular, Anaheim's required

3  a finding that "the proposed use will not be detrimental to the 'peace, health, safety, and

4  general welfare' of the area." *Id.* at 343.  As would seem obvious, this vests a great deal of

5  discretion for authorities to cite as pretextual grounds for denying an application for a

6  conditional use permit, since what is detrimental to the 'peace, health, safety, and general

7  welfare' of the area is in the eye of the beholder.

8      The Eleventh Circuit has also held that conditional or exceptional use permit

9  requirements fall under the *FW/PBS* rules, in *Lady J. Lingerie v. City of Jacksonville*, 176

10  F.3d 1358, 1362 (11th Cir. 1999), and applied those rules to strike down the challenged

11  ordinance on both grounds.

12      Other jurisdictions imposing a conditional use permit requirement on adult businesses

13  have seen their requirements meet the same fate. In *Mga Susu, Inc. v. County of Benton*, 853

14

15  _____

16      [14]    Parenthetically, *Dease,* 826 F.Supp at 340, provides a good example of why

17  plaintiff has standing here.  Although Plaintiff has applied for a building permit, no permit
   application is necessary:

18          "The Plaintiff has never applied for a CUP permit; hence she is
           challenging the constitutionality of the law on its face.  Facial challenges to

19      legislation are generally disfavored.  However, the Supreme Court has
           recognized that '[i]n the area of freedom of expression it is well established

20      that one has standing to challenge a statute on the ground that it delegates
           broad licensing discretion to an administrative office, whether or not [her]

21      conduct could be proscribed by a properly drawn statute, and whether or not
           [she] applied for a license.' *Lakewood v. Plain Dealer Co.*, 486 U.S. 750, 756,

22      108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988) (quoting *Freedman v.
           Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965)); see

23      also *Forsyth County v. Nationalist Movement*, 505 U.S. 123, ----, 112 S.Ct.
           2395, 2400, 120 L.Ed.2d 101, 110 (1992); *FW/PBS, Inc. v. City of Dallas*, 493

24      U.S. 215, 223, 110 S.Ct. 596, 603, 107 L.Ed.2d 603 (1990); *Gaudiya
           Vaishnava Soc'y v. City of San Francisco*, 952 F.2d 1059, 1062 (9th Cir.1990),

25      *cert. denied*, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992).
           Therefore, the Plaintiff has standing to challenge the ordinance, regardless of

26      whether she has applied for or would qualify for the CUP."

27  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd    **Page 15**

28

F.Supp. 1147, 1151-54 (D. Minn. 1994), for example, the court applied *FW/PBS* and invalidated conditional use permit requirements challenged by an adult cabaret, on grounds of both excessive discretion and the lack of time limits.

Likewise in *CR of Rialto, Inc. v. City of Rialto*, 975 F.Supp. 1254, 1263-65 (C.D. Cal. 1997), the court held a permit requirement unconstitutional for "impermissibly vague and overbroad criteria" which gave officials the discretion to impose whatever conditions they deemed "necessary and desirable to protect public health, safety, and welfare," and which imposed no time limits for official action.[15]

The absence of time limits likewise doomed a conditional use approval procedure in *One-Eyed Jack, Inc. v. City of Daytona Beach*, 165 F. Supp.2d 1322, 1327-30 (M.D. Fla. 2001), where the city's technical review committee could hold application indefinitely, and city planning board was not required to hear appeals of review committee's decisions in any particular time frame.

In short, the courts have uniformly invalidated such application procedures on *FW/PBS* grounds. *See also Santa Fe Springs Realty Corp. v. City of Westminster*, 906 F.Supp. 1341, 1363-64 (C.D. Cal. 1995) (invalidating conditional use permit as an unconstitutional prior restraint of adult cabaret for the lack of definite, objective standards); *Diamond v. City of Taft*, 29 F.Supp.2d 633, 647-50 (E.D. Cal. 1998) (conditional use permit requirement was an unconstitutional prior restraint, where the permit could be granted only when deemed "essential or desirable to the public convenience or welfare," with no limits on official discretion); *801 Conklin Street Ltd. v. Town of Babylon*, 38 F.Supp.2d 228, 242-45

---

[15]    Parenthetically, *CR of Rialto* is also useful in considering the parking issue in this case. There, the city disputed the plaintiff's right to operate at the location it had secured. However, because, as here, the plaintiff was determined to seek out a new location if needed, the court found standing. 975 F.Supp. at 1258.

1  (E.D. N.Y. 1999)(as applied to adult cabaret, special exception use permit requirement

2  violated First Amendment because it afforded the reviewing board "unlimited discretion");

3  *Vo v. City of Garden Grove*, 115 Cal.App.4th 425, 9 Cal.Rptr.3d 257 (4th Dist. 2004)

4  (conditional use permit requirement invalid as applied to cyber-cafes because of unbridled

5  discretion to determine the effect upon the "general welfare").

6

7

8  ### III.    The abridgement of First Amendment rights inherently constitutes

9  irreparable injury, and the balance of hardships favors injunctive relief.

10    As the court noted in *801 Conklin Street Ltd.:* "'A violation of the First Amendment

11  itself constitutes irreparable harm. . . . Accordingly, when an injunction is sought to protect

12  First Amendment rights, likelihood of success on the merits and irreparable harm merge into

13  a single threshold requirement.'" 38 F.Supp.2d at 235, quoting *Hickerson v. City of New*

14  *York*, 997 F.Supp. 418, 420 (S.D.N.Y. 1998). Indeed, the Supreme Court held long ago in

15  *Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S.Ct. 2673, 2690 (1976), that a violation of

16  plaintiff's First Amendment rights is per se irreparable harm: "The loss of First Amendment

17  freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

18

19    Here, as the court held on materially identical facts in *Mga Susu, Inc. v. County of*

20  *Benton*, "The balance of harms also favors plaintiff. It has a strong interest in engaging in

21  activity protected by the First Amendment. [The County] has a substantial and legitimate

22  interest in enforcing its zoning regulations. This interest does not extend, however, to

23  enforcement of an unconstitutional statute." 853 F.Supp. at 1154. The *Mga Susu* court went

24  on to note, in granting a permanent injunction: "Finally, the public interest favors preventing

25  enforcement of an ordinance that unconstitutionally restrains protected expression." *Id*.

26

27  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-013-p-Injunc - P&A.wpd      **Page 17**

28

1

## CONCLUSION

2

A permanent injunction should issue because the City's Code forecloses establishment

3
of an adult business without either a discretionary conditional use permit, or a site-plan

4
review that lacks the required brief and certain time limits within which the City must act

5
upon an application. Little could be more straightforward. Thus, the preliminary injunction

6
hearing should be consolidated with final trial by granting the separate motion filed herewith

7
seeking injunctive relief.

8

9
Dated: June 3, 2008.                    Respectfully submitted,

10

11
CLYDE DeWITT

LAW OFFICES OF CLYDE DeWITT, APC
12

13

By: _____
14
Clyde DeWitt
15

16
Counsel for Plaintiff
17
Seven Cities Enterprises, Inc.
18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE BY FEDERAL EXPRESS

2

[Pursuant to Calif. Code of Civil Procedure § 1013a(3)
and Fed.R.Civ.P. 5]

3

4       I am a resident of and/or employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action. I work at the Law Offices of Clyde DeWitt, located at 2800 28th Street, Suite 321, Santa Monica,

5   California 90405-6201.

6       I am readily familiar with this law firm's practice for mailing with Federal Express and, in the ordinary course of business, any correspondence delivered to our firm's mail room

7   employee(s) for the purpose of being sent through Federal Express is routinely deposited with Federal Express on the same day.

8

9       On the date shown below, I served the foregoing document on the interested parties in this action, by placing a true copy thereof enclosed in a Federal Express envelope/pak/box, with postage thereon fully prepaid, and either: (1) personally delivering it to our firm's mail

10  room employee(s) for deposit with Federal Express pursuant to our firm's ordinary business practice; or (2) personally depositing such correspondence directly with Federal Express,

11  addressed as follows:

12      **Vanessa Vallarta, Esq.**
        **City Attorney**

13      **Georgina B. Mendoza, Esq.**
        **Deputy City Attorney**

14      **200 Lincoln Avenue**
        **Salinas, CA 93901**

15

16      I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

17      Executed on July 3, 2008.

18

19                                          _____
                                                    Clyde DeWitt

20

21

22

23

24

25

26

27

28

1  Clyde DeWitt
   California State Bar No. 117911
2  Law Offices of Clyde DeWitt,
       A Professional Corporation
3  2800 28th Street, Suite 321
   Santa Monica, CA 90405-6201
4  (310) 392-2600
   Fax (310) 362-8667
5  *clydedewitt@earthlink.net*

6  Counsel for Plaintiff, Seven Cities Enterprises, Inc.

7
                IN THE UNITED STATES DISTRICT COURT
8
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
                      SAN JOSE DIVISION
10

11  SEVEN CITIES ENTERPRISES, INC.,          Case Number 5:08-CV-01563-JW

12         Plaintiff                          Hon. James Ware

13                                            **DECLARATION OF CLYDE
    v.                                        DeWITT IN SUPPORT OF MOTION
14                                            FOR PRELIMINARY AND
    CITY OF SALINAS,                          PERMANENT INJUNCTION**
15
                                             Date: September 8, 2008
16         Defendant                          Time: 9:00 a.m.
                                             Courtroom: 8
17
18                                           1. NOTICE OF MOTION;
                                             2. [PROPOSED] ORDER;
19                                           3. MEMORANDUM OF POINTS AND AUTHORITIES;
                                             4. DECLARATION OF WILLIAM H. ANDRUS;
20                                           5. DECLARATION OF JAMES VOCELKA; AND
                                             6. DECLARATION OF CLYDE DEWITT.
21
22
23
24
25
26
27
                                              **Page 1**
28  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-011-p-Injunc - DeWitt Dec.wpd
                     **DECLARATION OF CLYDE DeWITT**
        **IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1    I, Clyde DeWitt declare as follows

2        1.    I am an attorney, practicing as indicated above, in connection with which I

3    have, unless otherwise indicated, personal knowledge of the following:[1]

4        2.    I have become familiar with the provisions of the Salinas Municipal Code

5    ("SMC") pertaining to adult entertainment facilities and those pertaining to nonconforming

6    uses. They are available on the Internet.[2]

7        3.    Attached hereto are the following, which can be found on that Web site:

8            a.    SMC § 37-50.020, which is included in SMC Chapter 37, Zoning, in

9    Article V, Division 1, Supplemental Regulations Applying to All Districts. A review

10    of these regulations would establish that this is one of Salinas' many zoning

11    regulations which applies irrespective of which zoning district is located.

12            b.    SMC §§ 37-60.450 to 37-60.950, specifically including § 37-60.520,

13    setting forth findings required for the approval of a conditional use permit, all of

14    which is included in SMC Chapter 37, Zoning, in Article V, Division 8, Conditional

15    Use Permits.

16            c.    Portions of SMC, Chapter 37, Article III, which designate which uses

17    are permitted in which Salinas zoning districts.

18            d.    Portions of SMC, Chapter 37, Article VI, Division 5, §§ 37-60.220 to

19    37-60.310, setting forth the procedure for a site plan review.

20        4.    I am familiar with the zoning circumstances with respect to the business that

21    is the subject matter of this action, an "adult entertainment facility" in the parlance of the

22    SMC, which is located at 323 E Alisal St, Salinas, CA 93901. I represented the ownership

23    _____

24        [1]    I do not expect that anything contained in this declaration will be contested;
    and therefore this declaration is not contrary to the advocate-witness rule (as well as the fact

25    that this is not a jury proceeding). *See* CAL. C. PROF. RESP. 5–210.

26        [2]    *http://municipalcodes.lexisnexis.com/codes/salinas/*

27

28    C:\Documents and Settings\CD\Desktop\DeWitt Dec.wpd        **Page 2**
                                **DECLARATION OF CLYDE DeWITT**
            **IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1  and management of that business from the late 1980s until approximately 2002 when Richard
2  Brovelli, the sole officer and shareholder of L'Amour Shoppe, Inc., which owned the
3  business, died. The business was operated by Mr. Brovelli's probate estate for the ensuing
4  approximately two years. Then, in approximately late 2004, Seven Cities Enterprises, Inc.,
5  which was owned by a client I had represented for many years, acquired the business,
6  whereupon I resumed representing it.

7      5.      I have had many conversations with representatives of the City of Salinas over
8  the years, and the City has consistently taken the position that the business is operating as a
9  lawful, nonconforming use, including recently when the City denied its permit application
10  for additional video viewing areas.

11      I declare under penalty of perjury under the laws of the United States that the
12  foregoing is true and correct.

13      Executed within the United States on July 2, 2008.

14

15                                            _____
                                                    Clyde DeWitt
16

17

18

19

20

21

22

23

24

25

26

27

28  C:\Documents and Settings\CD\Desktop\DeWitt Dec.wpd

1   Dated: July 3, 2008.                    Respectfully Submitted,

2                                           CLYDE DeWITT
                                            LAW OFFICES OF CLYDE DeWITT, APC
3

4                                           By: _____

5                                               Clyde DeWitt

6                                           Counsel for Plaintiff
                                            Seven Cities Enterprises, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   C:\Documents and Settings\CD\Desktop\DeWitt Dec.wpd

DECLARATION OF CLYDE DeWITT
IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

1

## PROOF OF SERVICE BY FEDERAL EXPRESS

2

[Pursuant to Calif. Code of Civil Procedure § 1013a(3)
and Fed.R.Civ.P. 5]

3

4

I am a resident of and/or employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action. I work at the Law Offices of Clyde DeWitt, located at 2800 28th Street, Suite 321, Santa Monica, California 90405-6201.

5

6

I am readily familiar with this law firm's practice for mailing with Federal Express and, in the ordinary course of business, any correspondence delivered to our firm's mail room employee(s) for the purpose of being sent through Federal Express is routinely deposited with Federal Express on the same day.

7

8

On the date shown below, I served the foregoing document on the interested parties in this action, by placing a true copy thereof enclosed in a Federal Express envelope/pak/box, with postage thereon fully prepaid, and either: (1) personally delivering it to our firm's mail room employee(s) for deposit with Federal Express pursuant to our firm's ordinary business practice; or (2) personally depositing such correspondence directly with Federal Express, addressed as follows:

9

10

11

12

**Vanessa Vallarta, Esq.**
**City Attorney**
**Georgina B. Mendoza, Esq.**
**Deputy City Attorney**
**200 Lincoln Avenue**
**Salinas, CA 93901**

13

14

15

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

16

17

Executed on July 3, 2008.

18

19

_____
Clyde DeWitt

20

21

22

23

24

25

26

27

28

K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-011-p-Injunc - DeWitt Dec.wpd **Page 5**
**DECLARATION OF CLYDE DeWITT**
**IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

ATTACHMENT "a"

SMC § 37-50.020



The fence or wall shall enclose the facility completely to prevent unauthorized access. Hedges or other plant materials shall not substitute for a fence or wall.
(2) Openings in Fence. If a nonsolid fence is provided, fence openings shall not be wider than four inches.
(3) Latches. Every door or gate opening shall be provided with a self-closing and self-latching device.
(4) Emergency Access. A three-foot clear path shall be provided around fifty percent or more of the pool perimeter, excepting spas and hot tubs.
(5) Swimming pool and spa equipment shall be set back a minimum of two and one-half feet from the property line, provided that a screen, which matches the exterior of the principal structure, surrounds such equipment. (Ord. No. 2463 (NCS).)

### Sec. 37-50.020. Adult entertainment facilities.

(a) **Purpose.** The purpose of this section is to establish regulations governing adult entertainment facilities. The city council recognizes that certain types of adult entertainment facilities possess certain objectionable operational characteristics, which if such uses are allowed to concentrate, will have adverse effects upon the character of the affected area and adjacent neighborhoods. The city council further recognizes that locating adult entertainment facilities in close proximity to facilities frequented by minors will cause the exposure of minors to adult material that may adversely affect such minors due to their immaturity. Additionally, the city council recognizes that while certain adult entertainment enjoys limited protection under the First Amendment to the United States Constitution, substantial numbers of the citizens of the city are offended by the public display of sexually oriented material. Special and limited regulation of adult entertainment uses, consistent with the First Amendment rights of such uses, is therefore necessary to ensure that the adverse effects of adult entertainment uses will not (1) contribute to the blighting or downgrading of zones in which they are permitted or the downgrading of surrounding neighborhoods; (2) adversely affect minors; and (3) offend those citizens of the city who do not wish to be exposed to sexually oriented material.
(b) **Definitions.** The following definitions shall apply to this section:
(1) Adult Bookstore. An establishment where:
(A) Twenty percent or more of the establishment's stock, books, magazines, or other periodicals or films are devoted to "specified sexual activities" or "specified anatomical areas"; or
(B) Twenty percent or more of the establishment's films, peepshows, or other similar devices designed for individual viewing on the premises by up to five persons are devoted to "specified sexual activities" or "specified anatomical areas"; or
(C) Twenty percent or more of the establishment's actual display areas, including without limitation, the areas for the viewing of films, peepshows, or similar devices are substantially devoted to the exhibition of "specified sexual activities" or "specified anatomical areas." This definition does not apply to displays of up to ten periodicals or films in the premises, by title in which sales or rental of the same are incidental to other businesses. Nor does this definition include any art or photography publications depicting the specified anatomical areas defined in this section when such publication devotes at least twenty-five percent of the lineage of each edition to articles and advertisements dealing with the subjects of art or photography. Nor does this definition apply to any news periodical which reports or describes current events and which, from time to time, publishes photographs of nude or semi-nude persons when describing cultures in which nudity or semi-nudity is indigenous to the population. Nor does this definition apply to bona fide education or medical publications.
(2) Adult Entertainment Facility. Any facility which includes an adult bookstore, an adult motion picture theater, an adult live entertainment establishment or any other place of business of any similar purpose, operation, or function regardless of whether any other use is also conducted on the premises.
(3) Adult Live Entertainment Establishment. A building or structure or portion thereof used or proposed to be used for presenting live entertainment in which more than forty-five days per calendar year there are live entertainment performances which are substantially devoted to the exhibition of the specified sexual activities or the specified anatomical areas, as defined in this section, for the observation and viewing by patrons therein.
(4) Adult Motion Picture Theater. An establishment, including a building, structure, drive-in theater, or part thereof used for presenting material in the form of motion picture film, video tape, or other similar means, designed for observation by five or more persons, in which more than forty-five days per calendar year any one or more programs are shown which are substantially devoted to the depiction of the specified sexual activities or specified anatomical areas as defined in this section. Whenever more than one screen or theater exists in any single premises, the total number of days that the films described in this section are shown on each screen or in all theaters on the premises shall be added together for the purpose of determining if the premises is an adult motion picture theater.



(5) Specified Anatomical Areas.

(A) Less than completely and opaquely covered human genitals, human buttocks, and human female breast below a point immediately above the top of the areola; and

(B) Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

(6) Specified Sexual Activities.

(A) Human genitals in a state of sexual stimulation or arousal;

(B) Sexual intercourse, masturbation, oral copulation, or sodomy, whether between humans of the same or opposite sex or between humans and animals; and

(C) Fondling or other erotic touching or sexual stimulation of human genitals, pubic region, buttock, or female breast.

(c) **Location of Adult Entertainment Facilities.**

(1) No person shall own or operate any adult entertainment facility if that facility is located:

(A) Within two thousand feet of any other adult entertainment facility;

(B) Within one thousand feet of any pre-existing public or private school attended primarily by minors under eighteen years of age;

(C) Within one thousand feet of any pre-existing parcel in the central city overlay (downtown core area) district;

(D) Within two hundred fifty feet of any pre-existing church;

(E) Within two hundred fifty feet of any pre-existing public park or recreation facility which is available for use by minors; and

(F) Within two hundred fifty feet of any pre-existing residential district.

(2) The distance shall be measured from the closest exterior wall of the building/suite or property line of the site (if there is no building) where the adult entertainment facility is located to the nearest property line of the site containing those uses specified in Section 37-50.020(c)(1)(A) through (F) above.

(3) An adult entertainment facility shall only be permitted where the applicable zoning district regulations specifically provide for adult entertainment facilities.

(d) **Public Display of Certain Matter Prohibited.** Adult entertainment facilities shall not display or exhibit any material depicting specified anatomical areas or specified sexual activities in a manner that exposes such material to the view of persons outside the building in which such facility is located.

(e) **Notice Required.** On or near any public entrance to every adult entertainment facility there shall be a sign with letter sizes of one inch or greater stating:

NOTICE:

**THIS ESTABLISHMENT CONTAINS ADULT ENTERTAINMENT MATERIALS.
IF YOU ARE OFFENDED BY SUCH MATERIALS,
PLEASE REFRAIN FROM ENTERING.**

(f) **Determining Distances Between/From Adult Entertainment Facilities.** For the purpose of determining the distances between the public entrance into the adult entertainment facility, the measurement shall be from the nearest public entrance into the adult entertainment facility (as contrasted with a nonpublic entrance, an exit used solely for egress, the nearest lot line of the parcel upon which the use is located or the nearest part of the structure in which it is housed) then along the nearest public street or streets to the nearest lot line of the use being measured. (Ord. No. 2463 (NCS).)

## Sec. 37-50.030. Alcohol license review.

(a) **Purpose.** The purpose of this section is to provide for the orderly integration of alcohol-related uses in the city, including the sale of beer, wine, and distilled spirits.

(b) **Definitions.** The following definitions shall apply to this section:

(1) Brew Pubs. An establishment in which beer is manufactured in limited quantities for on-site and off-site sales, distribution, and consumption.

(2) Downtown Alcohol-related Use License Area. All parcels located within the six-block area bounded by Monterey Street, East and West San Luis Street, Salinas Street, and East and West Market Streets as shown on **Figure 37-50.10**. Parcels must be contained within the area defined by these streets. Frontage on the listed streets is not sufficient to meet the definition.

**ATTACHMENT "b"**

SMC § 37-60.450 to 37-60.950

When a provision of this Zoning Code requires notice of a public hearing, the notice shall be mailed or delivered at least ten calendar days prior to the hearing to any person who has filed a written request for notice with either the city clerk or with any other person designated by the city council to receive these requests. (Ord. No. 2463 (NCS).)

## Sec. 37-60.420. Additional notification.

Compliance with these provisions shall be deemed sufficient for the city to act regardless of actual receipt of notice. (Ord. No. 2463 (NCS).)

## Sec. 37-60.430. Failure to receive notice.

The failure of any person or entity to receive notice given pursuant to this division shall not constitute grounds for any court to invalidate the actions for which the notice was given. No action, inaction, recommendation, or decision of the city planner, the planning commission, the city council, or any of its officials on any matter subject to this Zoning Code shall be invalid or set aside by reason of any error, irregularity, informality, neglect, or omissions as to any notice or method of procedure pursuant to this Zoning Code unless a finding is made based on substantial evidence in the record that the complaining party suffered substantial injury from that error, irregularity, neglect, or omission, and that a different result would have been probable if the error, irregularity, informality, neglect, or omission had not occurred in accordance with Government Code Section 65010(b). (Ord. No. 2463 (NCS).)

## Sec. 37-60.440. Hearing continuations.

Any public hearing conducted pursuant to this division may be continued from time to time and shall not require additional notification. (Ord. No. 2463 (NCS).)

## Division 8. Conditional Use Permits.

## Sec. 37-60.450. Purpose.

(a) The purpose of this division is to provide flexibility in the application of land use and development regulations necessary to achieve the purposes of the Zoning Code by establishing procedures for the approval, conditional approval, or disapproval of minor, administrative, and non-administrative conditional use permit applications; and
(b) To ensure that use classifications that typically have unusual site development features or operating characteristics receive special consideration so that they will be designed, located, and operated in a manner, which is compatible with uses on adjoining properties and in the surrounding area. **Figure 37-60.40** illustrates the conditional use permit process. (Ord. No. 2463 (NCS).)

## Sec. 37-60.460. Application.

An application for a conditional use permit (minor, administrative, or non-administrative) shall be initiated by submitting an application to community planning and development in accordance with *Division 2: Application Procedures* of this article. (Ord. No. 2463 (NCS).)

## Sec. 37-60.470. Authority.

The city planner and the planning commission shall have authority to grant minor, administrative, and non-administrative conditional use permits in accordance with the requirements of this division. (Ord. No. 2463 (NCS).)

## Sec. 37-60.480. City planner duties.

(a) **Minor Conditional Use Permits.** The city planner shall have the authority to administratively grant

conditional use permits for minor exceptions in accordance with the requirements of *Section 37-60.490: Minor conditional use permits.*

(b) **Administrative Conditional Use Permits.** The city planner shall have the authority to administratively grant conditional use permits (including, but not limited to, live entertainment permits and residential design reviews) without the requirement for a public hearing in accordance with *Section 37-60.500: Administrative conditional use permits* subject to the following:

(1) In addition to those findings required in *Section 37-60.520: Required findings* and *Section 37-60.500(f): Residential Design Review* of this division, the city planner determines in written findings that the proposed use or structure is statutorily or categorically exempt from the California Environmental Quality Act;

(2) The city planner determines the proposed conditional use permit meets all of the applicable requirements of *Section 37-60.500: Administrative conditional use permits*; and

(3) No protest of the city's planner's decision is received prior to or on the date intended for approval as indicated in *Section 37-60.500(b): Notice of Intent to Approve* of this section.

(c) **Non-administrative Conditional Use Permits.** The city planner shall not have the authority to grant non-administrative conditional use permits in accordance with *Section 37-60.505: Non-administrative conditional use permits*; however, the city planner shall:

(1) Set the time, date, and location of the planning commission hearing for non-administrative conditional use permits.





**The minor conditional use permit process is not shown.**

**Figure 37-60.40
Process for Conditional Use Permits**

(2) Undertake environmental review in regard to such proposals, and, upon completion of such review, transmit the application, together with a staff report containing a recommendation to the planning commission. (Ord. No. 2463 (NCS).)

**Sec. 37-60.490. Minor conditional use permits.**

(a) **Conditional Use Permit for a Minor Exception.**
(1) Applicability. An application for a conditional use permit for a minor exception shall apply to development in accordance with the requirements of *Section 37-50.160(g): Minor Exceptions.*
(2) Notice to Adjacent Property Owners. An application for a conditional use permit for a minor exception shall require a public hearing and decision by the planning commission in accordance with *Section 37-60.510:*

(12)

*Planning commission duties* unless the applicant has provided the written approval of all owners of real property abutting the boundaries of the site and directly across the street or alley from the project site (in a form approved by the city planner) as shown on the latest equalized assessment roll (or other reliable method as approved by the city council) at the time of the application submittal. If such written approval is provided and the application for the conditional use permit for a minor exception conforms to the regulations established in this Zoning Code, the city planner is authorized to approve or approve with conditions or modifications, the application and no public hearing or notice is required unless an appeal is submitted requesting a hearing.

(3) City Planner's Review and Action. If no hearing is required, the city planner, shall approve, approve with conditions or modifications, or deny the application.

(4) Findings for Approval. In approving the application, the planning commission or city planner, as applicable, shall establish the findings in *Section 37-60.520: Required findings.*

(5) Effective Date--Appeals. A conditional use permit for a minor exception shall be effective ten days after the date of the decision unless appealed in accordance with *Article VI, Division 17: Appeals.* (Ord. No. 2463 (NCS).)

## Sec. 37-60.500. Administrative conditional use permits.

(a) **City Planner Review of Administrative Conditional Use Permits.** The city planner shall have the authority to administratively grant a conditional use permit (including, but not limited to, a live entertainment permit or a residential design review) without a public hearing based on their review of the application, plans, materials, and use if the proposed project meets the following requirements:

(1) In addition to those findings required by *Section 37-60.520: Required findings* of this division and *subsection (f)* below, the city planner determines in written findings that the proposed use or structure is statutorily or categorically exempt from the California Environmental Quality Act; and

(2) No protest of the city planner's decision is received prior to or on the date intended for approval as indicated in *Section 37-60.500(b)* of this division.

(b) **Notice of Intent to Approve.** Following acceptance of a completed application and the city planner's determination to approve the application without a public hearing, notice shall be mailed or delivered by the city planner to all owners of real property as shown on the latest equalized assessment roll (or other reliable method as approved by the city council) within three hundred feet of the subject property at least ten days prior to the city planner's intended date of approval of the conditional use permit.

(c) **Decision.** Following the conclusion of the ten-day notice period and if no protest is received, the city planner shall approve or conditionally approve the application and make written findings supporting the reason for the decision in accordance with *Section 37.60-520: Required findings* of this division. The city planner's decision shall be subject to a ten-day appeal period in accordance with *Division 17: Appeals.* The city planner shall have the discretion to refer any decision on an application for a conditional use permit to the planning commission if the city planner determines that a public hearing would better serve the public's interest or if the application raises substantial land use issues.

(d) **Effective Date.** The effective date of the conditional use permit shall be in accordance with *Section 37-60.530: Effective date--Appeals* of this division.

(e) **Live Entertainment Permit.** A conditional use permit for a live entertainment permit shall be subject to the review and approval by the city planner in accordance with the requirements of this section.

(f) **Residential Design Review.**

(1) Applicability. A conditional use permit for a residential design review shall be subject to the review and approval by the city planner in accordance with the requirements of this section and *Section 37-50.110: Infill residential development in the R-L district.*

(2) Findings for Approval. In approving the application, the city planner or planning commission, as applicable, shall establish the following findings in addition to the findings contained in *subsection (a)* above and in *Section 37-60.520: Required findings:*

(A) The proposed dwelling, addition, or land division will not adversely impact the character of the existing residential neighborhood; and

(B) The proposed dwelling or addition will be compatible with the scale, bulk, height, and location of existing single-family detached dwellings located on the neighboring block face. (Ord. No. 2463 (NCS).)

## Sec. 37-60.505. Non-administrative conditional use permits.

Non-administrative conditional use permits are subject to the review and approval of the planning commission in accordance with *Section 37-60.510: Planning commission duties*. Non-administrative conditional use permits typically apply to development review proposals that the city planner has determined are not statutorily or categorically exempt from the California Environmental Quality Act (CEQA) and/or may involve substantial land use issues that warrant a public hearing. The city planner is not authorized to grant non-administrative conditional use permits. (Ord. No. 2463 (NCS).)

### Sec. 37-60.510. Planning commission duties.

(a) **Review of Non-administrative Conditional Use Permits.** The planning commission shall approve, approve with conditions or modifications, or deny applications for non-administrative conditional use permits subject to the general purposes of the Salinas general plan, this Zoning Code, the specific purposes of the base or overlay zoning district in which a development site is located, and the provisions of this division, unless authority for a decision on a conditional use permit is specifically assigned to the city planner in accordance with *Section 37-60.480: City planner duties* of this division.
(b) **Public Hearing Required.** Following acceptance of an application, the planning commission shall conduct a public hearing for consideration of the application.
(c) **Notice.** Notice of a hearing shall be given in accordance with *Division 7: Public Hearing Notice* of this article.
(d) **Public Hearing.** The planning commission shall conduct the public hearing and hear testimony for and against the application. A public hearing may be continued without additional public notice.
(e) **Decision.** Following the conclusion of a public hearing, the planning commission shall approve, approve with conditions or modifications, or deny the application and make written findings supporting the reason for the decision in accordance with *Section 37-60.520: Required findings*. (Ord. No. 2463 (NCS).)

### Sec. 37-60.520. Required findings.

The city planner or planning commission, as applicable, shall approve an application for a conditional use permit as it was applied for or in modified form if, on the basis of the application and testimony submitted, all of the following findings can be made:
(a) That the proposed location of the use is in accordance with the objectives of the Salinas general plan, this Zoning Code, and the purposes of the district in which the site is located;
(b) That the proposed location of the conditional use and the proposed conditions under which it would be operated or maintained are consistent with the Salinas general plan and will not be detrimental to the public health, safety, or welfare of persons residing or working in or adjacent to the neighborhood of such use, nor detrimental to properties or improvements in the vicinity or to the general welfare of the city; and
(c) That the proposed conditional use complies with the provisions of this Zoning Code, including any specific conditions required for the proposed use. (Ord. No. 2463 (NCS).)

### Sec. 37-60.530. Effective date--Appeals.

A conditional use permit which has been signed by the permittee(s), returned to the city planner within ninety days from the date of approval by the city planner or planning commission, and filed for recordation with the Monterey County recorder's office, shall become effective at the end of the appeal period unless appealed in accordance with *Division 17: Appeals* of this article. (Ord. No. 2463 (NCS).)

### Sec. 37-60.540. Expiration--Transferability--Recordation--Rescission--Revocation.

(a) **Expiration of Approval.** A conditional use permit shall expire one year after its effective date, or at an alternative time as specified in the approval, unless any one of the following occurs first:
(1) A building permit has been issued and construction diligently pursued;
(2) A certificate of occupancy has been issued;
(3) The use is established;
(4) The city planner determines that other substantial action has been commenced to carry out the terms and intent of the conditional use permit; or
(5) The project is one hundred percent very-low or low income or otherwise qualifying pursuant to Civil Code



Section 51.3.
(b) **Transferability.** A conditional use permit shall not be affected by changes in ownership.
(c) **Recordation.** The city planner shall file a conditional use permit for recordation with the Monterey County recorder's office.
(d) **Rescission.** The city planner may rescind a conditional use permit in accordance with *Section 37-60.1340: Rescission of permits.*
(e) **Revocation.** A revocation of a conditional use permit shall be in accordance with *Section 37-60.1330: Revocation of permits.* (Ord. No. 2463 (NCS).)

### Sec. 37-60.550. Modified plans.

A request for a modification of an approved conditional use permit shall be subject to the requirements of *Division 16: Modification of Approved Plans* of this article. (Ord. No. 2463 (NCS).)

### Sec. 37-60.560. Other required licensing or permits.

The issuance of a conditional use permit shall not relieve the permittee of any requirement to obtain other permits or licensing from the city, or any county, regional, state, or federal agencies. (Ord. No. 2463 (NCS).)

### Division 9. Variances.

### Sec. 37-60.570. Purpose.

(a) The purpose of this division is to establish procedures for the approval, conditional approval, or disapproval of administrative and non-administrative variance applications;
(b) To achieve flexibility in application of land use and development regulations necessary to achieve the purposes of the Zoning Code; and
(c) To provide a process for resolving practical difficulties or unusual physical hardships that may result from the size, shape, or dimensions of a site or the location of existing structures thereon; from geographic, topographic, or other physical conditions on the site or in the immediate vicinity; or from street locations or traffic conditions in the immediate vicinity of the site. **Figure 37-60.50** illustrates the variance process. (Ord. No. 2463 (NCS).)

### Sec. 37-60.580. Application.

An application for a variance (administrative or non-administrative) shall be initiated by submitting an application to community planning and development in accordance with *Division 2: Application Procedures* of this article. (Ord. No. 2463 (NCS).)

### Sec. 37-60.590. Authority.

The city planner and the planning commission shall have authority to grant administrative and non-administrative variances as provided in this division. (Ord. No. 2463 (NCS).)

### Sec. 37-60.600. City planner duties.

(a) **Administrative Variances.** The city planner shall have the authority to administratively grant variances without a public hearing in accordance with the requirement of *Section 37-60.605: Administrative variances* subject to the following requirements:
(1) In addition to those findings required by *Section 37-60.620: Required findings* of this division, the city planner determines in written findings that the proposed use or structure is statutorily or categorically exempt from the California Environmental Quality Act; and
(2) No protest of the city planner's decision is received prior to or on the date intended for approval as indicated in *Section 37-60.605(b)* of this division.
(b) **Non-administrative Variances.** The city planner shall not have the authority to grant non-administrative



**ATTACHMENT "c"**

Portions of SMC, Chapter 37, Article III,
Which designate which uses are permitted in which Salinas zoning districts

Chapter 37 ZONING*

# Article II. Establishment of Zoning Districts and Designations.

Division 1. General Provisions.

Sec. 37-20.010. Districts established.

Sec. 37-20.020. Use classifications, development regulations, and design standards.

Sec. 37-20.030. Official zoning map.

## Division 1. General Provisions.

### Sec. 37-20.010. Districts established.

The city is divided into the following districts for the purposes of classifying, regulating, restricting, and separating the use and development of land, buildings, and structures; regulating and limiting the type, height, and bulk of buildings, improvements, and structures; and regulating areas of yards and other open areas abutting and between buildings and structures.

(a) **Base Districts.** Every parcel shall have a base district that establishes the primary type and intensity of land use permitted, along with development regulations for that particular type and intensity of land use. **Table 37-20.10** lists the base zoning districts within Salinas.

| Table 37-20.10 Base Zoning Districts Established | |
|---|---|
| Base District | District Symbol(s) |
| **Agricultural (A) District** | |
| Agricultural | A |
| **Residential (R) Districts** | |
| Residential Low Density (RL) | R-L-5.5 |
| Residential Medium Density (RM) | R-M-3.6, R-M-2.9 |
| Residential High Density (RH) | R-H-2.1, R-H-1.8 |
| **Commercial (C) Districts** | |
| Commercial Office/Residential | CO/R |
| Commercial Office | CO |
| Commercial Retail | CR |
| Commercial Thoroughfare | CT |
| **Mixed Use (MU) Districts** | |
| Mixed Arterial Frontage | MAF |
| Mixed Use | MX |
| **Industrial (I) Districts** | |
| Industrial--General Commercial | IGC |
| Industrial--Business Park | IBP |

| Industrial--General | IG |
|---|---|
| **Parks (P) and Open Space (OS) Districts** | |
| Parks | P |
| Open Space | OS |
| **Public/Semipublic (PS) District** | |
| Public/Semipublic | PS |
| **New Urbanism (NU) Districts** | |
| Neighborhood Edge/Low Density Residential | NE |
| Neighborhood General 1/Medium Density Residential | NG-1 |
| Neighborhood General 2/High Density Residential | NG-2 |
| Village Center | VC |
| New Urbanism Interim | NI |

(b) **Overlay Districts.** An overlay district supplements the base district for the purpose of establishing special use or development regulations for a particular area in addition to the provisions of the underlying base district. In the event of conflict between the base district regulations and the overlay district regulations, the provisions of the overlay district shall apply. **Table 37-20.20** lists the overlay districts zoned within Salinas.

| Table 37-20.20 Overlay Districts Established | |
|---|---|
| **Overlay District** | **District Symbol** |
| Flood | F |
| Specific Plan | SP |
| Gateway | G |
| Focused Growth | FG |
| Central City | CC |
| East Romie Lane Corridor | ERL |
| Airport | AP |

(c) **New Urbanism Districts.** The Salinas general plan has integrated principles of new urbanism into the development goals and policies for the city's long-term growth. Two base districts and two overlay districts have been established that allow a mixture of land uses and a higher density and intensity of development standards than typically described for the other zoning districts in the city. These districts provide standards for growth for designated areas outside the city and existing urbanized areas within the city and are as follows:

(1) New Urbanism (NU) Districts. The new urbanism (NU) districts, consisting of five districts: neighborhood edge/low density residential (NE), neighborhood general 1/medium density residential (NG-1), neighborhood general 2/high density residential (NG-2), village center (VC), and new urbanism interim (NI) are applied to largely undeveloped areas outside of the existing city limits that the city wishes to see developed with a mixture of pedestrian-friendly uses. Development in the new urbanism districts will be subject to the preparation of specific plans that incorporate the design standards and development and use regulations of the new urbanism districts.

(2) Mixed Use (MU) Districts. The mixed use (MU) districts, consisting of mixed use (MX) and mixed arterial frontage (MAF), are applied to areas that the Salinas general plan has identified as appropriate for a mixture



at grade in addition to medium and high density residential uses. Specific use regulations and development and design standards are applied to these properties to minimize conflicts between uses and facilitate pedestrian-oriented activity centers.

(3) Focused Growth (FG) Overlay District. The focused growth (FG) overlay district is applied to existing urbanized areas that the Salinas general plan has identified for additional growth and/or redevelopment and revitalization. In addition to the general regulations of this Zoning Code, properties located in a focused growth (FG) overlay district are subject to the more specific standards identified in *Article IV, Division 4: Focused Growth (FG) Overlay District.*

(4) Central City (CC) Overlay District. The central city (CC) overlay district, consisting of two areas, the downtown core (DC) and downtown neighborhood (DN), are applied to the existing urbanized areas of the city's downtown. In addition to the general regulations of the Zoning Code, properties located within the central city (CC) overlay district are subject to the more specific development standards and design regulations identified in *Article IV, Division 5: Central City (CC) Overlay District.* (Ord. No. 2463 (NCS).)
.

### Sec. 37-20.020. Use classifications, development regulations, and design standards.

(a) **Unlisted Uses.** Unless a use is specifically identified, it is not permitted in the district. However, the city planner shall have the authority to review proposed uses not listed in this Zoning Code. A proposed unlisted use may be permitted as a principal, conditional, temporary, or accessory use within a base zoning district if the city planner determines that such use falls within the purpose and intent of that base district, is of a comparable nature with similar environmental impacts to the principal, accessory, or conditional uses set forth as permitted in the base district, is not listed in another base district, and will not be detrimental to property in the vicinity of such use.

(b) **Interpretation of Regulations and Standards.** Where uncertainty exists regarding the interpretation of any provision of this article or its application to a specific site, the city planner shall determine the intent of the provision. (Ord. No. 2463 (NCS).)

### Sec. 37-20.030. Official zoning map.

(a) **Adoption.** A map known as the "Official Zoning Map of the City of Salinas" or herein as "zoning map," which is on file with the city clerk, is adopted herein by reference and shall hereafter exist pursuant to and as an integral part of this Zoning Code. The map shall be maintained to reflect the current zoning of the city.

(b) **Amendments.** Amendments to the zoning map shall be processed as described in *Article VI, Division 14: Rezones/Pre-zones/Zoning Code Amendments.*

(c) **Replacement.** In the event the zoning map becomes damaged, destroyed, lost, or difficult to read because of the nature or number of changes and additions, the city council, by resolution, may adopt a new zoning map, which shall supersede the prior zoning map. The new zoning map may correct drafting or other errors or omissions in the prior zoning map and reflect zoning map amendments adopted by resolution of the city council.

(d) **Interpretation of District Boundaries.** Where uncertainty exists as to the exact zoning boundaries, the following rules shall apply:

(1) A street, alley, railroad right-of-way, watercourse channel, or other right-of-way shall be included within the zone of the adjoining property.

(2) When the zoning district boundary is or approximately follows a street, alley, railroad right-of-way, watercourse channel, or other right-of-way, the centerline of that right-of-way shall be considered the boundary.

(3) When the zone boundaries approximately follow lot lines or city limits, these lines shall be considered the boundaries.

(4) Where the boundary splits the lot or parcel, or uncertainty still exists, the exact boundary shall be determined by written decision of the city planner.

(5) When the street, alley, or right-of-way that serves as a zone boundary is vacated, the new zone boundary shall be at the new property line. Where the vacation does not result in a new property line, the zone boundary shall be determined by written decision of the city planner.

(6) Should any uncertainty remain as to the location of a district boundary or other feature shown on the zoning map, the city planner shall determine the location.

(e) **Pre-zoning.** Areas located outside the city limits shall be assigned pre-zoning designations prior to



Case 5:08-cv-01563-JW     Document 7-4     Filed 07/03/2008     Page 20 of 20

annexation to the city in accordance with *Article VI, Division 14: Rezones/Pre-zones/Zoning Code Amendments*. Upon annexation of the areas to the city, the pre-zoning designation(s) shall become zoning districts for the area. The zoning map shall be amended to show the new city limits and zoning district(s) of the area, as applicable. (Ord. No. 2463 (NCS).)

<< previous | next >>

Sec. 37-30.520. Neighborhood edge/low density residential (NE) district design standards.

Sec. 37-30.530. General neighborhood design standards.

Sec. 37-30.540. Streets and streetscape design standards.

## Division 1. Agricultural (A) District.

### Sec. 37-30.010. Purpose.

In addition to the general purposes listed in *Article I, Division 1: General Provisions*, the purpose of the agricultural (A) district regulations is to:
(a) Preserve and protect agricultural land from urban development; and
(b) In certain instances, permit agriculture as an interim use until urban development occurs.
(Ord. No. 2463 (NCS).)

### Sec. 37-30.020. Use classifications.

**Table 37-30.10** identifies the use classifications for properties located in the agricultural (A) district:

| Table 37-30.10 Agricultural (A) District Use Classifications | | |
|---|---|---|
| Land Use | A | Additional Use Regulations |
| **Agricultural Uses** | P | (3) |
| **Residential Uses** | | |
| Day Care Homes, Family--Large | P | (4) |
| Day Care Homes, Family--Small | P | |
| Duplex Dwellings | NP | |
| Home Occupations | P | (1) |

Table 37-30.10
Agricultural (A) District Use Classifications

Land Use

A

Additional Use Regulations

| Land Use | A | Additional Use Regulations |
|---|---|---|
| Interim Housing | CUP | (11) |
| Manufactured Housing | P | |
| Multifamily Dwellings | NP | |
| Multiple Detached Dwellings | NP | |
| Residential Care Facilities--Large | | |

|  |  |
|---|---|
|  | CUP |
| Residential Care Facilities--Small |  |
|  | P |
| Residential Service Facilities |  |
|  | CUP |
| Second Dwelling Units |  |
|  | SPR (6) |
| Single-family Dwellings--Attached |  |
|  | NP |
| Single-family Dwellings--Detached |  |
|  | P |
| **Public and Semipublic Uses** |  |
| Telecommunications Facilities: |  |
| Major |  |
|  | CUP (8) |
| Minor |  |
|  | P (8) |
| Utilities--Major |  |
|  | CUP |
| **Accessory Uses and Structures** |  |
|  | P (5) |
| Animals--Domestic |  |
|  | P (7) |
| Utilities--Minor |  |
|  | P (9) |
| Utility Sheds |  |
|  | P (10) |
| **Temporary Uses** |  |

(B) Driveway length shall be in accordance with the minimum front or corner side yard setback.

(C) Minimum lot sizes may be reduced when the exclusive use of such lots is intended for utility substations, pumping stations, and similar facilities.

(D) See Section

*37-50.040: Building projections into yards.*

(E) See Section

*37-50.080: Exceptions to height limits.*

(F) Unenclosed porches and architectural entry features may encroach a maximum of five feet into required front and corner side yards.
(Ord. No. 2463 (NCS).)

## Division 2. Residential (R) Districts.

### Sec. 37-30.040. Residential low density (R-L) district.

### Sec. 37-30.050. Purpose.

In addition to the general purposes listed in *Article I, Division 1: General Provisions*, the purpose of the residential low density (R-L) district regulations is to:
(a) Provide appropriately located areas for single-family dwellings where the minimum density is not less than six dwelling units per net acre and the maximum density is not more than eight dwelling units per net acre without density bonus that are consistent with the general plan and with standards of public health and safety established by the Municipal Code;
(b) Provide adequate light, air, privacy, and open space for each dwelling unit and protect residents from the harmful effects of excessive noise, inappropriate population density, traffic congestion, and other adverse environmental impacts;
(c) Promote development of affordable housing, housing for qualifying residents, and day care facilities by providing a density bonus for projects, which meet state and/or city density bonus requirements;
(d) Achieve design compatibility through the use of site development regulations and design standards;
(e) Provide sites for public and semipublic land uses needed to complement residential development or requiring a residential environment;
(f) Ensure the provision of public services and facilities needed to accommodate planned population densities;
(g) Encourage attractive and interesting single-family residential streetscapes and dwelling units that are pedestrian-oriented and reflect traditional neighborhood design principles; and
(h) Promote safe residential neighborhoods through the incorporation of crime prevention through environmental design (CPTED) features in dwelling and site design. (Ord. No. 2463 (NCS).)

### Sec. 37-30.060. Use classifications.

**Table 37-30.30** identifies the use classifications for properties located in the residential low density (R-L) district:

| Table 37-30.30 Residential Low Density (R-L) District Use Classifications | | |
|---|---|---|
| Land Use | R-L-5.5 | Additional Use Regulations |
| **Residential Uses** | | |
| Day Care Homes, Family--Large | P | (1) |
| Day Care Homes, Family--Small | P | |
| Duplex Dwellings | NP | |

(23)

| | | |
|---|---|---|
| Home Occupations | P | (2) |
| Interim Housing | NP | |
| Manufactured Housing | P | |
| Mobilehome Parks | CUP | (3) |
| Multifamily Dwellings | NP | |
| Multiple Detached Dwellings | NP | |
| Residential Care Facilities--Large | CUP | |
| Residential Care Facilities--Small | P | |
| Residential Service Facilities | NP | |
| Second Dwelling Units | P | (5) |
| Single-family Dwellings--Attached | NP | |
| Single-family Dwellings--Detached | P | |
| **Public and Semipublic Uses** | | |
| Convalescent Hospitals/Nursing Homes | CUP | |
| Cultural Institutions | CUP | |
| Day Care Centers | CUP | |
| Park and Recreation Facilities | CUP | |
| Public Safety Facilities | CUP | |
| Religious Assembly | CUP | |
| Schools--Public/Private | CUP | |
| Telecommunications Facilities: | | |
| Major | NP | (9) |
| Minor | CUP | (9) |
| Utilities--Major | NP | (10) |
| **Accessory Uses and Structures** | P | (6) |
| Animals--Domestic | P | (4) |
| Utilities--Minor | P | (7) |
| Utility Sheds | P | (11) |
| **Temporary Uses** | TULP | (8) |
| **Nonconforming Uses and Structures** | See *Section 37-50.160*: *Nonconforming uses and structures.* | |

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required



buffering techniques, as appropriate, shall be used to ensure such facilities blend with and do not adversely impact adjacent uses.

(2) Any buildings constructed in conjunction with such facilities shall be compatible with the materials, exterior colors, and any distinctive architectural characteristics found in the surrounding neighborhood.

(3) The operators/property owners of such facilities shall be required (as a condition of approval) to provide regular maintenance for the life of such facilities (e.g., regular watering and care of vegetation (including replacement of any dead plant material or broken irrigation apparatus), trash and graffiti removal, and the repair and replacement of any damaged or worn-out facilities).

(q) **Traffic Calming.** Use of traffic-calming measures such as street bulb-outs, mini-circles, chicanes, short street segments, and roundabouts as determined appropriate by the city engineer are encouraged, especially in tract developments, to slow traffic and make streets more pedestrian-friendly. Street segments that are long and uninterrupted are to be avoided.

(r) **Internal Circulation.** Internal circulation (see definition of internal circulation *Section 37-10.330: "I" definitions*) shall be provided between all habitable rooms in a residential dwelling unit. (Ord. No. 2463 (NCS).)

## Sec. 37-30.090. Residential medium density (R-M) districts.

## Sec. 37-30.100. Purpose.

In addition to the general purposes listed in *Article I, Division 1: General Provisions*, the purpose of the residential medium density (RM) districts regulations is to:

(a) Provide appropriately located areas for single-family and medium density multifamily dwellings consistent with the general plan and with standards of public health and safety established by the Municipal Code;

(b) Provide adequate light, air, privacy, and open space for each dwelling unit and protect residents from the harmful effects of excessive noise, inappropriate population density, traffic congestion, and other adverse environmental impacts;

(c) Promote development of affordable housing, housing for qualifying residents, and day care facilities by providing a density bonus for projects that meet state and/or city density bonus requirements;

(d) Achieve design compatibility through the use of site development regulations and design standards;

(e) Protect adjoining lower density residential districts from excessive noise or loss of sun, light, quiet, and privacy resulting from proximity to higher density and multifamily dwellings;

(f) Provide sites for public and semipublic land uses needed to complement residential development or requiring a residential environment;

(g) Ensure the provision of public services and facilities needed to accommodate planned population densities;

(h) Encourage attractive and interesting residential streetscapes, dwelling units, and developments that are pedestrian-oriented and reflect traditional neighborhood design principles; and

(i) Promote safe residential neighborhoods through the use of crime prevention through environmental design (CPTED) features in dwelling and site design;

(j) The additional purposes of each R-M district are as follows:

(1) R-M-3.6: to provide for detached and attached single-family dwelling units on small lots where the minimum density is more than eight dwelling units per net acre and the maximum density is not more than twelve dwelling units per net acre without density bonus;

(2) R-M-2.9: to provide for medium density dwellings where the minimum density is more than eight dwelling units per net acre and the maximum density is not more than fifteen dwelling units per net acre without density bonus. (Ord. No. 2463 (NCS).)

## Sec. 37-30.110. Use classifications.

**Table 37-30.50** identifies the use classifications for properties located in the residential medium density (R-M) districts:

| Table 37-30.50 Residential Medium Density (R-M) Districts Use Classifications |
| --- |

| Land Use | R-M-3.6 | R-M-2.9 | Additional Use Regulations |
|---|---|---|---|
| **Residential Uses** | | | |
| Day Care Homes, Family--Large | P | P | (1) |
| Day Care Homes, Family--Small | P | P | |
| Duplex Dwellings | NP | P | (14) |
| Home Occupations | P | P | (3) |
| Interim Housing | NP | CUP | (6) |
| Manufactured Housing | P | P | (10)(14) |
| Mobilehome Parks | CUP | CUP | (4) |
| Multifamily Dwellings | NP | SPR | |
| Multiple Detached Dwellings | NP | SPR | |
| Residential Care Facilities--Large | CUP | CUP | |
| Residential Care Facilities--Small | P | P | |
| Residential Service Facilities | NP | CUP | |
| Second Dwelling Units | P | P | (7) |
| Single-family Dwellings--Attached | CUP | SPR | (14) |
| Single-family Dwellings--Detached | P | P | (10)(14) |
| **Public and Semipublic Uses** | | | |
| Convalescent Hospitals/Nursing Homes | CUP | CUP | |
| Cultural Institutions | CUP | CUP | |
| Day Care Centers | CUP | CUP | |
| Park and Recreation Facilities | CUP | CUP | |
| Public Safety Facilities | CUP | CUP | |
| Religious Assembly | CUP | CUP | |
| Schools--Public/Private | CUP | CUP | |
| Telecommunications Facilities: | | | |
| Major | NP | NP | (11) |
| Minor | CUP | CUP | (11) |
| Utilities--Major | NP | NP | (12) |
| **Accessory Uses and Structures** | P | P | (8) |
| Animals--Domestic | P | P | (2) |
| Utilities--Minor | P | P | (5) |
| Utility Sheds | P | SPR | (8)(13) |
| **Temporary Uses** | P | P | (9) |
| **Nonconforming Uses and Structures** | See *Section 37-50.160: Nonconforming uses and structures.* | | |



Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) See Section

*37-50.120: Large family day care homes.*

(2) Not more than four domestic animals are permitted per residential dwelling unit except that newborn and baby animals up to the age of three months shall not be counted.

(3) See Section

*37-50.100: Home occupations.*

(4) See Section

*37-50.140: Mobilehome parks.*

(5) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(6) Interim housing shall be limited to facilities serving six or fewer people. Such housing shall be designed to accommodate a group living environment. Labor camps shall not be allowed.

(7) See Section

*37-50.250: Second dwelling units.* A second dwelling unit shall only be permitted on a lot with a single-family detached dwelling.

(8) Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(9) See Section

*37-50.300: Temporary use of land.*

(10) Single-family detached dwellings in the R-M-2.9 district shall comply with the R-M-3.6 district regulations.

(11) See Section

*37-50.290: Telecommunication facilities.*

(12) Water well, drainage, and flood control facilities may be considered subject to the approval of a CUP.

(13) Utility sheds are permitted uses on lots with single-family detached dwellings only. See Section

*37-50.010(i): Utility Sheds.*

(14) Must meet the minimum density requirements of the applicable district except as otherwise provided in this section.
(Ord. No. 2463 (NCS).)

## Sec. 37-30.120. Development regulations.

**Table 37-30.60** identifies the development regulations for the residential medium density (R-M) districts:

| Table 37-30.60 Residential Medium Density (R-M) Districts Development Regulations | | | |
|---|---|---|---|
| **Development Regulations** | **R-M-3.6** | **R-M-2.9** | **Additional Regulations** |
| Lot Size--Minimum | 3,600 sq. ft. | 5,800 sq. ft. | (A)(B)(C)(D)(E)(R)(S) |
| Lot Area per Dwelling Unit--Minimum | - | 2,900 sq. ft. | (B)(D)(R)(S) |

(a) Provide appropriately located areas for high density and multifamily dwellings consistent with the general plan and with standards of public health and safety established by the Municipal Code;
(b) Provide adequate light, air, privacy, and open space for each dwelling unit and protect residents from the harmful effects of excessive noise, inappropriate population density, traffic congestion, and other adverse environmental impacts;
(c) Promote development of affordable housing, housing for qualifying residents, and day care facilities by providing a density bonus for projects, which meet state and/or city density bonus requirements;
(d) Achieve design compatibility through the use of site development regulations and design standards;
(e) Protect adjoining low and medium density residential districts from excessive noise or loss of sun, light, quiet, and privacy resulting from proximity to multifamily dwellings;
(f) Provide sites for public and semipublic land uses needed to complement residential development or requiring a residential environment;
(g) Ensure the provision of public services and facilities needed to accommodate planned population densities;
(h) Encourage attractive and interesting residential streetscapes and high density developments that are pedestrian-oriented and reflect traditional residential design principles; and
(i) Promote safe residential neighborhoods through the incorporation of crime prevention through environmental design (CPTED) features in dwelling and site design;
(j) The additional purposes of each R-H district are as follows:
(1) R-H-2.1: to provide for high density multifamily dwelling units where the minimum density is more than fifteen dwelling units per net acre and the maximum density is not more than twenty dwelling units per net acre without density bonus;
(2) R-H-1.8: to provide for high density multifamily dwelling units where the minimum density is more than fifteen dwelling units per net acre and the maximum density is not more than twenty-four dwelling units per net acre without density bonus. (Ord. No. 2463 (NCS).)

## Sec. 37-30.160. Use classifications.

**Table 37-30.70** identifies the use classifications for properties located in the residential high density (R-H) districts:

| Table 37-30.70 Residential High Density (R-H) Districts Use Classifications | | | |
|---|---|---|---|
| Land Use | R-H-2.1 | R-H-1.8 | Additional Use Regulations |
| **Residential Uses** | | | |
| Day Care Homes, Family--Large | P | P | (3) |
| Day Care Homes, Family--Small | P | P | |
| Duplex Dwellings | SPR | SPR | (14) |
| Home Occupations | P | P | (2) |
| Interim Housing | CUP | CUP | (5) |
| Manufactured Housing | CUP | CUP | (13)(14) |
| Mobilehome Parks | CUP | CUP | (4) |
| Multifamily Dwellings | SPR | SPR | |
| Multiple Detached Dwellings | SPR | SPR | |
| Residential Care Facilities--Large | CUP | CUP | |
| Residential Care Facilities--Small | P | P | |
| Residential Service Facilities | CUP | CUP | |
| Second Dwelling Units | P | P | (8) |

| | | | |
|---|---|---|---|
| Single-family Dwellings--Attached | SPR | SPR | (14) |
| Single-family Dwellings--Detached | CUP | CUP | (13)(14) |
| **Public and Semipublic Uses** | | | |
| Convalescent Hospitals/Nursing Homes | CUP | CUP | |
| Cultural Institutions | CUP | CUP | |
| Day Care Centers | CUP | CUP | |
| Park and Recreation Facilities | CUP | CUP | |
| Public Safety Facilities | CUP | CUP | |
| Religious Assembly | CUP | CUP | |
| Schools--Public/Private | CUP | CUP | |
| Telecommunications Facilities: | | | |
| Major | NP | NP | (9) |
| Minor | CUP | CUP | (9) |
| Utilities--Major | NP | NP | (12) |
| **Accessory Uses and Structures** | SPR | SPR | (6) |
| Animals--Domestic | P | P | (1) |
| Utilities--Minor | P | P | (10) |
| Utility Sheds | SPR | SPR | (6)(11) |
| **Temporary Uses** | TULP | TULP | (7) |
| **Nonconforming Uses and Structures** | See *Section 37-50.160*: *Nonconforming uses and structures.* | | |

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) Not more than four domestic animals are permitted per residential dwelling unit except that newborn and baby animals up to the age of three months shall not be counted.

(2) See Section

*37-50.100*: *Home occupations.*

(3) See Section

*37-50.120*: *Large family day care homes.*

(4) See Section

*37-50.140*: *Mobilehome parks.*

(5) Interim housing serving six or fewer people shall be allowed with a SPR. Such facilities shall be designed to accommodate a group living environment. Labor camps are not permitted.

(6) Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(7) See Section



*37-50.300*: *Temporary use of land*.

(8) See Section

*37-50.250*: *Second dwelling units*. A second dwelling unit shall only be permitted on a lot with a single-family detached dwelling.

(9) See Section

*37-50.290*: *Telecommunication facilities*.

(10) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(11) Utility sheds are permitted uses on lots with single-family detached dwellings only. See Section

*37-50.010(i): Utility Sheds*.

(12) Water well, drainage, and flood control facilities may be considered subject to the approval of a CUP.

(13) Single-family detached dwellings in the R-H district shall be subject to the R-M-3.6 district regulations.

(14) Must meet the minimum density requirements of the applicable district except as otherwise provided in this section.
(Ord. No. 2463 (NCS).)

## Sec. 37-30.170. Development regulations.

**Table 37-30.80** identifies the development regulations for the residential high density (R-H) districts:

| Table 37-30.80 Residential High Density (R-H) Districts Development Regulations | | | |
|---|---|---|---|
| Development Regulations | R-H-2.1 | R-H-1.8 | Additional Regulations |
| Lot Size--Minimum | 7,200 sq. ft. | 7,200 sq. ft. | (A)(B)(C)(D)(N)(O)(Q) |
| Lot Area per Dwelling Unit--Minimum | 2,100 sq. ft. | 1,800 sq. ft. | (A)(B)(D)(N)(Q) |
| Lot Width--Minimum | 75 ft. | 75 ft. | (N)(P) |
| Corner Lot | 80 ft. | 80 ft. | |
| Lot Depth--Minimum | 100 ft. | 100 ft. | (N)(P) |
| Lot Frontage--Minimum | 35 ft. | 35 ft. | (N)(R) |
| Yards--Minimum | | | |
| Front | 15 ft. | 15 ft. | (E)(F)(G)(N) |
| Side | | | |
| Interior | 10 ft. | 10 ft. | (F)(J)(N) |
| Corner | 15 ft. | 15 ft. | (E)(F)(G)(N) |
| Rear | 10 ft. | 10 ft. | (F)(J)(N) |
| Height--Maximum | 45 ft. | 45 ft. | (K)(N) |
| Distance Between Structures--Minimum | 10 ft. | 10 ft. | (H)(N) |
| Driveway Length--Minimum (From street property line) | 20 ft. | 20 ft. | (L)(N) |
| Nonresidential FAR | 0.40 | 0.40 | |

effects of incompatible uses;

(d) Minimize the impact of commercial development on adjacent residential districts;

(e) Ensure that the appearance and effects of commercial buildings and uses are harmonious with the character of the area in which they are located;

(f) Provide opportunities for mixed use buildings/developments and residential developments in certain commercial districts;

(g) Ensure the provision of adequate off-street parking and loading facilities;

(h) Provide sites for public and semipublic uses complementary to commercial development or compatible with a commercial environment;

(i) Encourage compact, attractive, and pedestrian-oriented streetscapes and commercial developments; and

(j) Promote vital and safe commercial areas through the incorporation of crime prevention through environmental design (CPTED) features in building and site design;

(k) The additional purposes of each commercial (C) district are as follows:

(1) Commercial Office/Residential (CO/R) District. The commercial office/residential district provides a transitional zone between commercial and residential uses, with opportunities for limited commercial, institutional, office, service, and residential uses.

(2) Commercial Office (CO) District. The commercial office (CO) district provides areas primarily for offices, personal services, financial services, mixed use residential, and for residential uses.

(3) Commercial Retail (CR) District. The commercial retail (CR) district allows a wide range of retail stores, restaurants, hotels and motels, commercial recreation, personal services, business services, offices, financial services, mixed use residential, and/or limited residential uses.

(4) Commercial Thoroughfare (CT) District. The commercial thoroughfare (CT) district provides areas for uses required by the traveling public such as hotels and motels, service stations, and, restaurants with immediate access to U.S. Highway 101. (Ord. No. 2463 (NCS).)

## Sec. 37-30.200. Use classifications.

**Table 37-30.90** identifies the use classifications for properties located in the commercial (C) districts:

| Table 37-30.90 Commercial (C) Districts Use Classifications | | | | | |
|---|---|---|---|---|---|
| Land Use | CO/R | CO | CR | CT | Additional Use Regulations |
| **Residential Uses** | | | | | |
| Day Care Homes, Family--Large | - | - | - | - | (1)(28) |
| Day Care Homes, Family--Small | - | - | - | - | (28) |
| Duplex Dwellings | SPR | SPR | CUP | NP | |
| Home Occupations | - | - | - | - | (33) |
| Interim Housing | CUP | CUP | CUP | NP | (3) |
| Manufactured Housing | SPR | CUP | CUP | NP | |
| Multiple Detached Dwellings | SPR | SPR | CUP | NP | |
| Multifamily Dwellings | SPR | SPR | CUP | NP | |
| Residential Care Facilities--Large | CUP | CUP | CUP | NP | |
| Residential Care Facilities--Small | - | - | - | - | (34) |
| Residential Service Facilities | CUP | CUP | CUP | NP | |
| Second Dwelling Units | SPR | NP | NP | NP | (2) |
| Single-family Dwellings--Attached | SPR | SPR | CUP | NP | |

| | | | | | |
|---|---|---|---|---|---|
| Single-family Dwellings--Detached | P | CUP | CUP | NP | |
| Single Room Occupancy Housing | CUP | CUP | CUP | NP | (21) |
| **Mixed Uses** | | | | | |
| Mixed Use Buildings and Developments | SPR | SPR | SPR | NP | (26) |
| **Public and Semipublic Uses** | | | | | |
| Clubs and Lodges | CUP | CUP | CUP | NP | (23) |
| Convalescent Hospitals/Nursing Homes | CUP | CUP | CUP | NP | |
| Cultural Institutions | CUP | CUP | SPR | NP | |
| Day Care Centers | CUP | SPR | SPR | NP | |
| Government Offices | SPR | SPR | SPR | NP | |
| Hospitals | CUP | CUP | CUP | NP | |
| Mural Exhibits | SPR | SPR | SPR | SPR | (18) |
| Park and Recreation Facilities | SPR | SPR | SPR | NP | |
| Parking Lots and Structures | CUP | SPR | SPR | NP | (27) |
| Public Safety Facilities | CUP | SPR | SPR | NP | |
| Public Utility Service Yards | NP | NP | NP | NP | |
| Religious Assembly | CUP | CUP | CUP | NP | |
| Schools--Public/Private | CUP | SPR | SPR | NP | |
| Schools--Trade | NP | SPR | SPR | NP | (7)(16) |
| Telecommunications Facilities: | | | | | |
| Major | NP | CUP | CUP | CUP | (24) |
| Minor | P | P | P | P | (24) |
| Utilities--Major | NP | NP | NP | NP | (29) |
| **Commercial Uses** | | | | | |
| Adult Entertainment Facilities | NP | NP | NP | NP | (5)(23) |
| Ambulance Services | NP | NP | CUP | NP | |
| Animal Sales and Services: | | | | | |
| Animal Boarding | NP | NP | SPR | NP | (7) |
| Animal Grooming | NP | NP | SPR | NP | (7) |
| Animal Hospitals | NP | CUP | SPR | NP | (7) |
| Animal Retail Sales | NP | NP | SPR | NP | (7) |
| Antique and Collectible Shops | NP | NP | SPR | NP | |
| Artists' Studios | SPR | SPR | SPR | NP | |
| Automated Teller Machines (ATMs) | SPR | SPR | SPR | SPR | (31) |



| | | | | | |
|---|---|---|---|---|---|
| Bakeries: | | | | | |
| Retail | NP | NP | SPR | NP | |
| Wholesale | NP | NP | CUP | NP | |
| Bars | NP | NP | CUP | CUP | (23) |
| Bed and Breakfast Inns | CUP | CUP | SPR | NP | (23) |
| Building Materials and Services | NP | NP | SPR | NP | (7)(9) |
| Catering Services | NP | NP | SPR | NP | |
| Commercial Filming | NP | NP | SPR | NP | |
| Commercial Recreation and Entertainment | NP | NP | CUP | NP | (6)(23) |
| Convenience Stores: | NP | NP | SPR | SPR | (20)(23) |
| With Gas Pumps | NP | NP | SPR | SPR | (7)(8)(20)(23) |
| Entertainment, Live (Excluding Adult Entertainment) | NP | NP | CUP | NP | (17)(23) |
| Equipment Sales, Services, and Rentals | NP | NP | NP | NP | (7) |
| Financial Services | NP | SPR | SPR | NP | (31) |
| Food and Beverage Sales | NP | NP | SPR | SPR | (20)(23) |
| Fortunetelling | NP | NP | SPR | NP | (10) |
| Funeral Services | NP | SPR | SPR | NP | (22) |
| Hotels and Motels: | NP | NP | SPR | SPR | (21) |
| Extended Stay | NP | NP | NP | CUP | (21)(25) |
| Kiosks: | | | | | |
| Permanent | NP | NP | CUP | CUP | (37) |
| Temporary or Semi-permanent | NP | NP | CUP | CUP | (37) |
| Laboratories | SPR | SPR | SPR | NP | |
| Laundries: | | | | | |
| Limited | NP | NP | SPR | NP | |
| Unlimited | NP | NP | NP | NP | |
| Live-work Units | CUP | CUP | CUP | CUP | (32) |
| Maintenance and Repair Services: | | | | | |
| Major | NP | NP | NP | NP | (7) |
| Minor | NP | NP | SPR | NP | (7) |
| Marine Sales and Services | NP | NP | SPR | NP | (7) |
| Nurseries | NP | NP | SPR | NP | (7) |
| Offices: | | | | | |

(33)

| Use | | | | | |
|-----|---|---|---|---|---|
| Business and Professional | SPR | SPR | SPR | NP | |
| Medical and Dental | SPR | SPR | SPR | NP | |
| Pawn Shops | NP | NP | CUP | NP | (36) |
| Personal Improvement Services | SPR | SPR | SPR | NP | |
| Personal Services | SPR | SPR | SPR | NP | |
| Printing and Publishing: | | | | | |
| Limited | SPR | SPR | SPR | NP | |
| Unlimited | NP | CUP | CUP | NP | |
| Recreational Vehicle Parks | NP | NP | SPR | SPR | |
| Recycling Facilities | See Section 37-50.210: Recycling facilities. | | | | |
| Research and Development Services | NP | CUP | CUP | NP | |
| Restaurants: | NP | CUP | SPR | SPR | (23) |
| With Drive-through or Drive-in Facilities | NP | NP | SPR | SPR | (23) |
| Retail Sales | CUP | CUP | SPR | NP | (11)(23) |
| Secondhand or Consignment Stores | NP | NP | SPR | NP | (35) |
| Service Stations | NP | NP | SPR | SPR | (7)(8)(23) |
| Shopping Centers | NP | NP | SPR | NP | |
| Speculative Buildings | NP | SPR | SPR | NP | (12) |
| Tattoo and/or Body Piercing Parlors | NP | NP | CUP | NP | |
| Vehicle-related Retail Sales and Services | NP | NP | SPR | NP | (7)(8) |
| Vehicle Repair Facilities: | | | | | |
| Major | NP | NP | NP | NP | (7)(8) |
| Minor | NP | NP | SPR | NP | (7)(8) |
| Vehicle Sales and Services | NP | NP | SPR | NP | (7)(8) |
| Vehicle Storage | NP | NP | NP | NP | (7) |
| Vehicle Washing | NP | NP | SPR | NP | (7)(8) |
| Warehousing and Storage: | | | | | |
| Limited | NP | NP | CUP | NP | (7)(13) |
| Wholesale Distribution | NP | NP | NP | NP | (7) |
| **Industrial Uses** | | | | | |
| Industrial Complexes | NP | NP | NP | NP | |
| Industry--Limited | NP | NP | NP | NP | |
| Salvage and Wrecking Operations: | | | | | |
| Nonvehicular | NP | NP | NP | NP | (19) |
| Vehicular | NP | NP | NP | NP | (19) |



(34)

| Accessory Uses and Structures | | | | | (14) |
|---|---|---|---|---|---|
| Animals--Domestic | P | P | P | P | (30) |
| Utilities--Minor | P | P | P | P | (4) |
| **Temporary Uses** | TULP | TULP | TULP | TULP | (15) |
| **Nonconforming Uses and Structures** | See Section _37-50.160_: Nonconforming uses and structures. | | | | |

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) See Section

_37-50.120_: Large family day care homes.

(2) See Section

_37-50.250_: Second dwelling units. Second dwelling units are only allowed when the principal use is a detached single-family dwelling.

(3) Interim housing serving six or fewer people allowed with a SPR.

(4) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(5) See Section

_37-50.020_: Adult entertainment facilities. Adult bookstores shall be subject to the same supplemental regulations applicable to adult entertainment facilities.

(6) Commercial recreation and entertainment uses less than two thousand square feet in floor area are allowed with a SPR.

(7) See Section

_37-50.170_: Outdoor storage and display for any outdoor activity or use. In the CR district, vehicle and equipment servicing, maintenance, and repair, and lumber yards shall be conducted wholly within an enclosed structure.

(8) See Section

_37-50.260_: Service stations, vehicle repair, and vehicle washing.

(9) Building materials and service uses shall not abut an R district unless accessory to a retail use. In the CR district, contractor yards shall not be permitted.

(10) No fortunetelling use shall be located any closer than within seven hundred fifty feet of another fortunetelling use.

(11) Retail sales (as a principal use) shall be limited to professional pharmacies in the CO and CO/R districts. Minor retail sales that directly relate to the principal use are permitted as an accessory use. Such sales shall not occupy more than ten percent of the total gross floor area of the structure(s) on a site and be clearly incidental to the principal use.

(12) See Section

_37-50.280_: Speculative buildings.

(13) See Section

_37-50.320_: Warehousing limited. The CUP for limited warehousing is not subject to administrative approval pursuant to Section

_37-60.500_: Administrative conditional use permits. Approval by the planning commission shall require an affirmative vote of five members. Any CUP application receiving an affirmative vote of four members of the



planning commission shall automatically be set for hearing for a final determination by the city council. All other general appeal rights remain for these CUP applications.

(14) See Section

_37-50.010_: _Accessory uses and structures._ Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(15) See Section

_37-50.300_: _Temporary use of land._

(16) Truck and heavy equipment driving schools shall not be permitted.

(17) (a) A live entertainment permit shall be issued for live entertainment uses in accordance with Section

_37-60.500_: _Administrative conditional use permits._

(b) Live entertainment, excluding adult entertainment, may be allowed in the CT district as an accessory use. A live entertainment permit shall be obtained if the live entertainment is located within three hundred feet of a residential dwelling or zone. The distance shall be measured from the closest exterior wall of the building/suite or property line of the site (if there is no building) where the live entertainment is located to the nearest property line of the site containing the residential dwelling or zone.

(18) See Section

_37-50.150_: _Mural exhibits._

(19) See Section

_37-50.230_: _Salvage and wrecking operations._

(20) Food and beverage sales and convenience stores shall be limited to three thousand five hundred square feet in the CT district.

(21) See Section

_37-50.270_: _Single room occupancy (SRO) housing._

(22) Funeral services with crematories shall require a CUP.

(23) See Section

_37-50.030_: _Alcohol license review._

(24) See Section

_37-50.290_: _Telecommunication facilities._

(25) Within the CT district, hotel and motel operators may allow occupant guest stays to exceed twenty-eight days subject to approval of a CUP provided the following conditions are satisfied and contained in the CUP:

(a) At any given time, no more than twenty-five percent of the total guest rooms shall exceed a twenty-eight-day stay.

(b) Operator shall require all guests as a condition of occupancy to execute an agreement in writing that the entire stay is a transient occupancy and all guests shall remit payment of TOT to the operator for each day of occupancy regardless of length of stay. The form of agreement shall be reviewed and approved by the city.

(c) Occupant guest stays shall not exceed one hundred eighty days either consecutive, continuous, or in total, in any calendar year.

(d) Transient occupancy tax (TOT) shall be paid for each occupied guest room regardless of length of stay.

(e) Operator shall submit an annual report no later than January 31 of each calendar year to the city of Salinas demonstrating compliance with the extended stay provisions for the previous calendar year.

(f) Off-street parking: 1.25 off-street parking spaces per guest room shall be provided plus one parking space per fifty square feet of banquet seating area plus parking for other uses and facilities as required by Section

_37-50.360_: _Off-street parking and loading spaces regulations._

(26) Prohibited commercial uses in mixed use residential developments include vehicle-related uses including repair, sales, service, storage, and washing; animal sales and services; maintenance and repair services; pawn shops; tattoo and/or body piercing parlors; industrial uses; and other uses deemed inappropriate by the city planner. In mixed use buildings, commercial uses shall be limited to retail, restaurants, offices, services,



and similar pedestrian-oriented uses, which are deemed by the city planner to be compatible with residential uses and are permitted under the applicable zoning district.

(27) Does not apply to the parking required to serve the use per Section

*37-50.360: Off-street parking and loading spaces regulations.*

(28) Small and large family day care homes are permitted uses when the principal use is a residential dwelling unit.

(29) Water well, drainage, and flood control facilities may be considered subject to the approval of a CUP.

(30) Not more than four domestic animals are permitted per residential dwelling unit except that newborn and baby animals up to the age of three months shall not be counted.

(31) Automated Teller Machines (ATMs) are permitted in the CO/R district subject to the approval of a SPR. ATM facilities, which are located entirely within a building and are not externally accessible shall be a permitted use.

(32) See Section

*37-50.130: Live-work units.*

(33) See Section

*37-50.100: Home occupations.* Home occupations are permitted uses when the principal use is a residential dwelling unit.

(34) Small residential care facilities are permitted uses when the principal use is a residential dwelling unit.

(35) No firearm or weapon sales shall be permitted.

(36) No pawnshop shall be located closer than seven hundred fifty feet from another pawn shop.

(37) Permanent or temporary kiosks that are designed and included as part of a larger development review application for another use (such as a shopping center, retail, or restaurant use) that involves the entire subject parcel or lot where the kiosk will be located shall be subject to the same development review process as required for that use.
(Ord. No. 2463 (NCS).)

## Sec. 37-30.210. Development regulations.

**Table 37-30.100** identifies the development regulations for the commercial (C) districts:

| Table 37-30.100 Commercial (C) Districts Development Regulations | | | | | |
|---|---|---|---|---|---|
| **Development Regulation** | **CO/R** | **CO** | **CR** | **CT** | **Additional Regulations** |
| Lot Size--Minimum | 7,500 sq. ft. | 7,500 sq. ft. | 7,500 sq. ft. | 10,000 sq. ft. | (H)(I) |
| Lot Width--Minimum | 75 ft. | 75 ft. | 75 ft. | 100 ft. | |
| Lot Depth--Minimum | 100 ft. | 100 ft. | 100 ft. | 100 ft. | |
| Lot Frontage--Minimum | 50 ft. | 50 ft. | 50 ft. | 50 ft. | |
| Yards--Minimum | | | | | |
| Front | 15 ft. | 10 ft. | 0 ft. | 0 ft. | (C)(D)(G) |
| Side | | | | | |
| Interior | 0 ft. | 0 ft. | 0 ft. | 0 ft. | (C)(E) |
| Corner | 10 ft. | 10 ft. | 0 ft. | 0 ft. | (C)(G) |
| Rear | 10 ft. | 10 ft. | 0 ft. | 0 ft. | (C)(E) |



(1) Mixed Arterial Frontage (MAF) District. The mixed arterial frontage district provides a combination of mixed use, commercial, and small-scale non-nuisance industry along certain areas of North Main Street, East and West Market Streets, and other arterials that have highly mixed land use patterns of existing development. Stand-alone residential uses within the MAF district are generally not encouraged, unless on a vacant site or as part of a comprehensive revitalization of the property subject to the approval of a conditional use permit. Residential uses in mixed use buildings may only be combined with office, retail, restaurants, and service commercial uses, and not with industrial, maintenance, vehicle repair and restoration, or storage activities.

(2) Mixed Use (MX) District. The mixed use district provides opportunities for mixed use, office, public and semipublic uses, and commercial uses that emphasize retail, entertainment, and service activities. Medium and high density residential uses are encouraged within MX districts to facilitate pedestrian-oriented activity centers. (Ord. No. 2463 (NCS).)

### Sec. 37-30.240. Use classifications.

**Table 37-30.110** identifies the use classifications for properties located in the mixed use (MU) districts:

| Table 37-30.110 Mixed Use (MU) Districts Use Classifications | | | |
|---|---|---|---|
| Land Use | MAF | MX | Additional Use Regulations |
| **Residential Uses** | | | |
| Day Care Homes, Family--Large | - | - | (1)(2) |
| Day Care Homes, Family--Small | - | - | (2) |
| Duplex Dwellings | CUP | CUP | |
| Home Occupations | - | - | (35) |
| Interim Housing | CUP | CUP | (3) |
| Manufactured Housing | NP | NP | |
| Multiple Detached Dwellings | CUP | CUP | |
| Multifamily Dwellings | CUP | SPR | |
| Residential Care Facilities--Large | CUP | CUP | |
| Residential Care Facilities--Small | - | - | (11) |
| Residential Service Facilities | CUP | CUP | (3) |
| Second Dwelling Units | NP | NP | |
| Single-family Dwellings--Attached | CUP | SPR | |
| Single-family Dwellings--Detached | NP | NP | |
| Single Room Occupancy Housing | CUP | CUP | |
| **Mixed Uses** | | | |
| Mixed Use Buildings and Developments | SPR | SPR | (29)(36) |
| **Public and Semipublic Uses** | | | |
| Clubs and Lodges | CUP | CUP | |
| Convalescent Hospitals/Nursing Homes | CUP | CUP | |
| Cultural Institutions | SPR | SPR | |

| | | | |
|---|---|---|---|
| Day Care Centers | CUP | SPR | |
| Government Offices | SPR | SPR | |
| Hospitals | CUP | CUP | |
| Mural Exhibits | SPR | SPR | (18) |
| Park and Recreation Facilities | SPR | SPR | |
| Parking Lots and Structures | CUP | CUP | (26) |
| Public Safety Facilities | CUP | CUP | |
| Public Utility Service Yards | NP | NP | |
| Religious Assembly | CUP | CUP | |
| Schools--Public/Private | CUP | CUP | |
| Schools--Trade | CUP | NP | (7)(41) |
| Telecommunication Facilities: | | | |
| Major | CUP | CUP | (22) |
| Minor | SPR | CUP | (22) |
| Utilities--Major | NP | NP | (31) |
| **Commercial Uses** | | | |
| Adult Entertainment Facilities | NP | NP | (5)(21) |
| Ambulance Services | CUP | NP | |
| Animal Sales and Services: | | | |
| Animal Boarding | CUP | NP | (7) |
| Animal Grooming | SPR | SPR | (7) |
| Animal Hospitals | SPR | NP | (7) |
| Animal Retail Sales | SPR | SPR | (7) |
| Antique and Collectible Shops | SPR | SPR | |
| Artists' Studios | SPR | SPR | |
| Automated Teller Machines (ATMs) | SPR | SPR | (30)(32) |
| Bakeries: | | | |
| Retail | SPR | SPR | |
| Wholesale | CUP | NP | |
| Bars | CUP | CUP | (21) |
| Bed and Breakfast Inns | SPR | SPR | |
| Building Materials and Services | CUP | NP | (7)(9) |
| Catering Services | SPR | NP | (27) |
| Commercial Recreation and Entertainment | CUP | CUP | (6)(21) |
| Convenience Stores: | SPR | SPR | (21) |

| With Gas Pumps | SPR | CUP | (7)(8)(21)(28) |
|---|---|---|---|
| Entertainment, Live (Excluding Adult Entertainment) | CUP | CUP | (16)(21) |
| Equipment Sales, Services, and Rentals | CUP | NP | (7) |
| Financial Services | SPR | SPR | (30)(32) |
| Food and Beverage Sales | SPR | SPR | (21)(32) |
| Fortunetelling | SPR | CUP | (10) |
| Funeral Services | SPR | NP | (20) |
| Hotels and Motels: | SPR | CUP | (19) |
| Extended Stay | CUP | CUP | (19) |
| Kiosks: | | | |
| Permanent | CUP | CUP | (33) |
| Temporary or Semi-permanent | CUP | CUP | (33) |
| Laboratories | SPR | SPR | |
| Laundries: | | | |
| Limited | SPR | SPR | |
| Unlimited | SPR | NP | |
| Live-work Units | SPR | SPR | (24) |
| Maintenance and Repair Services: | | | |
| Major | CUP | NP | (7) |
| Minor | SPR | SPR | (7) |
| Marine Sales and Services | CUP | NP | (7) |
| Nurseries | CUP | NP | (7)(40) |
| Offices: | | | |
| Business and Professional | SPR | SPR | |
| Medical and Dental | SPR | SPR | |
| Pawn Shops | CUP | NP | (37) |
| Personal Improvement Services | SPR | SPR | |
| Personal Services | SPR | SPR | (30) |
| Printing and Publishing: | | | |
| Limited | SPR | SPR | |
| Unlimited | CUP | NP | |
| Recreational Vehicle Parks | NP | NP | |
| Recycling Facilities | See *Section 37-50.210*: *Recycling facilities.* | | |
| Research and Development Services | SPR | NP | |
| Restaurants: | SPR | SPR | (21) |



| With Drive-through or Drive-in Facilities | CUP | NP | (21)(30) |
|---|---|---|---|
| Retail Sales | SPR | SPR | (21) |
| Secondhand or Consignment Stores | CUP | CUP | (38) |
| Service Stations | SPR | CUP | (7)(8)(21) |
| Speculative Buildings | SPR | SPR | (12) |
| Shopping Centers | SPR | SPR | |
| Tattoo and/or Body Piercing Parlors | CUP | NP | |
| Vehicle-related Retail Sales and Services | SPR | NP | (7)(8)(17) |
| Vehicle Repair Facilities: | | | (7)(8) |
| Major | CUP | NP | |
| Minor | CUP | NP | |
| Vehicle Sales and Services | CUP | NP | (7)(8) |
| Vehicle Storage | NP | NP | (7)(8) |
| Vehicle Washing | CUP | NP | (7)(8)(39) |
| Warehousing and Storage: | | | |
| Limited | CUP | NP | (7)(13)(25) |
| Wholesale Distribution | CUP | NP | (7) |
| **Industrial Uses** | | | |
| Industrial Complexes | CUP | NP | (23) |
| Industry--Limited | CUP | NP | |
| **Accessory Uses and Structures** | | | (14) |
| Animals--Domestic | P | P | (34) |
| Utilities--Minor | P | P | (4) |
| **Temporary Uses** | TULP | TULP | (15) |
| **Nonconforming Uses and Structures** | See *Section 37-50.160: Nonconforming uses and structures.* | | |

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) See Section

*37-50.120: Large family day care homes.*

(2) Small and large family day care homes are permitted uses when the principal use is a residential dwelling unit.

(3) Residential service facilities and interim housing serving six or fewer people are allowed with a SPR. Such



facilities shall be designed to accommodate a group living environment.

(4) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(5) See Section

37-50.020: *Adult entertainment facilities*. Adult bookstores shall be subject to the same supplemental regulations applicable to adult entertainment facilities.

(6) Commercial recreation and entertainment uses less than two thousand square feet in floor area are allowed with a SPR.

(7) See Section

37-50.170: *Outdoor storage and display* for any outdoor activity or use.

(8) See Section

37-50.260: *Service stations, vehicle repair, and vehicle washing*.

(9) Building materials and service uses shall not abut an R district unless accessory to a retail use.

(10) No fortunetelling use shall be located any closer than within seven hundred fifty feet of another fortunetelling use.

(11) Small residential care facilities are a permitted use when the principal use is a residential dwelling.

(12) See Section

37-50.280: *Speculative buildings*.

(13) See Section

37-50.320: *Warehousing limited*.

(14) See Section

37-50.010: *Accessory uses and structures*. Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(15) See Section

37-50.300: *Temporary use of land*.

(16) A live entertainment permit shall be issued for live entertainment uses in accordance with Section

37-60.500: *Administrative conditional use permits*.

(17) The maximum floor area allowed for any structure devoted to vehicle-related retail sales and services located in the MAF district is limited to five thousand square feet.

(18) See Section

37-50.150: *Mural exhibits*.

(19) See Section

37-50.270: *Single room occupancy (SRO) housing*.

(20) Funeral services with crematories shall require a CUP.

(21) See Section

37-50.030: *Alcohol license review*.

(22) See Section

37-50.290: *Telecommunication facilities*. Only stealth telecommunication facilities shall be permitted.

(23) Uses within an industrial complex must be otherwise authorized by SPR within the zoning district.

(24) See Section

37-50.130: *Live-work units*.

(25) The CUP for limited warehousing is not subject to administrative approval pursuant to Section

37-60.500: *Administrative conditional use permits*. Approval by the planning commission shall require an affirmative vote of five members. Any CUP application receiving an affirmative vote of four members of the planning commission shall automatically be set for hearing for a final determination by the city council. All

(42)

other general appeal rights remain for these CUP applications.

(26) Does not apply to the parking required to serve the use per Section

*37-50.360: Off-street parking and loading spaces regulations.*

(27) Catering is only permitted as an accessory use to a restaurant in the MX district. The parking or storage of catering vehicles in the MX district is prohibited.

(28) Convenience stores with gas pumps (including sales, display, storage, restrooms, etc.) are limited to a maximum of two thousand five hundred square feet of gross floor area in the MX district.

(29) See Section

*37-30.260: Mixed use building incentives.* Mixed use buildings in the MAF or MX districts shall have no more than twenty-five percent of the gross floor area of the ground floor of a building dedicated to residential uses unless authorized by the city planner pursuant to Section

*37-30.270: Modification of use regulations.*

(30) Drive-through lanes and drive-in uses shall not be permitted in the MX district except as otherwise provided for in this section. When permitted, the following shall apply to any drive-through lane:

(a) Drive-through lanes shall not be located between the street facade of a building and the street.

(b) A drive-through lane or access driveway shall not directly access the primary street serving the site.

(31) Water well, drainage, and flood control facilities may be considered subject to the approval of a CUP.

(32) ATM facilities, which are located entirely within a building and are not externally accessible shall be a permitted use.

(33) Permanent or temporary kiosks that are designed and included as part of a larger development review application for another use (such as a shopping center, retail, or restaurant use) that involves the entire subject parcel or lot where the kiosk will be located shall be subject to the same development review process as required for that use.

(34) Not more than four domestic animals are permitted per residential dwelling except that newborn and baby animals up to the age of three months shall not be counted.

(35) See Section

*37-50.100: Home occupations.* Home occupations are permitted uses when the principal use is a residential dwelling unit.

(36) Prohibited commercial uses in mixed use developments include vehicle-related uses including repair, sales, service, storage, and washing; animal sales and services; maintenance and repair services; pawn shops; tattoo and/or body piercing parlors; industrial uses; and other uses deemed inappropriate by the city planner. In mixed use buildings, commercial uses shall be limited to retail, restaurants, offices, services, and similar pedestrian-oriented uses, which are deemed by the city planner to be compatible with residential uses.

(37) No pawn shop shall be located any closer than within seven hundred fifty feet of another pawn shop use.

(38) No firearm or weapon sales shall be permitted.

(39) In the MX district, vehicle washing may be considered subject to the approval of a CUP as an accessory use to a service station only.

(40) In the MX district, nursery uses are allowed as an accessory use only.

(41) Truck and heavy equipment driving schools shall not be permitted.
(Ord. No. 2463 (NCS).)

## Sec. 37-30.250. Development regulations.

**Table 37-30.120** identifies the development regulations for the mixed use (MU) districts:

| Table 37-30.120 | | | |
|---|---|---|---|
| **Mixed Use (MU) Districts Development Regulations** | | | |
| **Development Regulations** | **MAF** | **MX** | **Additional Regulations** |

and service uses;
(b) Strengthen the city's economic base, and provide employment opportunities close to home for residents of the city and surrounding communities;
(c) Minimize the impact of industrial uses on adjacent residential and commercial districts; and
(d) Promote safe industrial areas through the incorporation of crime prevention through environmental design (CPTED) features in development;
(e) The additional purposes of each industrial (I) district are as follows:
(1) Industrial-General Commercial (IGC) District. The industrial-general commercial (IGC) district provides for a range of retail, wholesale, and service businesses not generally suitable in commercial districts because they attract heavy automobile and truck traffic or have certain adverse impacts; and to provide opportunities for certain limited manufacturing uses that have impacts comparable to those of retail and service.
(2) Industrial-Business Park (IBP) District. The industrial-business park (IBP) district regulations allow development of sites with high architectural and landscape standards for industrial office centers, limited manufacturing, warehousing and large-scale, single destination retail and other limited retail uses which may not be appropriate in retail areas.
(3) Industrial-General (IG) District. The industrial-general (IG) district regulations provide for the full range of manufacturing, industrial processing, general service, and distribution uses deemed suitable for location in Salinas; and protect Salinas' general industrial areas from competition for space from unrelated commercial uses that could more appropriately be located elsewhere in the city. (Ord. No. 2463 (NCS).)

## Sec. 37-30.310. Use classifications.

**Table 37-30.130** identifies the use classifications for properties located in industrial (I) districts:

| Table 37-30.130 Industrial (I) Districts Use Classifications | | | | |
|---|---|---|---|---|
| **Land Use** | **IGC** | **IBP** | **IG** | **Additional Use Regulations** |
| **Public and Semipublic Uses** | | | | |
| Airports and Heliports | NP | CUP | CUP | (12) |
| Clubs and Lodges | CUP | NP | NP | (19) |
| Convalescent Hospitals/Nursing Homes | NP | NP | NP | |
| Cultural Institutions | NP | NP | NP | |
| Day Care Centers | SPR | CUP | CUP | (17) |
| Government Offices | SPR | SPR | SPR | |
| Hospitals | NP | NP | NP | |
| Mural Exhibits | SPR | SPR | SPR | (13) |
| Park and Recreation Facilities | CUP | NP | NP | |
| Parking Lots and Structures | SPR | SPR | SPR | (24) |
| Public Safety Facilities | SPR | SPR | SPR | |
| Public Utility Service Yards | SPR | NP | SPR | (9) |
| Religious Assembly | NP | NP | NP | |
| Schools--Public/Private | NP | NP | NP | |
| Schools--Trade | SPR | SPR | SPR | (9) |
| Telecommunications Facilities: | | | | |

(44)

| | | | | |
|---|---|---|---|---|
| Major | CUP | CUP | CUP | (20) |
| Minor | P | P | P | (20) |
| Utilities--Major | CUP | CUP | CUP | |
| **Commercial Uses** | | | | |
| Adult Entertainment Facilities | SPR | NP | CUP | (3)(19) |
| Ambulance Services | SPR | SPR | SPR | |
| Animal Sales and Services: | | | | |
| Animal Boarding | SPR | SPR | SPR | |
| Animal Grooming | SPR | NP | NP | |
| Animal Hospitals | SPR | SPR | SPR | |
| Animal Retail Sales | SPR | NP | NP | |
| Artists' Studios | SPR | SPR | SPR | |
| Automated Teller Machines (ATMs) | SPR | SPR | SPR | (18) |
| Bakeries: | | | | |
| Wholesale | SPR | SPR | SPR | |
| Bars | CUP | NP | NP | (19) |
| Building Materials and Services | SPR | NP | SPR | (1)(9) |
| Catering Services | SPR | NP | NP | |
| Commercial Recreation and Entertainment | CUP | CUP | CUP | (5)(19) |
| Convenience Stores: | CUP | NP | CUP | (19)(23) |
| With Gas Pumps | CUP | NP | CUP | (9)(19)(23) |
| Equipment Sales, Services, and Rentals | SPR | NP | SPR | (9) |
| Financial Services | CUP | SPR | CUP | (18) |
| Food and Beverage Sales | SPR | NP | NP | (19) |
| Laboratories | SPR | SPR | SPR | |
| Laundries: | | | | |
| Limited | SPR | NP | NP | |
| Unlimited | SPR | NP | SPR | |
| Maintenance and Repair Services: | | | | |
| Major | SPR | NP | SPR | (9) |
| Minor | SPR | SPR | SPR | (9) |
| Marine Sales and Services | SPR | NP | SPR | (4)(9) |
| Nurseries | SPR | NP | SPR | |
| Offices: | | | | |
| Business and Professional | CUP | SPR | CUP | (26) |



| | | | | |
|---|---|---|---|---|
| Medical and Dental | NP | CUP | NP | (26) |
| Printing and Publishing: | | | | |
| Limited | SPR | SPR | SPR | |
| Unlimited | SPR | SPR | SPR | |
| Recreational Vehicle Parks | SPR | NP | NP | |
| Recycling Facilities | See Section *37-50.210*: *Recycling facilities.* | | | |
| Research and Development Services | SPR | SPR | SPR | |
| Restaurants: | SPR | CUP | CUP | (19) |
| With Drive-through or Drive-in Facilities | SPR | CUP | CUP | (19) |
| Retail Sales | SPR | SPR | SPR | (4)(19) |
| Service Stations | SPR | CUP | SPR | (4)(9)(19) |
| Speculative Buildings | SPR | SPR | SPR | (7) |
| Vehicle-related Retail Sales and Services | SPR | NP | NP | (6)(14) |
| Vehicle Repair Facilities: | | | | |
| Major | SPR | NP | SPR | (6)(9) |
| Minor | SPR | SPR | SPR | (6)(9) |
| Vehicle Sales and Services | SPR | NP | SPR | (6)(9)(22) |
| Vehicle Storage | CUP | CUP | CUP | (9) |
| Vehicle Washing | SPR | NP | SPR | (6)(9) |
| Warehousing and Storage: | | | | |
| Limited | CUP | CUP | CUP | (8)(9) |
| Wholesale Distribution | SPR | SPR | SPR | (9) |
| **Industrial Uses** | | | | |
| Chemical Manufacturing/Processing | NP | NP | CUP | |
| Industrial Complexes | SPR | SPR | SPR | (21) |
| Industry: | | | | |
| General | NP | NP | SPR | (4)(19)(25) |
| Limited | SPR | SPR | SPR | (4)(19) |
| Salvage and Wrecking Operations: | | | | |
| Nonvehicular | CUP | NP | CUP | (15)(16) |
| Vehicular | CUP | NP | CUP | (15)(16) |
| Speculative Buildings | SPR | SPR | SPR | |
| Transfer Stations: | CUP | NP | CUP | |
| Hazardous Waste | NP | NP | CUP | |
| Truck Depot | NP | NP | SPR | (6)(9) |



| Accessory Uses and Structures | | | | (11) |
|---|---|---|---|---|
| Utilities--Minor | P | P | P | (2) |
| Temporary Uses | TULP | TULP | TULP | (10) |
| Nonconforming Uses and Structures | See Section 37-50.160: Nonconforming uses and structures. | | | |

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) Building materials and service uses shall not adjoin any R district.

(2) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(3) See Section

37-50.020: Adult entertainment facilities. Adult bookstores shall be subject to the same supplemental regulations applicable to adult entertainment facilities.

(4) In the industrial districts only accessory retail sales limited to thirty percent of the total square footage of all structures on a site or two thousand five hundred square feet, whichever is less, shall be allowed excluding convenience stores. Goods being sold at retail must be directly related to those uses, which are permitted uses requiring a SPR, or uses which require a CUP, on the site.

(5) Commercial recreation and entertainment uses less than two thousand square feet in floor area are allowed with a SPR.

(6) See Section

37-50.260: Service stations, vehicle repair, and vehicle washing.

(7) See Section

37-50.280: Speculative buildings.

(8) See Section

37-50.320: Warehousing limited. The CUP for limited warehousing is not subject to administrative approval pursuant to Section

37-60.500: Administrative conditional use permits. Approval by the planning commission shall require an affirmative vote of five members. Any CUP application receiving an affirmative vote of our members of the planning commission shall automatically be set for hearing for a final determination by the city council. All other general appeal rights remain for these CUP applications.

(9) See Section

37-50.170: Outdoor storage and display for any outdoor activity or use.

(10) See Section

37-50.300: Temporary use of land.

(11) See Section

37-50.010: Accessory uses and structures. Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(12) Heliports shall be located more than one thousand feet from an R district. Heliports used exclusively for emergency aircraft flights for medical purposes by law enforcement, fire fighting, military, or other persons who provide emergency flights for medical purposes do not require a CUP.

(13) See Section



7/2/2008 1:23 PM

*37-50.150: Mural exhibits.*

(14) The maximum floor area allowed for any structure devoted to vehicle-related retail sales and services is limited to seventy-five thousand square feet in the IGC district.

(15) See Section

*37-50.230: Salvage and wrecking operations.*

(16) Salvage and wrecking operations shall not adjoin an arterial street or U.S. Highway 101.

(17) Day care may be considered in the IBP and IG districts subject to approval of a CUP for an existing industrial facility which is at least six acres in size and where the day care facility will be located a minimum of five hundred feet from the nearest property line.

(18) ATM facilities, which are located entirely within a building and are not externally accessible shall be a permitted use.

(19) See Section

*37-50.030: Alcohol license review.*

(20) See Section

*37-50.290: Telecommunication facilities.*

(21) Uses within an industrial complex must be otherwise authorized by SPR within the zoning district.

(22) Vehicle sales and services (including vehicle rentals) in the IG district shall be limited to vehicles which meet one or more of the following requirements:

(a) The vehicle must have a minimum gross vehicle weight rating (GVWR) of twenty-six thousand one pounds or more; or

(b) The vehicle is designed or used for carrying more than ten passengers (including the driver); or

(c) The vehicle is designed or able to tow a vehicle or trailer which has a GVWR of ten thousand one pounds or more; or

(d) The vehicle is designed or able to tow any combination of two trailers or a vehicle and a trailer.

(23) Convenience stores shall be limited to two thousand five hundred square feet in the IGC and IG districts.

(24) Does not apply to the parking required to serve the use per Section

*37-50.360: Off-street parking and loading spaces regulations.*

(25) In the IG district, wineries may have tasting rooms as an accessory use limited to thirty percent of the total square footage of all structures on a site or two thousand five hundred square feet whichever is less.

(26) In the IGC and IG districts, accessory business and professional offices shall be limited to thirty percent of the total square footage of all structures on a site or two thousand five hundred square feet, whichever is less. Business and professional offices, which are not directly related to the principal use on-site or accessory offices that exceed the thirty percent limitation referenced above, may be considered subject to the approval of a CUP.
(Ord. No. 2463 (NCS).)

## Sec. 37-30.320. Development regulations.

**Table 37-30.140** identifies the development regulations for the industrial (I) districts:

| Table 37-30.140<br>Industrial (I) Districts Development Regulations | | | | |
|---|---|---|---|---|
| Development Regulation | IGC | IBP | IG | Additional Regulations |
| Lot Size--Minimum | 10,000 sq. ft. | 1.0 acre | 1.0 acre | (A)(B) |
| Lot Width--Minimum | 150 ft. | 150 ft. | 150 ft. | |
| Lot Depth--Minimum | 100 ft. | 150 ft. | 150 ft. | |



recreational facilities.

(2) Open Space (OS) District. The open space (OS) district provides lands for the preservation of natural resources, hillsides, and creeks; as well as open space areas for the benefit and protection of the public health and safety. (Ord. No. 2463 (NCS).)

### Sec. 37-30.350. Use classifications.

**Table 37-30.150** identifies the use classifications for properties located in parks (P) and open space (OS) districts:

| Table 37-30.150 Parks (P) and Open Space (OS) District Use Classifications | | | |
|---|---|---|---|
| **Land Use** | **P** | **OS** | **Additional Use Regulations** |
| **Agricultural Uses** | P | CUP | (4) |
| **Public and Semi Public Uses** | | | |
| Day Care Centers | CUP | NP | |
| Golf Courses | SPR | NP | |
| Park and Recreation Facilities | SPR | CUP | (1)(2) |
| Parking Lots and Structures | CUP | NP | (9) |
| Open Space | SPR | SPR | |
| Schools--Public/Private | CUP | CUP | (3) |
| Telecommunications Facilities: | | | |
| Major | CUP | CUP | (7) |
| Minor | P | P | (7) |
| Major Utilities | NP | NP | (10) |
| **Commercial Uses** | | | |
| Commercial Recreation | CUP | CUP | (1)(2) |
| **Accessory Uses and Structures** | P | P | (5) |
| Utilities--Minor | P | P | (6) |
| **Temporary Uses** | TULP | TULP | (8) |
| **Nonconforming Uses and Structures** | See *Section 37-50.160: Nonconforming uses and structures.* | | |

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) Recreational uses include activity areas that may be developed for multipurpose fields for community events and informal recreation, areas for active and passive play, tot lots, picnic areas, multipurpose sports fields and courts, concessions, community event space, outdoor amphitheaters, nature study centers, maintenance/support facilities, caretaker facilities, and similar recreational facilities.



(2) In the OS district, recreational uses are limited to trails, interpretive centers, picnic areas, and similar uses.

(3) School facilities shall be limited to nature study centers, maintenance/support facilities, caretaker facilities, and similar uses.

(4) Only interim agricultural uses shall be permitted.

(5) See Section

*37-50.010: Accessory uses and structures.* Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(6) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(7) Only stealth telecommunication facilities shall be permitted. See Section

*37-50.290: Telecommunications facilities.*

(8) See Section

*37-50.300: Temporary use of land.* Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(9) Does not apply to the parking required to serve the use per Section

*37-50.360: Off-street parking and loading spaces regulations.*

(10) Water well, drainage, and flood control facilities may be considered subject to the approval of a CUP. (Ord. No. 2463 (NCS).)

## Sec. 37-30.360. Development regulations.

**Table 37-30.160** identifies the development regulations for the public (P) and open space (OS) districts:

| Table 37-30.160 Parks (P) and Open Space (OS) Districts Development Regulations | | | |
|---|---|---|---|
| | **Standard** | | |
| **Development Regulation** | **P** | **OS** | **Additional Regulations** |
| Lot Size--Minimum | No Minimum | No Minimum | (A) |
| Lot Width--Minimum | No Minimum | No Minimum | |
| Lot Depth--Minimum | No Minimum | No Minimum | |
| Lot Frontage--Minimum | No Minimum | No Minimum | |
| Yards--Minimum | | | |
| Front | 15 ft. | 25 ft. | |
| Side | | | |
| Interior | 10 ft. | 15 ft. | |
| Corner | 15 ft. | 25 ft. | |
| Rear | 15 ft. | 25 ft. | |
| Height--Maximum | No Maximum | No Maximum | |
| FAR--Maximum | 0.2 | N/A | |
| Landscaping | See *Article V, Division 4: Landscaping and Irrigation*. | | |
| Fences, Walls, and Hedges | See *Section 37-50.090: Fences, walls, and hedges*. | | |



Table 37-30.170 identifies the use classifications for properties located in the public/semipublic (PS) district:

| Table 37-30.170 Public/Semipublic (PS) District Use Classifications | | |
|---|---|---|
| Land Use | PS | Additional Use Regulations |
| **Commercial Uses** | | |
| Airports and Heliports | CUP | (1) |
| Airport-related Uses | SPR | (7) |
| Commercial Recreation and Entertainment | CUP | |
| Outdoor Facilities | CUP | (6) |
| **Public and Semipublic Uses** | | (3) |
| Airports | CUP | |
| Cemeteries | CUP | |
| Clubs and Lodges | CUP | |
| Convalescent Hospitals/Nursing Homes | CUP | |
| Cultural Institutions | CUP | |
| Day Care Centers | CUP | |
| Detention Facilities | CUP | |
| Government Offices | CUP | |
| Hospitals | CUP | |
| Maintenance and Repair Services: | | |
| Major | CUP | (4) |
| Minor | NP | |
| Open Space | SPR | |
| Park and Recreation Facilities | SPR | |
| Parking Lots and Structures | CUP | (9) |
| Public Safety Facilities | CUP | |
| Religious Assembly | CUP | |
| Schools--Public/Private | CUP | |
| Schools--Trade | NP | |
| Telecommunications Facilities: | | |
| Major | CUP | (8) |
| Minor | P | (8) |
| Utilities--Major | CUP | |
| **Accessory Uses and Structures** | P | (5) |
| Utilities--Minor | P | (2) |
| **Temporary Uses** | TULP | (6) |



| Nonconforming Uses and Structures | See *Section 37-50.160*: *Nonconforming uses and structures.* |
|---|---|

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) Heliports shall be located more than one thousand feet from an R district. Heliports used exclusively for emergency aircraft flights for medical purposes by law enforcement, fire fighting, military, or other persons who provide emergency flights for medical purposes do not require a CUP.

(2) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(3) See also Section

*37-50.170*: *Outdoor storage and display* and Section

*37-50.180*: *Performance standards.*

(4) Maintenance and repair services are limited to those of a public and semipublic nature.

(5) See Section

*37-50.010*: *Accessory uses and structures.* Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(6) See Section

*37-50.170*: *Outdoor storage and display* for any outdoor activity or use and Section

*37-50.300*: *Temporary use of land.*

(7) Airport-related uses shall only be allowed in a PS district that is contiguous to the Salinas municipal airport.

(8) See Section

*37-50.290*: *Telecommunication facilities.*

(9) Does not apply to the parking required to serve the use per Section

*37-50.360*: *Off-street parking and loading spaces regulations.*
(Ord. No. 2463 (NCS).)

## Sec. 37-30.400. Development regulations and design standards.

Development regulations and design standards for public/semipublic uses shall be as specified by the required conditional use permit in accordance with *Article VI, Division 8: Conditional Use Permits* and or the required site plan review in accordance with *Article VI, Division 5: Site Plan Review* (see **Table 37-30.180**). The city planner, planning commission, and/or city council, as the case may be, shall be guided by those regulations and design standards of the zoning district within closest proximity or a zoning district intended for uses similar to those proposed in the PS district. For properties located in the future growth areas of the city as identified on Figure LU-1 (future growth area) of the general plan land use element, the NU districts design standards shall apply. In addition, all new public buildings and sites shall generally be designed to promote energy efficiency and safety.

| Table 37-30.180 Public/Semipublic (PS) Development Regulations | |
|---|---|
| **Development Regulations** | **PS** |
| Lot Size--Minimum | Pursuant to the SPR or CUP. |
| Lot Width--Minimum | Pursuant to the SPR or CUP. |



7/2/2008 1:20 PM

### Sec. 37-30.420. Applicability.

The new urbanism (NU) districts regulations shall supplement the Zoning Code and Municipal Code requirements and apply to properties located in the future growth area of the city located generally north of East Boronda Road as indicated on **Figure 37-40.20** in *Article IV, Division 2: Specific Plan (SP) Overlay District.* All properties located in the future growth area shall be subject to the preparation of a specific plan in accordance with *Article IV, Division 2: Specific Plan (SP) Overlay District, Article VI, Division 15: Specific Plans,* and the regulations and standards of this division. (Ord. No. 2463 (NCS).)

### Sec. 37-30.430. Use classifications.

**Table** 37-30.190. Except as set forth in each specific plan, the following table identifies the use classifications for properties located in the new urbanism (NU) districts. The use classifications for the NI district shall be in accordance with those allowed in the agricultural (A) district (See *Section 37-30.020: Use classifications*):

| Table 37-30.190 New Urbanism (NU) Districts Use Classifications | | | | | |
|---|---|---|---|---|---|
| Land Use | NE (Low) | NG-1 (Medium) | NG-2 (High) | VC | Additional Use Regulations |
| **Residential Uses** | | | | | |
| Day Care Homes, Family--Large | P | P | P | - | (1)(2) |
| Day Care Homes, Family--Small | P | P | P | - | (2) |
| Duplex Dwellings | NP | SPR | SPR | CUP | |
| Green Court Dwellings | NP | SPR | SPR | CUP | |
| Home Occupations | P | P | P | - | (4) |
| Interim Housing | NP | NP | CUP | CUP | (3) |
| Manufactured Housing | P | P | CUP | NP | |
| Mobilehome Park | NP | CUP | CUP | NP | |
| Multiple Detached Dwellings | NP | SPR | SPR | CUP | |
| Multifamily Dwellings | NP | SPR | SPR | SPR | |
| Residential Care Facilities--Large | CUP | CUP | CUP | CUP | |
| Residential Care Facilities--Small | P | P | P | CUP | (5) |
| Residential Service Facilities | NP | NP | CUP | CUP | (3) |
| Second Dwelling Units | P | P | P | NP | (6) |
| Single-family Dwellings--Attached | CUP | SPR | SPR | SPR | (35) |
| Single-family Dwellings--Detached | P | P | P | NP | |
| Single Room Occupancy Housing | NP | NP | CUP | CUP | (7) |
| **Mixed Uses** | | | | | |



| | | | | | |
|---|---|---|---|---|---|
| Mixed Use Buildings and Developments | NP | NP | SPR | SPR | (24)(31) |
| Flex Use Buildings | NP | NP | CUP | SPR | (8) |
| **Public and Semipublic Uses** | | | | | |
| Clubs and Lodges | CUP | CUP | CUP | CUP | (18) |
| Convalescent Hospitals/Nursing Homes | CUP | CUP | CUP | CUP | |
| Cultural Institutions | CUP | CUP | CUP | SPR | |
| Day Care Centers | CUP | CUP | SPR | SPR | |
| Government Offices | SPR | SPR | SPR | SPR | |
| Hospitals | CUP | CUP | CUP | CUP | |
| Mural Exhibits | SPR | SPR | SPR | SPR | (16) |
| Park and Recreation Facilities | SPR | SPR | SPR | SPR | |
| Parking Lots and Structures | NP | NP | CUP | CUP | (21) |
| Public Safety Facilities | CUP | SPR | SPR | CUP | |
| Public Utility Service Yards | NP | NP | NP | NP | |
| Religious Assembly | CUP | CUP | CUP | CUP | |
| Schools--Public/Private | CUP | CUP | CUP | CUP | |
| Schools--Trade | NP | NP | NP | NP | (10)(34) |
| Telecommunications Facilities: | | | | | |
| Major | NP | CUP | CUP | CUP | (19) |
| Minor | P | P | P | P | (19) |
| Utilities--Major | NP | NP | NP | NP | (26) |
| **Commercial Uses** | | | | | |
| Adult Entertainment Facilities | NP | NP | NP | NP | (27) |
| Ambulance Services | NP | NP | NP | NP | |
| Animal Sales and Services: | | | | | |
| Animal Boarding | NP | NP | NP | CUP | (36) |
| Animal Grooming | NP | NP | NP | SPR | |
| Animal Hospitals | NP | NP | NP | CUP | (36) |
| Animal Retail Sales | NP | NP | NP | SPR | |
| Antique and Collectible Shops | NP | NP | NP | SPR | |
| Artists' Studios | NP | NP | NP | SPR | |
| Automated Teller Machines (ATMs) | NP | NP | CUP | SPR | (25)(28) |
| Bakeries: | | | | | |



| | | | | | |
|---|---|---|---|---|---|
| Retail | NP | NP | NP | SPR | |
| Wholesale | NP | NP | NP | NP | |
| Bars | NP | NP | NP | CUP | (18) |
| Bed and Breakfast Inns | NP | NP | NP | SPR | |
| Building Materials and Services | NP | NP | NP | NP | |
| Catering Services | NP | NP | NP | NP | (22) |
| Commercial Filming | NP | NP | NP | CUP | |
| Commercial Recreation and Entertainment | NP | NP | NP | CUP | (9)(18) |
| Convenience Stores: | NP | NP | CUP | SPR | (18) |
| With Gas Pumps | NP | NP | NP | CUP | (10)(11)(18)(23) |
| Entertainment, Live (Excluding Adult Entertainment) | NP | NP | NP | CUP | (15)(18) |
| Equipment Sales, Services, and Rentals | NP | NP | NP | NP | |
| Financial Services | NP | NP | NP | SPR | (25)(28) |
| Food and Beverage Sales | NP | NP | CUP | SPR | (18)(25) |
| Fortunetelling | NP | NP | NP | NP | |
| Funeral Services | NP | NP | NP | SPR | (17) |
| Hotels and Motels: | NP | NP | NP | CUP | (7) |
| Extended Stay | NP | NP | NP | CUP | (7) |
| Kiosks: | | | | | |
| Permanent | NP | NP | NP | CUP | (37) |
| Temporary or Semi-permanent | NP | NP | NP | CUP | (37) |
| Laboratories | NP | NP | NP | SPR | |
| Laundries: | | | | | |
| Limited | NP | NP | CUP | SPR | |
| Unlimited | NP | NP | NP | NP | |
| Live-work Units | NP | NP | CUP | SPR | (20) |
| Maintenance and Repair Services: | | | | | |
| Major | NP | NP | NP | NP | |
| Minor | NP | NP | NP | SPR | (10) |
| Marine Sales and Services | NP | NP | NP | NP | |
| Nurseries | NP | NP | NP | NP | (10)(29) |
| Offices: | | | | | |
| Business and Professional | NP | NP | CUP | SPR | |



7/2/2008 1:07 PM

| | | | | | |
|---|---|---|---|---|---|
| Medical and Dental | NP | NP | NP | SPR | |
| Pawn Shops | NP | NP | NP | NP | |
| Personal Improvement Services | NP | NP | CUP | SPR | |
| Personal Services | NP | NP | CUP | SPR | (25) |
| Printing and Publishing: | | | | | |
| Limited | NP | NP | CUP | SPR | |
| Unlimited | NP | NP | NP | NP | |
| Recreational Vehicle Parks | NP | NP | NP | NP | |
| Recycling Facilities | See Section 37-50.210: Recycling facilities. | | | | |
| Restaurants: | NP | NP | CUP | SPR | (18) |
| With Drive-through or Drive-in Facilities | NP | NP | NP | NP | (18)(25) |
| Retail Sales: | NP | NP | CUP | SPR | (18) |
| With Drive-through Facilities | NP | NP | NP | CUP | (25) |
| Secondhand or Consignment Stores | NP | NP | NP | NP | |
| Service Stations | NP | NP | NP | CUP | (10)(11)(18) |
| Shopping Centers: | NP | NP | NP | SPR | (10)(18)(23) |
| With Gas Pumps | NP | NP | NP | CUP | (10)(11)(18)(23) |
| Speculative Buildings | NP | NP | NP | SPR | (12) |
| Tattoo and/or Body Piercing Parlors | NP | NP | NP | NP | |
| Vehicle-related Retail Sales and Services | NP | NP | NP | NP | |
| Vehicle Repair Facilities: | | | | | |
| Major | NP | NP | NP | NP | |
| Minor | NP | NP | NP | CUP | |
| Vehicle Sales and Services | NP | NP | NP | NP | |
| Vehicle Storage | NP | NP | NP | NP | |
| Vehicle Washing | NP | NP | NP | CUP | (10)(11)(33) |
| Warehousing and Storage: | | | | | |
| Limited | NP | NP | NP | NP | |
| Wholesale Distribution | NP | NP | NP | NP | |
| **Industrial Uses** | | | | | |
| Industrial Complexes | NP | NP | NP | NP | |
| Industry--Limited | NP | NP | NP | NP | |



| Salvage and Wrecking Operations: | | | | | |
|---|---|---|---|---|---|
| Nonvehicular | NP | NP | NP | NP | |
| Vehicular | NP | NP | NP | NP | |
| **Accessory Uses and Structures** | | | | | (13) |
| Animals--Domestic | P | P | P | P | (30) |
| Utilities--Minor | P | P | P | P | (32) |
| **Temporary Uses** | TULP | TULP | TULP | TULP | (14) |
| **Nonconforming Uses and Structures** | See Section *37-50.160*: Nonconforming uses and structures. | | | | |

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) See Section

*37-50.120*: *Large family day care homes.*

(2) In the VC district, small and large family day care homes are permitted uses when the principal use is a residential dwelling unit.

(3) In the VC district, residential service facilities and interim housing serving six or fewer people are allowed with a SPR. Such facilities shall be designed to accommodate a group living environment.

(4) See Section

*37-50.100*: *Home occupations.* In the VC district, home occupations are permitted uses when the principal use is a residential dwelling unit.

(5) In the VC district, small residential care facilities are a permitted use when the principal use is a residential dwelling unit.

(6) See Section

*37-50.250*: Second dwelling units. A second dwelling unit shall only be permitted on lots with a single-family detached dwelling unit or developed concurrently with a single-family detached dwelling unit.

(7) See Section

*37-50.270*: *Single room occupancy (SRO) housing.*

(8) Flex-space buildings may be constructed in the VC subject to the approval of a SPR or may be considered in the NG-2 subject to a CUP or as may be provided for through the applicable specific plan. Flex-space buildings initially provide residential occupancies; however, are designed and constructed to allow the later conversion of the unit (in part or in its entirety) to accommodate neighborhood serving pedestrian-oriented commercial and mixed uses at a future date.

(9) Commercial recreation and entertainment uses less than two thousand square feet in floor area are allowed with a SPR in the VC district.

(10) See Section

*37-50.170*: *Outdoor storage and display.*

(11) See Section

*37-50.260*: *Service stations, vehicle repair, and vehicle washing.*



(12) See Section

*37-50.280: Speculative buildings*.

(13) Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(14) See Section

*37-50.300: Temporary use of land*.

(15) A live entertainment permit shall be issued for live entertainment uses in the VC district in accordance with Section

*37-60.490: Minor conditional use permit--Live entertainment permit*.

(16) See Section

*37-50.150: Mural exhibits*.

(17) Funeral services with crematories shall require a CUP.

(18) See Section

*37-50.030: Alcohol license review*.

(19) See Section

*37-50.290: Telecommunication facilities*. Only stealth telecommunication facilities shall be permitted.

(20) See Section

*37-50.130: Live-work units*. In the NG-2 district, live-work units may only be located in neighborhood centers or as otherwise provided for in the specific plan.

(21) Does not apply to the parking required to serve the use per Section

*37-50.360: Off-street parking and loading spaces regulations*.

(22) Catering is only permitted as an accessory use to a restaurant in the VC district. The parking or storage of catering vehicles is prohibited.

(23) Convenience stores with gas pumps (including sales, display, storage, restrooms, etc.) are limited to a maximum of two thousand five hundred square feet of gross floor area in the VC district.

(24) Mixed use buildings in the VC district shall have no more than twenty-five percent of the gross floor area of the ground floor of a building dedicated to residential uses unless otherwise authorized by the applicable specific plan regulations.

(25) Drive-through and drive-in uses shall not be permitted except as otherwise provided for in this section with a CUP.

(26) Water well, drainage, and flood control facilities may be considered subject to the approval of a CUP unless otherwise authorized in the specific plan.

(27) See Section

*37-50.020: Adult entertainment facilities*. Adult bookstores shall be subject to the same supplemental regulations applicable to adult entertainment facilities.

(28) ATM facilities that are located entirely within a building and are not externally accessible shall be a permitted use in the VC district.

(29) Nursery uses are allowed as an accessory use only in the VC district.

(30) Not more than four domestic animals are permitted per residential dwelling unit except that newborn and baby animals up to the age of three months shall not be counted.

(31) Prohibited commercial uses in mixed use developments include vehicle-related uses including repair, sales, service, storage, and washing; animal sales and services; maintenance and repair services; pawn shops; tattoo and/or body piercing parlors; industrial uses; and other uses deemed inappropriate by the city planner. In mixed use buildings, commercial uses shall be limited to retail, restaurants, offices, services, and similar pedestrian-oriented uses, which are deemed by the city planner to be compatible with residential uses.

(32) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(33) Vehicle washing may be considered subject to the approval of a CUP as an accessory use to a service station use only in the VC district.



(36) Only allowed when ancillary to an animal hospital.

(37) Permanent or temporary kiosks that are designed and included as part of a larger development review application for another use (such as a shopping center, retail, or restaurant use) that involves the entire subject parcel or lot where the kiosk will be located shall be subject to the same development review process as required for that use.
(Ord. No. 2463 (NCS).)

## Sec. 37-30.440. Use districts or classifications not otherwise specified.

(a) Lands designated for parks and open space land uses in accordance with the general plan land use plan shall be subject to the requirements of *Division 6: Parks (P) and Open Space (OS) Districts* except as modified by the specific plan or this division. (b) Lands designated for public and semipublic land uses in accordance with the general plan shall be subject to the requirements of *Division 7: Public/Semipublic (PS) District*. (Ord. No. 2463 (NCS).)

## Sec. 37-30.450. Development regulations.

(a) **Specific Plan Development Regulations.** Each specific plan shall contain tables establishing development regulations for each new urbanism district, as applicable, governing the following:
(1) Lot size--minimum;
(2) Lot area per dwelling unit--minimum;
(3) Lot width--minimum;
(4) Lot depth--minimum;
(5) Yards--minimum;
(6) Distances between structures--minimum;
(7) Height--maximum;
(8) Driveway length;
(9) Usable open space area per dwelling unit--minimum;
(10) Floor area ratio;
(11) Landscaping;
(12) Fences, walls, and hedges;
(13) Off-street parking and outdoor lighting;
(14) Driveway and corner visibility;
(15) Signs;
(16) Outdoor facilities;
(17) Accessory uses and structures;
(18) Screening of mechanical equipment;
(19) Recycling and solid waste disposal;
(20) Performance standards;
(21) Nonconforming uses and structures;
(22) Recreational vehicles and prohibited vehicles and equipment;
(23) Vehicle trip reduction;
(24) Swimming pools, spas, and hot tubs; and
(25) Administrative procedures.
(b) **Zoning Code Development Regulations.** Development regulations not established through the specific plan or the new urbanism districts shall be subject to the applicable development regulations of the Salinas Zoning Code as follows:
(1) The applicable development regulations shall be those of the zoning district having the most similar characteristics to that of the applicable new urbanism district, as determined by the city planner, as follows:
(A) Development on land located in the new urbanism-village center (VC) district shall be in accordance with the mixed use (MX) district regulations.
(B) Development on land located in the new urbanism-neighborhood edge/low density residential (NE) district shall be in accordance with the residential low density (R-L) district regulations.

59

**ATTACHMENT "d"**

SMC  §§ 37-60.220 to 37-60.310

60

without public notice or hearing. (Ord. No. 2463 (NCS).)

### Sec. 37-60.280. Expiration--Transferability--Rescission--Revocation.

(a) **Expiration.** Site plan review shall expire one year after its effective date, or at an alternative time as specified in the approval, unless any one of the following occurs first:
(1) A building permit has been issued and construction diligently pursued;
(2) A certificate of occupancy has been issued;
(3) The use is established in conformance with the provisions of this Zoning Code;
(4) The city planner determines that substantial action has commenced to carry out the terms and intent of the site plan review; or
(5) The project is one hundred percent very-low or low income or otherwise qualifying pursuant to Civil Code Section 51.3.
(b) **Transferability.** Site plan review shall not be affected by changes in ownership.
(c) **Rescission.** The city planner may rescind a site plan review approval in accordance with *Section 37-60.1340: Rescission of permits.*
(d) **Revocation.** A revocation of a site plan review approval shall be in accordance with *Section 37-60.1330: Revocation of permits.* (Ord. No. 2463 (NCS).)

### Sec. 37-60.290. Phasing of improvements.

Improvements required as a result of site plan review may be constructed after the establishment of a permitted use provided all of the following conditions exist:
(a) **Applicability.**
(1) Existing development: applicable only to parcels with existing structures;
(2) Zoning: parcels within C, I, MU, NU (VC), and PS districts;
(3) Site size: one acre or more;
(4) Spaces available for occupancy by tenants: two or more existing;
(5) Existing level of compliance: lacking fifty percent of any required site improvement.
(b) **Timetable for Improvements.**
(1) Fifty percent of the improvements required to bring the site into conformance shall be completed within one year following certification by the city planner that site plan review has been completed.
(2) All required improvements shall be completed within two years following certification by the city planner that site plan review has been completed.
(c) **Prohibition to Operate.** Any use of property subject to site plan review shall cease if the timetable for improvements is not met.
(d) **Assurances.** The city planner shall require the building official to withhold future building, electrical, plumbing, or mechanical permits or certificates of occupancy for the site if any of the improvements required as part of site plan review are not made within the timetables established in this section. Building, electrical, plumbing, mechanical, and other such permits necessary to correct hazardous conditions shall not be affected. (Ord. No. 2463 (NCS).)

### Sec. 37-60.300. Modified plans.

A request for a modification of an approved site plan review shall be subject to the requirements of *Division 16: Modification of Approved Plans* of this article. (Ord. No. 2463 (NCS).)

### Sec. 37-60.310. Effective date--Appeals.

A site plan review shall become effective on the date of approval by the city planner if signed by the permittee(s) and returned to the city planner within ninety days of the approval date. Appeals of the city planner's decision shall be in accordance with *Division 17: Appeals* of this article. (Ord. No. 2463 (NCS).)

### Division 6. Lot Line Adjustments.

### Sec. 37-60.320. Purpose.

6 of



**Figure 37-60.20
Process for Site Plan Review**

Sec. 37-60.260. Application.

An application for a site plan review shall be initiated by submitting an application to community planning and development in accordance with *Division 2: Application Procedures* of this article. (Ord. No. 2463 (NCS).)

Sec. 37-60.270. City planner duties.

The city planner shall approve or approve with modifications to comply with applicable provisions of this Zoning Code, a site plan review application that conforms to the regulations established in this Zoning Code or deny an application that does not. The city planner shall render a decision on a site plan review application



## Division 5. Site Plan Review.

### Sec. 37-60.220. Purpose.

The purpose of this division is to:

(a) Provide a streamlined administrative review process for verifying a project's compliance with this Zoning Code's development, design, and use standards; and

(b) Assure landowners, business owners, and developers that proposed uses, structures, and site improvements comply with the provisions of this Zoning Code before preparation of plans for building permits. **Figure 37-60.20** illustrates the site plan review process. (Ord. No. 2463 (NCS).)

### Sec. 37-60.230. Applicability.

Site plan review shall be applicable to the following unless otherwise provided in this Zoning Code:

(a) All new permitted structures and site improvements subject to the regulations in this Zoning Code;

(b) The use or reuse of existing structures or land, except as provided in *Section 37-60.250: Exceptions to site plan review*; or

(c) The addition of floor area to a site containing an existing structure.

(Ord. No. 2463 (NCS).)

### Sec. 37-60.240. Site improvements required for site plan review.

All uses and improvements subject to site plan review as noted in use classification tables shall conform to the regulations established in this Zoning Code. (Ord. No. 2463 (NCS).)

### Sec. 37-60.250. Exceptions to site plan review.

Site plan review shall not be required for those uses shown in the use classification tables in *Article III: Base District Regulations*, for any of the following:

(a) A change of occupancy which does not result in a change of the existing use classification;

(b) An existing structure which changes from a use classification requiring site plan review to another use classification requiring site plan review, as provided by the use classification table for the district in which it is located, and where no floor area is added and parking demand is not increased by the change in use; or

(c) Changes of use classification on sites, which meet current development standards.

(Ord. No. 2463 (NCS).)



1  Clyde DeWitt
   California State Bar No. 117911
2  Law Offices of Clyde DeWitt,
        A Professional Corporation
3  2800 28th Street, Suite 321
   Santa Monica, CA 90405-6201
4  (310) 392-2600
   Fax (310) 362-8667
5  clydedewitt@earthlink.net

6  Counsel for Plaintiff, Seven Cities Enterprises, Inc.

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

               SAN JOSE DIVISION
10

11  SEVEN CITIES ENTERPRISES, INC.,          Case Number 5:08-CV-01563-JW

12         Plaintiff                         Hon. James Ware

13  v.                                       **DECLARATION OF WILLIAM H.
                                             ANDRUS IN SUPPORT OF MOTION
14  CITY OF SALINAS,                         FOR PRELIMINARY AND
                                             PERMANENT INJUNCTION**
15
                                             Date: September 8, 2008
16         Defendant                         Time: 9:00 a.m.
                                             Courtroom: 8
17
                                             1. NOTICE OF MOTION;
18                                           2. [PROPOSED] ORDER;
                                             3. MEMORANDUM OF POINTS AND AUTHORITIES;
19                                           4. DECLARATION OF WILLIAM H. ANDRUS;
                                             5. DECLARATION OF JAMES VOCELKA; AND
20                                           6. DECLARATION OF CLYDE DEWITT.

21

22

23

24

25

26

27  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-010-p-Injunc - Andrus Dec.wpd  **Page 1**

28              DECLARATION OF WILLIAM H. ANDRUS
      IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

1    I, William H. Andrus declare as follows

2    1.    I am the vice president of Seven Cities Enterprises, Inc. ("Seven Cities"), in

3    connection with which I have, unless otherwise indicated, personal knowledge of the

4    following:

5    2.    Seven Cities is a corporation, organized and existing under the laws of the State

6    of California, filed October 15, 2004. Its principal office is in Spring Valley, California. I

7    am a graduate of Saint Johns Law School in New York City, was admitted to the bar in New

8    York, but have never practiced law in California or been admitted to practice here.

9    3.    Shortly after incorporating, Seven Cities acquired L'Amour.

10    4.    The purpose of the creation of Seven Cities was to acquire seven adult

11    bookstores in Northern California, including the one at 323 E Alisal St, Salinas, CA 93901,

12    a business commonly known as "L'Amour Shoppe" (and hereafter will be referred to as

13    "L'Amour"), after the name of its previous corporate owner. I was integrally involved in all

14    phases of that acquisition and the transfer of the businesses from L'Amour Shoppe, Inc., the

15    previous owner, and the estate of Richard Brovelli, who was the sole shareholder and officer

16    of that corporation. Since then, I have remained involved in the management of those

17    businesses, including in particular the L'Amour business.

18    5.    L'Amour is located in a commercial zone.

19    6.    The L'Amour business has two components. The first is a retail section,

20    where customers can purchase an array of prerecorded adult DVDs, magazines, books, and

21    related products, and can rent DVDs. This is much like an X-rated version of Blockbuster,

22    with other related products for sale. The other component consists of a dozen private

23    viewing areas where customers can privately view any one or more of scores of adult motion

24    pictures. This section is available to assist customers in making purchase/rental selections

25    (a preview function, of sorts) and to allow customers to view adult motion pictures without

26

27    K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-010-p-Injunc - Andrus Dec.wpd    **Page 2**

28    **DECLARATION OF WILLIAM H. ANDRUS**
    **IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

taking them home, primarily to accommodate customers who do not wish to bring such motion pictures home, for example, because of the presence of children at home.

7.      After acquiring L'Amour, Seven Cities significantly upgraded it. The quantity and variety of inventory were vastly increased, and the private viewing areas were upgraded so as to be more modern, more attractive, and with improved functionality, primarily allowing a considerable increase in selection.

8.      Having accomplished those upgrades, we learned that the demand for the business' products and services exceeded the supply. As to the retail component of the business, increased inventory reasonably accommodated the surprisingly increased demand. However, as to the viewing areas, the only available solution was to increase their number.

9.      The viewing areas are small cubicles, roughly four feet by six feet, designed and operated so as to serve only one customer at a time. Inside, there is a large television monitor, a selector switch and a bill-acceptor, like the ones in vending machines. A small television monitor allows the customer to scroll through the scores of movies from which the customer may choose by way of the selector switch.

10.      Significantly, these cubicles are akin to office cubicles in terms of manufacturing. Like office cubicles, they are manufactured off site, and then assembled on site. Thus, they fit the description of business fixtures, rather than construction, presumably not requiring a building permit for installation.[1] However, whereas no one would ever think about obtaining a building permit prior to installing office cubicles, adult businesses

_____

[1]      Unquestionably, electrical permits would be required for any additional junction boxes that would be required to accommodate the electrical needs of the viewing mechanisms.

E:\Files\Wiener files 7\Salmas\7 Cities v Salinas\Injunk 6\Hrg-Injune - Andrus Dec.wpd      **Page 3**

**DECLARATION OF WILLIAM H. ANDRUS**
**IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1  invariably are subject to more exacting scrutiny than other businesses; and the City has taken
2  the position that a building permit was required.[2]

3      11.    Believing that no permit was required, Seven Cities went forward and installed
4  some additional viewing cubicles in a vacant portion of the building. Apparently upon
5  learning of this, the City issued an order to comply, taking the positions (1) that a building
6  permit was required and (2) that the portion of the building in which the new viewing areas
7  were located could not be used as part of an adult business because it had been leased for a
8  period of time to a tenant that operated an office use there, thus extinguishing the grandfather
9  rights for that portion of the building. After we received reports of a dialogue between the
10  City and Seven Cities' representatives, in which the City suggested that the new viewing
11  areas be installed in an area of the business that had consistently been used as part of an adult
12  business, Seven Cities engaged an architect, one James Vocelka, to prepare and submit a
13  building permit application.

14      I declare under penalty of perjury under the laws of the United States that the
15  foregoing is true and correct.

16      Executed within the United States on this 2 day of July, 2008.

17

18

19                                   William H. Andrus

20

21

22

23

24      2    Apparently, the City's Uniform Building Code contains a provision requiring a
25  building permit for installation of any movable partition that is over 59 inches high, a provision that
26  evidently is observed for the most part in the breach.

27

28  DECLARATION OF WILLIAM H. ANDRUS
    IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

1    Dated: July 3. 2008.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

CLYDE DeWITT
LAW OFFICES OF CLYDE DeWITT, APC


By: _____
        Clyde DeWitt

Counsel for Plaintiff
Seven Cities Enterprises, Inc.

DECLARATION OF WILLIAM H. ANDRUS
IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

1          **PROOF OF SERVICE BY FEDERAL EXPRESS**

2          [Pursuant to Calif. Code of Civil Procedure § 1013a(3)
                              and Fed.R.Civ.P. 5]
3

4              I am a resident of and/or employed in the County of Los Angeles, State of California.
           I am over the age of eighteen years and not a party to the within entitled action.  I work at the
           Law Offices of Clyde DeWitt, located at 2800 28th Street, Suite 321, Santa Monica,
5          California 90405-6201.

6              I am readily familiar with this law firm's practice for mailing with Federal Express
           and, in the ordinary course of business, any correspondence delivered to our firm's mail room
7          employee(s) for the purpose of being sent through Federal Express is routinely deposited
           with Federal Express on the same day.
8

9              On the date shown below, I served the foregoing document on the interested parties
           in this action, by placing a true copy thereof enclosed in a Federal Express envelope/pak/box,
           with postage thereon fully prepaid, and either: (1) personally delivering it to our firm's mail
10         room employee(s) for deposit with Federal Express pursuant to our firm's ordinary business
           practice; or (2) personally depositing such correspondence directly with Federal Express,
11         addressed as follows:

12         **Vanessa Vallarta, Esq.**
           **City Attorney**
13         **Georgina B. Mendoza, Esq.**
           **Deputy City Attorney**
14         **200 Lincoln Avenue**
           **Salinas, CA 93901**
15

16             I declare under penalty of perjury under the laws of the United States and the State
           of California that the foregoing is true and correct.

17             Executed on July 3, 2008.

18

19

20                   Clyde DeWitt

21

22

23

24

25

26

27         K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-010-p-Injunc - Andrus Dec.wpd   **Page 6**

28                **DECLARATION OF WILLIAM H. ANDRUS**
           **IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1  Clyde DeWitt
   California State Bar No.  117911
2  Law Offices of Clyde DeWitt,
        A Professional Corporation
3  2800 28th Street, Suite 321
   Santa Monica, CA 90405-6201
4  (310) 392-2600
   Fax (310) 362-8667
5  *clydedewitt@earthlink.net*

6  Counsel for Plaintiff, Seven Cities Enterprises, Inc.

7

          IN THE UNITED STATES DISTRICT COURT
8
       FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
                  SAN JOSE DIVISION
10

11 | SEVEN CITIES ENTERPRISES, INC.,          Case Number 5:08-CV-01563-JW

12 |          Plaintiff                       Hon. James Ware

13 | v.                                       **DECLARATION OF JAMES
                                              VOCELKA IN SUPPORT OF
14 | CITY OF SALINAS,                         MOTION FOR PRELIMINARY AND
                                              PERMANENT INJUNCTION**
15 |
                                              Date: September 8, 2008
16 |          Defendant                       Time: 9:00 a.m.
                                              Courtroom: 8
17

18                                            1. NOTICE OF MOTION;
                                              2. [PROPOSED] ORDER;
19                                            3. MEMORANDUM OF POINTS AND AUTHORITIES;
                                              4. DECLARATION OF WILLIAM H. ANDRUS;
                                              5. DECLARATION OF JAMES VOCELKA; AND
20                                            6. DECLARATION OF CLYDE DEWITT.

21

22

23

24

25

26

27  K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-012-p-Injunc - Vocelka Dec.wpd  **Page 1**

28              DECLARATION OF JAMES VOCELKA
     IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

FROM : Ability Ventures          PHONE NO. : 408 384 3121          Jul. 02 2008 10:59PM P1/2

1    I, James Vocelka declare as follows

2        1.    I am an architect, practicing in Monterey County, California, in connection

3    with which I have, unless otherwise indicated, personal knowledge of the following:

4        2.    I am a licensed architect, licensed by the California Architects Board since

5    1989 (License Number C19956).  My practice is largely in various cities around Monterey

6    County, California, including the city of Salinas.

7        3.    During 2006, I was advised that Seven Cities Enterprises, Inc. ("Seven Cities")

8    received an administrative citation because it caused additional viewing areas to be installed

9    in the portion of the building noted above which had been used as office space.  I was given

10    a copy of that citation by a functionary of Seven Cities.

11        4.    Seven Cities retained me to submit an application for a building permit,

12    including all customarily required drawings and calculations, which I did.

13        5.    On October 23, 2006, the City responded with a  memorandum from a City

14    Associate Planner, Andrew Myrick, stating that the proposed modification constituted

15    expansion of a nonconforming use, which was prohibited.  As it turned out, the space where

16    the new viewing areas had been placed was, as noted above, used as an office use by a sub-

17    tenant for a period of time, in the opinion of the City thereby abandoning the nonconforming

18    use.

19        6.    I then submitted a  new application for a building permit, including all

20    customarily required drawings and calculations, which application designated the amended

21    placement of the new viewing areas to an area of the building which always had been a part

22    of the adult entertainment business.

23        7.    On March 30, 2007, the City responded with a memorandum from Mr. Myrick,

24    listing corrections that the City deemed required for approval of the plans.  Nothing in that

25    memorandum suggested any issue involving zoning adult entertainment businesses.

26

27    K:\Files\Wiener-0452\Salinas\01 Cases v Salinas\inj\08-012-p-Injunc - Vocelka Dec.wpd    **Page 2**

28
        DECLARATION OF JAMES VOCELKA
    IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

FROM : Ability Ventures                PHONE NO. : 408 384 3121            Jul. 02 2008 10:59PM P2/2

8.     Accordingly, I responded with an amended building permit application, in response to which Mr. Myrick issued a new memorandum on October 23, 2007, for the first time taking the position that the placement of the location that was the subject of the second application was an unlawful expansion of a nonconforming use.

9.     The City's position was that the use is nonconforming solely because of the City's zoning regulations applicable uniquely to adult entertainment businesses.

10.    In denying the permit, the City suggested that parking also must be modified. Seven Cities is capable of making all required modifications in parking capacity, a process in which I will assist, as I have considerable familiarity with parking requirements. It may require some reduction in the number of new viewing areas, but I do not believe by many.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed within the United States on this _2_ day of July, 2008.

James Vocelka

K:\Files\Wiener 0452\Salinas\.7 Cities v Salinas\Inj\08-012-p-Injunc - Vocelka Dec.wpd    **Page 3**

**DECLARATION OF JAMES VOCELKA**
**IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1     Dated: July 3, 2008.                   Respectfully Submitted,

2                                       CLYDE DeWITT

3                                       LAW OFFICES OF CLYDE DeWITT, APC

4

5                                       By: _____

6                                             Clyde DeWitt

7                                       Counsel for Plaintiff

8                                       Seven Cities Enterprises, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF JAMES VOCELKA**
**IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

1    **PROOF OF SERVICE BY FEDERAL EXPRESS**

2    [Pursuant to Calif. Code of Civil Procedure § 1013a(3)
     and Fed.R.Civ.P. 5]

3

4         I am a resident of and/or employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action. I work at the Law Offices of Clyde DeWitt, located at 2800 28th Street, Suite 321, Santa Monica, California 90405-6201.

5

6         I am readily familiar with this law firm's practice for mailing with Federal Express and, in the ordinary course of business, any correspondence delivered to our firm's mail room employee(s) for the purpose of being sent through Federal Express is routinely deposited with Federal Express on the same day.

7

8

9         On the date shown below, I served the foregoing document on the interested parties in this action, by placing a true copy thereof enclosed in a Federal Express envelope/pak/box, with postage thereon fully prepaid, and either: (1) personally delivering it to our firm's mail room employee(s) for deposit with Federal Express pursuant to our firm's ordinary business practice; or (2) personally depositing such correspondence directly with Federal Express, addressed as follows:

10

11

12    **Vanessa Vallarta, Esq.**
      **City Attorney**

13    **Georgina B. Mendoza, Esq.**
      **Deputy City Attorney**

14    **200 Lincoln Avenue**
      **Salinas, CA 93901**

15

16         I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

17         Executed on July 3, 2008.

18

19    _____

20    Clyde DeWitt

21

22

23

24

25

26

27    K:\Files\Wiener 0452\Salinas\7 Cities v Salinas\Inj\08-012-p-Injunc - Vocelka Dec.wpd **Page 5**

28    **DECLARATION OF JAMES VOCELKA**
      **IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**