1  Vanessa W. Vallarta, City Attorney, # 142404
   Susan J. Matcham, Asst. City Attorney, #79562
2  Georgina B. Mendoza, Deputy City Attorney, #230940
   CITY OF SALINAS
3  OFFICE OF THE CITY ATTORNEY
   200 Lincoln Avenue
4  Salinas, CA 93901
   Telephone: (831) 758-7256
5  Facsimile: (831) 758-7257

6  Attorneys for Defendant
   CITY OF SALINAS
7

8                   UNITED STATES DISTRICT COURT

9              THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12  SEVEN CITIES ENTERPRISES, INC.,          **Case No. C-08-01563-JW**

13                          Plaintiff,        **CITY OF SALINAS MEMORANDUM
                                              OF OPPOSITION TO PLAINTIFF'S
14         v.                                 MOTION FOR PRELIMINARY AND
                                              PERMANENT INJUNCTION**
15

16  CITY OF SALINAS,                          **DATE:    October 3, 2008**
                                              **TIME:    9:00 A.M.**
17                          Defendant.        **ROOM:    Courtroom 8, 4th Floor**
                                              **JUDGE:  Hon. James Ware**
18

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

**TABLE OF CONTENTS**

I.    STATEMENT OF THE CASE ........................................................................................2

II.   FACTUAL SUMMARY ...............................................................................................3

      A.    First Attempted Expansion of Non-Conforming Use ........................................3

      B.    Second Attempted Expansion of Non-Conforming Use.....................................4

      C.    Locations of Adult Entertainment Facilities In Industrial
            Districts ..............................................................................................................5

III.  LEGAL ARGUMENT .................................................................................................6

      A.    Local Governments have Broad Powers To Zone and Control
            Land Use .............................................................................................................6

      B.    Plaintiff has Failed To Meet the Standard For Issuance of an
            Injunction and Its Motion Must Be Denied .......................................................7

      C.    The City Lawfully Refused To Allow Expansion of L'Amour's
            Non-Conforming Use..........................................................................................8

      D.    Restrictions On Location of Adult Entertainment Facilities in
            Specific Zoning Districts and Associated Timelines for Review
            are Constitutional ...............................................................................................9

            1.  The City's Regulations Which Require New Businesses to Obtain
                a CUP or SPR Have Time Limits For Review and Do Not Invest
                Unbridled Discretion In A Decision Maker.....................................................10

                a.  Industrial-General Zoning District............................................................10

                b.  Permit Streamlining Act ...........................................................................10

                c.  Industrial-General Commercial Zoning District .........................................12

            2.  Plaintiff Lacks Standing To Attack The City's CUP and SPR
                Process .........................................................................................................13

      E.    Plaintiff's Reliance On *FW/PBS Inc. v. City of Dallas* Is Misplaced..............13

      F.    *Tollis Inc. v. County of San Diego* is Distinguishable With Regard
            To The Court's Decision Concerning Time Limits .........................................14

IV.   CONCLUSION ...........................................................................................................16

i

1

# TABLE OF AUTHORITIES

*Aguirre v. Chula Vista Sanitary Service*
    542 F. 2d 779, 781 (9th Cir. 1976) ...............................................................7

*Benda  v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers,*
    584 F. 2d 308 (9th Cir. 1978), *cert. dismissed,*441 U.S. 937 (1979).............7

*City of Los Angeles v. Wolfe*
    6 Cal.3d 326 (1971) ......................................................................................9

*City of Renton v. Playtime Theatres, Inc.*
    475 U.S. 41 (1986).........................................................................................6

*County of San Diego v. McClurken*
    37 Cal. 2d 683 (1951) ................................................................................8, 9

*Ebel v.City of Corona*
    698 F. 2d 390,392 (9th Cir. 1983) .................................................................7

*Edmonds v. County of Los Angeles*
    43 Cal.2d 642 (1953) .....................................................................................8

*Euclid v. Ambler Realty Co.*
    272 U.S. 365 (1926).......................................................................................6

*Fantasyland Video, Inc. v. County of San Diego*
    373 F. Supp. 2d 1094 (2005) .......................................................................14

*Findleton v. El Dorado Co. Board of Supervisors*
    12 Cal. App. 4th 709 (1993) ........................................................................12

*FW/PBS, Inc. v. City of Dallas,*
    493 U.S. 215 (1990)......................................................................................13

*Landis v. County of Monterey*
    139 Cal. App.3d 934 (1983) ........................................................................10

*Livingston Rock and Gravel Co. v. County of Los Angeles*
    3 Cal. 2d 121 (1954) ...............................................................................6, 8, 9

*Lydo Enterprises, Inc. v. City of Las Vegas*
    745 F 2d 1211 (9th Cir. 1984) ................................................................6, 7, 8

*National Advertising Co. v. County of Monterey*
    1 Cal. 3d 875 (1970) ......................................................................................8

ii

1

*Orsi v. City Council*
    219 Cal. App.3d 1576 (1990) ....................................................................................11

2

3
*Stell Company v. Citizens For A Better Environment*
    523 U.S. 83 (1998)...................................................................................................13

4

5
*Tollis Inc. v. County of San Diego*
    505 F. 3d 935 (9th Cir. 2007) ......................................................................6, 9, 14, 15

6

7
*Young v. American Mini Theatres*
    427 U.S. 50 (1976)....................................................................................................6

8
<u>**CODES & STATUTES**</u>

9
42 U.S.C. §1983 ....................................................................................................................2

10
California Constitution, Art. 1 §2 .........................................................................................2

11
U.S.C.A. Const. Art. 3 §2 cl. 1 ..........................................................................................13

12
CA Government Code §65920 *et seq* ............................................................................2, 10

13
CA Government Code §65943 *et seq* ................................................................................11
CA Government Code §65950 *et seq* ................................................................................11

14

15
Salinas City Charter §107 ...................................................................................................10

16
Salinas Municipal Code §19-4.............................................................................................14
Salinas Municipal Code §37-10.230....................................................................................15

17
Salinas Municipal Code §37-20.010......................................................................................9

18
Salinas Municipal Code §37-30.200......................................................................................3
Salinas Municipal Code §37-30.300....................................................................................10

19
Salinas Municipal Code §37-30.300(e)(1)...........................................................................12
Salinas Municipal Code §37-50.020......................................................................................9

20
Salinas Municipal Code §37-50.160(b)(1) ............................................................................3
Salinas Municipal Code §37-50.160(b)(6) ............................................................................9

21
Salinas Municipal Code §37-50.160(f)..................................................................................3
Salinas Municipal Code §37-60.520(a-c) ...............................................................7, 11, 13

22
Salinas Municipal Code §37-60.1270..................................................................................11

23
Salinas Municipal Code §37-60.1300...................................................................12, 13, 14
Salinas Municipal Code Table 37-30.130............................................................................12

24
<u>**RESTATEMENT OF LAW**</u>

25

26
Restatement of Law, 58 Am.Jr, Zoning §146, p. 1021 ............................................................8

27

28

Memorandum of Opposition to
Plaintiff's Motion for Injunction

C-08-01563-JW

I.

## STATEMENT OF THE CASE

Plaintiff, Seven Cities Enterprises, Inc., owns and operates the L'Amour Shoppe, an Adult Entertainment Facility in the City of Salinas.    Plaintiff    (hereafter "Plaintiff" or "L'Amour") has brought this action for declaratory and injunctive relief against the City of Salinas    (hereafter "Defendant" or "City") challenging under federal and state law the enforcement of the zoning ordinance enacted by the City.    The First Amended Complaint alleges that the City:    (1) denied L'Amour's request to expand its legal non-conforming use for an adult entertainment facility; (2) withheld issuance of a building permit for L'Amour to expand its legal non-conforming use; and, (3) would fail to give  Plaintiff a "reasonable opportunity" to open and operate a new adult entertainment facility within the City limits, all in violation of 42 U.S.C. §1983 and the California Constitution, Article 1, Section 2.    Plaintiff further alleges that the Salinas Municipal Code ("SMC") does not include brief and definite time limits to act upon an application for a Site Plan Review ("SPR") or for a Conditional Use Permit ("CUP") and that the City Planner or Planning Commission, as is applicable, has "impermissible" discretion to decide whether to issue a conditional use permit.    All of Plaintiff's allegations are predicated on the erroneous assumption that the City enforces its zoning ordinances against Plaintiff solely because it is an adult entertainment business and that by so doing infringes upon the right to freedom of speech as guaranteed by the First Amendment to the United States Constitution.

Plaintiff's Motion for injunctive relief must be denied on several grounds:  (1) the City's zoning ordinance is a typical tool used by municipalities for land use control that is content neutral and does not infringe on Plaintiff's First Amendment rights; (2) the City may lawfully exercise its municipal power to restrict expansion of the L'Amour Shoppe as a non-conforming use; (3) the City through its zoning ordinance, permits adult entertainment businesses in other areas of the city and has done nothing to discourage Plaintiff from applying for and opening a new adult entertainment business in those areas; (4) the Permit Streamlining Act (Cal. Gov't Code §65920 *et seq.*) requires public agencies to follow standardized time limits and procedures for specified types of land use decisions, such as CUPs, which require adjudicatory approvals;

1    (5) the approval of an SPR is a ministerial action of reviewing the general qualifications of a

2    proposed use to ensure it complies with the Zoning Code and is not an adjudicatory function;

3    and, (6) Plaintiff lacks standing to argue a hypothetical claim that Defendant City's zoning

4    ordinance would adversely affect its ability to open and operate an adult entertainment business

5    in another location within City limits.

## II.

## FACTUAL SUMMARY

8    L'Amour is located at 325 E. Alisal Street in Salinas, California in the county of

9    Monterey.  Portions of the building are also addressed as 323 E. Alisal Street and 320 Rianda

10   Street.  From 1962 through approximately 1982 the building was owned by Blue Ribbon

11   Industries, Inc. and was used as a dairy.  L'Amour was established in 1985.  At that time, the

12   location was zoned Commercial General (CG) and Adult Entertainment was a permitted use.

13   In 1993, the zoning district in which L'Amour is located was rezoned from a CG district

14   to a Commercial Retail (CR) district, where Adult Entertainment is not a permitted use pursuant

15   to Section 37-30.200 of the Salinas Municipal Code.  Because the zoning district prohibiting

16   Adult Entertainment use changed after the business was established in the facility, as it existed in

17   1993, it became a legal non-conforming use for Adult Entertainment.  SMC §37-50.160(b)(1).

18   From approximately 2001 through 2004, "In & Out Tax Service," an income tax service

19   office, in no way associated with L'Amour, operated from the portion of the building currently

20   identified as 323 E. Alisal Street.  Pursuant to SMC §37- 50.160(f), the Adult Entertainment use

21   formerly permitted at 323 E. Alisal Street was rendered "abandoned" by allowing a conforming

22   use in a CR district to operate for a continuous period of 180 days or more.  Therefore, as of

23   2004, any business/use at 323 E. Alisal Street must be in compliance with CR zoning.  Adult

24   Entertainment uses are not permitted within a CR zoning district.

25   ## A.    FIRST ATTEMPTED EXPANSION OF NON CONFIRMING USE

26   In August 2006, the City was notified that the portion of the building previously used by

27   "In & Out Tax Service" was being occupied by L'Amour who installed approximately twenty

28   (20) viewing booths where paying customers can view or preview adult motion pictures.  The

1   construction and operation of these viewing booths constituted an unlawful expansion of Adult
2   Entertainment use. In October 2006, the City notified the property owner and business owner of
3   this unlawful expansion and instructed them to prohibit public access to this area and to remove
4   the viewing booths.

5          In January 2007, the City issued two Administrative Citations: one in the amount of
6   $100.00 and the other for $200.00 for failure to remove the viewing booths and failure to secure
7   the area from public access. Plaintiff subsequently agreed with the City's position that the Adult
8   Entertainment use was abandoned at 323 E. Alisal Street as a result of the operation of the
9   income tax office in that portion of the building.

10         **B.    SECOND EXPANSION OF NON-CONFIRMING USE**

11         In February 2007, the viewing booths that were previously located at 323 E. Alisal Street
12  were relocated to the portion of the building identified as 320 Rianda Street. Prior to the
13  relocation of the viewing booths, this area was used solely as storage for the adult entertainment
14  business. However, Plaintiff did more than simply relocate the viewing booths from one portion
15  of the building to another; it also completed electric rewiring and constructed new walls, new
16  floor-coverings, and T-bar ceilings thereby significantly transforming the former storage area
17  into one with more intensive use and open to the public.

18         The City notified Plaintiff that the type of work completed in the former storage area
19  required building and electrical permits and that an inspection by City Building officials would
20  follow. Plaintiff was instructed to immediately discontinue use of the viewing booths and to
21  secure the area from public access; however, subsequent inspections by City officials revealed
22  that public access remained available and the booths continued in operation. After repeated
23  instructions and the issuance of two $500 Administrative Citations from the City, Plaintiff
24  eventually boarded up the former storage area to discontinue allowing public access and use of
25  viewing booths.

26         Plaintiff hired an architect, one James Vocelka, to prepare a building permit application
27  (#B07-0098) to install and operate viewing booths in the former storage. Vocelka submitted said
28  application in March 2007. City staff reviewed the permit application and on March 30, 2007

1  faxed the architect a list of corrections that needed to be addressed.  Upon not receiving a
2  response from Vocelka or Plaintiff, City staff advised Plaintiff that the permit check period
3  expired on September 8, 2007, six months from the date the permit application was submitted.
4  Revised plans were consequently submitted to the City in early August 2007 at which time an
5  automatic extension was applied for review of the newly submitted plans.  Upon the City's
6  second review of the permit application, the City's Planning department concluded that the
7  proposed plan to add more than double the existing number of viewing booths to an area
8  previously closed off to public access was an unlawful expansion of a legal non-conforming use.

9  **C.    LOCATION OF ADULT ENTERTAINMENT FACILITIES IN
        INDUSTRIAL DISTRICTS**

10

11  On December 7, 2006, the current City zoning ordinance took effect.  This ordinance
12  provides that Adult Entertainment Facilities shall be located in Industrial zoning districts.  In
13  order to obtain approval for a new use, an applicant must go through the CUP process if located
14  in an Industrial General (IG) zone and a Site Plan Review ("SPR") process in an Industrial
15  General Commercial (IGC) zone.  The CUP process incorporates timing requirements set forth in
16  the California Permit Streamlining Act and requires that a discretionary decision be made by a
17  city official upon review of required findings. The applicant may petition for further review to
18  the Planning Commission, City Council and superior court.  The SPR is a ministerial function
19  where once certain requisites set forth in the Zoning Ordinances are fulfilled; a permit of
20  occupancy is approved.  Presently, L'Amour is the only Adult Entertainment Facility operating
21  in Salinas.  As far as is known to Defendant, neither L'Amour nor any other adult entertainment
22  business has applied to open and operate an adult entertainment facility in the IG or IGC zoning
23  districts.

24  //
25  //
26  //
27  //
28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### LEGAL ARGUMENT

**A.  LOCAL GOVERNMENTS HAVE BROAD POWERS TO ZONE AND CONTROL LAND USE**

Plaintiff has brought suit challenging the enforcement of zoning ordinances enacted by the City of Salinas. (See First Amended Complaint For Declaratory and Injunctive Relief, Page 1). It is well settled that local governments have broad powers to zone and control land use when the ordinance is reasonable in object and not arbitrary in operation. *Euclid v. Ambler Realty Co.,*272 U.S. 365 (1926); *Livingston Rock and Gravel Company v. County of Los Angeles* 3 Cal.2d 121 (1954). Zoning ordinances are presumptively valid and local governments have broad power to zone and control land use. *Lydo Enterprises, Inc. v. City of Las Vegas* 745 F. 2d 1211 (9th Cir. 1984).

Plaintiff alleges that the enforcement of the City's zoning ordinances violates L'Amour's constitutional First Amendment right to freedom of speech. (First Amended Complaint for Declaratory and Injunctive Relief, page 1 and 2.). However, a zoning ordinance may regulate adult entertainment facilities that disseminate protected materials by permitting the use in certain zoning districts and prohibiting it in others without violating the First Amendment. *Young v. American Mini Theatres* 427 U.S. 50 (1976); *Tollis Inc. v. County of San Diego* 505 F.3d 935 (9th Cir. 2007).

Plaintiff acknowledges that following decisions by the United State Supreme Court beginning in 1976, the courts have consistently upheld ordinances that restrict the location of adult entertainment facilities. (*See* Memorandum of Points and Authorities In Support of Motion For Preliminary and Permanent Injunction, page 2, lines 5-12 citing *Young v. American Mini Theatres* 427 U.S. 50 (1976); *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986). Plaintiff further acknowledges that the validity of Salinas zoning regulations under the time, place and manner framework of analysis is not the issue here. (*See* Plaintiff's Memorandum at 2, lines 13-15). In fact, a careful reading of Plaintiff's Complaint and Memorandum of Points and Authorities reveals that it is only challenging the City's treatment of the proposed expansion of

---

1    the legal non-conforming use of Adult Entertainment, and only seeking to enjoin SMC §37-

2    60.520 entitled, "Required Findings," a code section which applies to many types of uses and is

3    not uniquely applied to Adult Entertainment Facilities.

4           **B.    PLAINTIFF HAS FAILED TO MEET THE STANDARD FOR ISSUANCE
                    OF AN INJUNCTION AND ITS MOTION MUST BE DENIED.**

5

6           In *Lydo Enterprises, Inc. v. City of Las Vegas, supra*, the Ninth Circuit reiterated that a

7    preliminary injunction should be issued upon a clear showing of either:

8    (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious

9    questions going to the merits to make them fair ground for litigation *and* a balance of hardships

10   tipping decidedly toward the party requesting the preliminary relief. *See also Ebel v. City of*

11   *Corona,* 698 F.2d 390, 392 (9th Cir.1983) (citing *Aguirre v. Chula Vista Sanitary Service* 542 F.

12   2d 779, 781 (9th Cir.1976). These "are not really two entirely separate tests, but they are merely

13   extremes of a single continuum." *Benda v. Grand Lodge of Int'l Assoc. of Machinists &*

14   *Aerospace Workers,* 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937 (1979).

15          Plaintiff has failed to make a clear showing at either end of the continuum. The Federal

16   and California case law as set forth more fully below, supports the City's position that reasonable

17   and non-arbitrary zoning ordinances may apply to an adult entertainment facility even if it

18   disseminates protected speech.

19          Plaintiff completely fails to show irreparable harm. The City's denial of L'Amour's

20   building permit application does not inhibit its current business, which has been and continues to

21   be, in uninterrupted operation. Moreover, L'Amour has presented no facts to indicate that the

22   City would put impermissible restrictions if L'Amour chose to move its business to a zoning

23   district in the City where adult entertainment facilities are permitted. Plaintiff argues that under

24   the City's zoning code, the routine and reasonable time limits for issuing CUPs and reviewing

25   SPRs somehow unconstitutionally infringes on Plaintiff's purported plans to operate a second

26   business in zoning districts that permit the use of Adult Entertainment Facility. But as set forth

27   more fully below, the policies for review and time limits incorporated into the City's zoning

28

1  ordinance, which apply to all types of uses, are reasonable and based on California law for land
2  use regulation.

3       Plaintiff's arguments that it would be harmed if it were to move into zoning districts
4  where adult entertainment is allowed is based on pure speculation. "A preliminary injunction is
5  not justified when based mainly on speculation." *Lydo Enterprises, Inc. supra*. Finally the area
6  of municipal zoning power with regard to land use and adult entertainment facilities has been
7  extensively litigated. Plaintiff presents no new facts that would suggest that the City's zoning
8  ordinance and the California Permit Streamlining Act, which govern time limits for the issuance
9  of CUPs and SPRs for all uses, including Adult Entertainment use, should be enjoined.

10      **C.    THE CITY LAWFULLY REFUSED TO ALLOW EXPANSION OF
             L'AMOUR'S NON-CONFORMING USE**

11

12      The use of a building or land, which does not agree with the regulations of the use district
   where it is situated, is deemed a non-conforming use. 58 Am. Jur., Zoning §146, p. 1021. Often,
13
   as has happened in the case of L'Amour, a zoning ordinance where a business use is located is
14
   amended. In 1993, the zoning district where L'Amour is located was rezoned from CG to a
15
   Commercial Retail (CR) district. Adult entertainment is not a permitted use in a CR district, thus
16
   L'Amour continued operating as a legal non-conforming use.
17
        The rights of users of property under previous zoning ordinances is well recognized and
18
   is protected because of the hardship and doubtful constitutionality of compelling the immediate
19
   discontinuance of non-conforming uses. *Edmonds v. County of Los Angeles* 43 Cal.2d 642,651;
20
   *Livingston Rock and Gravel Company, supra.* The City recognizes L'Amour as a legal non-
21
   conforming use. L'Amour has been in uninterrupted operation for the past 15 years.
22
        Despite the lengthy life of L'Amour as a legal non-conforming use in Salinas, a city may
23
   seek to extinguish a legal non-conforming use by condemnation or abatement through the law of
24
   nuisance. *National Advertising Company v. County of Monterey* 1 Cal.3d 875 (1970). It is
25
   settled under California law that zoning ordinances look to the eventual liquidation of non-
26
   conforming uses. *County of San Diego v. McClurken* 37 Cal.2d 683, 686 (1951) cited in
27
   *Livingston Rock and Gravel Company, supra.* California cases hold that non-conforming uses
28

1    should be restricted rather than expanded. "The spirit underlying the ordinance is to restrict

2    rather than to increase the non-conforming use…" (*Edmonds v. County of Los Angeles*, Id.); and

3    see *Livingston Rock and Gravel Company*, Id. "The policy of the law is for elimination of non-

4    conforming uses (*City of Los Angeles v. Wolfe* 6 Cal. 3d 326, 337 (1971). "Given the objective

5    of zoning to eliminate non-conforming uses, courts throughout the country generally follow a

6    strict policy against their extension or enlargement." (*County of San Diego v. McClurken* 37

7    Cal.2d 683, 686-687 (1951).

8        Salinas Municipal Code §37-50.160(b)(6) states, "No structure partially occupied by a

9    non-conforming use shall be relocated, altered, or enlarged in such as way as to permit the

10   enlargement or the expansion of the space occupied by the non-conforming use."

11       In the case at bar, L'Amour has proposed placement of viewing booths necessitating

12   permits for electrical work and additional parking, first by moving into a space previously used

13   by a tax service and later by utilizing a former storage space. Pursuant to the Salinas Municipal

14   Code and California and Federal law, the City has properly denied L'Amour's attempts to

15   expand it non-conforming use.

16       **D.    RESTRICTIONS ON LOCATION OF ADULT ENTERTAINMENT**
         **FACILITIES IN SPECIFIC ZONING DISTRICTS AND ASSOCIATED**
17       **TIMELINES FOR REVIEW ARE CONSTITUTIONAL**

18       The City has divided Salinas into base zoning districts for the purposes of classifying,

19   regulating, restricting, and separating the use and development of land, buildings, and structures.

20   SMC §37-20.010. Plaintiff complains that the City's ordinance allows "adult businesses in only

21   two zones." (*See* Plaintiff's Memorandum at 2, line 16 and 17.)

22   Plaintiff is correct that the City allows Adult Entertainment Facilities as a permitted use within

23   Industrial-General Commercial (IGC) and Industrial-General (IG) districts. The Ninth Circuit in

24   *Tollis ,Inc. v. County of San Diego* 505 F. 3d 935 (9th Cir. 2007) upheld San Diego County's

25   2002 adult business ordinance, which among other things, required adult businesses operating in

26   the unincorporated area to relocate only in industrial zones. Similar to San Diego County, the

27   City has relied on the rationale that disbursed location of Adult Entertainment Facilities is

28   needed to combat negative secondary effects such as neighborhood blight. SMC §37-50.020(a).

1. **The City's Regulations Which Require New Businesses to Obtain a CUP or SPR, Have Time Limits For Review and Do Not Invest Unbridled Discretion in a Decision Maker**.

a. **Industrial-General Zoning District**

IG district regulations " provide for the full range of manufacturing, industrial processing, general service, and distribution uses deemed suitable for location in Salinas; and protect Salinas' general industrial areas from competition for space from unrelated commercial uses that could more appropriately be located elsewhere in the city". SMC §37-30.300.

In addition to Adult Entertainment Facilities, other types of permitted uses in an IG district include Commercial Recreation and Entertainment, Convenience Stores, Telecommunications Facilities, and Day Care Centers. All the permitted uses just listed are subject to approval of a conditional use permit. In this case, Plaintiff **has not applied** for a conditional use permit to conduct business in an IG zone. However, as demonstrated by the map attached to the Declaration of Chuck Lerable, as Exhibit A, filed concurrently herewith, there is a large area where Plaintiff could potentially re-locate or open a new Adult Entertainment Facility. If Plaintiff were to do so, approval of a conditional use permit is required. The Permit Streamlining Act, California Government Code §65920 *et.seq*, governs the process for decision-making on a conditional use permit, including time limits and procedures.

b. **Permit Streamlining Act**

The Permit Streamlining Act requires public agencies to follow standardized time limits and procedures for specified types of land use decisions. Section 107 of the Salinas City Charter states: "All general laws of the State applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this Charter, or with ordinances, or resolutions hereby continued in force, or hereafter enacted, shall be applicable to the city." Although the SMC does not provide timeline requirements set forth in the Permit Streamlining Act, the Act applies pursuant to Section 107 of the City Charter. The Permit Streamlining Act applies to land use decisions requiring adjudicatory approvals such as conditional use permits and variances. *Landis v. County of Monterey* 139 Cal. App.3d 934 (1983). If the City Planner denies a CUP, the decision may be appealed to the Planning Commission, and the decisions of

1   the planning commission may be appealed to the city council. SMC §37-60.1270. As set forth in
2   the Declaration of Associate Planner Andrew Myrick, filed concurrently herewith, the City
3   applies the time limit requirements delineated in the Permit Streamlining Act (Cal. Gov't. Code
4   §§65943, 65950).

5   These time limits (approximately 120 days from application through appeal) are
6   reasonable given the process that must be completed. SMC §37-60.520(a-c) requires that the
7   following findings must be made before it will issue a conditional use permit.

8   a) "That the proposed location of the use is in accordance with the objective of the
9   Salinas general plan, this Zoning Code, and the purposes of the district in which the site is
10  located;

11  b) That the proposed location of the conditional use and the proposed conditions under
12  which it would be operated or maintained are consistent with the Salinas general plan and will
13  not be detrimental to the public health, safety, or welfare of persons residing or working in or
14  adjacent to the neighborhood of such use, nor detrimental to properties or improvements in the
15  vicinity or to the general welfare of the city; and

16  c) That the proposed conditional use complies with the provisions of this Zoning Code,
17  including any specific conditions required for the proposed use."

18  If the City fails to respond to the applicant for a CUP within the time frame of two 30
19  calendar day periods, the application is deemed complete. (Cal. Gov't. Code §65943; *Orsi v.*
20  *City Council* 219 Cal. App. 3d 1576 (1990). If the application is deemed incomplete, the
21  applicant may appeal to the hearing body that must make a final written determination within 60
22  calendar days.

23  **If Plaintiff were to apply** for a conditional use permit in the IG zoning district, it would
24  be treated no differently than any other applicant for a conditional use permit in terms of the time
25  limits and procedures set forth in the Permit Streamlining Act. The City Planner does not have
26  "unbridled" discretion, as Plaintiff claims, to deny a CUP application because there is an avenue
27  for appeal. The Plaintiff's claim, that any application it would make for a CUP would not be
28  subject to time lines for review or appellate review, is wrong.

City of Salinas' Memorandum of Opposition to          11          C08-01563-JW
Plaintiff's Motion for Injunction

1

### c. **Industrial-General Commercial Zoning District**

2    The purpose of an ICG district is to "provide for a range of retail, wholesale, and service

3   businesses not generally suitable in commercial districts because they attract heavy automobile

4   and truck traffic or have certain adverse impacts; and to provide opportunities for certain limited

5   manufacturing uses that have impacts comparable to those of retail and service." SMC §37-

6   30.300(e)(1).

7    In addition to Adult Entertainment Facilities, other types of permitted uses in an IGC

8   district    include    Commercial    Recreation    and    Entertainment,    Convenience    Stores,

9   Telecommunications Facilities and Day Care Centers.  An Adult Entertainment Facility is

10  subject to even less stringent review than other businesses permitted in the IGC zoning district.

11  See SMC Table 37-30.130 Industrial (I) Districts Use Classifications. An Adult Entertainment

12  Facility must only apply for a SPR in an IGC zone.  In the site plan review process, the City

13  determines whether the application is complete and then approves the applications or approves

14  with modifications.  Appeals for denial of an application before an appellate body are scheduled

15  for hearing within 60 days of the receipt of the appeal per SMC §37-60.1300.

16   In this case, Plaintiff **has not even applied** for a site plan review for a business in an IGC

17  district.  Plaintiff could re-locate or open a new business in an IGC district and only be subject to

18  the non-discretionary site plan review process if it chose to do so.  Ministerial projects such as

19  building permits, lot line adjustments, certificates of compliance, and site plan reviews are not

20  subject to the time limits established under the Permit Streamlining Act.  *Findleton v. El Dorado*

21  *Co. Board of Supervisors* 12 Cal. App.4[th] 709 (1993).

22   In summary for Adult Entertainment Facilities, the IG zoning district requires a CUP

23  process with definite time requirements that are reasonable in light of the information that must

24  be gathered and determined.  There is not unbridled discretion in one person or body because

25  there is a time specific appeal process.  The majority of land available for Adult Entertainment

26  Facilities is located in an IGC district.  (*See Lerable Declaration*).  For an Adult Entertainment

27  Facility in an IGC zoning district, a site plan review process is required which is a ministerial

28

1 | process. Nevertheless if there is disagreement with a City Planner's interpretation of the
2 | application, the appellate process embodied in the SMC can be invoked. SMC §37-60.1300.

### 2. PLAINTIFF LACKS STANDING TO ATTACK THE CITY'S CUP AND SPR PROCESSES

Plaintiff lacks standing to attack the City's conditional use permit and site plan review processes as set forth in the Zoning Code, §§ 37-60.520 (a) and (b) of the Salinas Municipal Code as being unconstitutional. Constitutional standing at minimum requires three elements: "first and foremost, there must be alleged, and ultimately proven, an "injury in fact" - a harm suffered by plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; second, there must be "causation"- a fairly traceable connection between plaintiff's injury and complained - of conduct of defendant; third, there must be "redressability" - a likelihood that requested relief will redress alleged injury. U.S.C.A. Const.Art. 3, § 2, cl. 1." *Steel Company v. Citizens For A Better Environment* 523 U.S. 83 (1998).

L'Amour has filed this action because it has been denied an expansion of its non-conforming use. Collaterally, it seeks to enjoin zoning ordinances which would govern establishment of a new business in zoning districts allowing Adult Entertainment Facilities, yet Plaintiff has never even submitted an application for such a use in the appropriate zoning districts. Enjoining the sections of the Salinas Municipal Code that govern the issuance of a CUP or SPR for all uses does not address Plaintiff's purported injury of denial of expansion of a non-conforming use.

Plaintiff lacks standing to sue for declaratory relief and injunction of SMC §§37-60.520 (a) and (b), as none of the minimum constitutional requirements are met.

### E. PLAINTIFF'S RELIANCE ON *FW/PBS, Inc. v. CITY OF DALLAS* IS MISPLACED.

Plaintiff relies on the case of *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215 (1990) to support its suit. However, the facts of the *FW/PBS, Inc.* case are different than the case at bar. In *FW/PBS, Inc.,* the City of Dallas adopted an ordinance that required adult businesses purveying sexually explicit speech to be licensed. Although the challenged ordinance applied to other types of businesses as well, it was more onerous with respect to sexually oriented

---

1    businesses.    The Court ruled that because a licensing scheme creates the possibility that
2    constitutionally protected speech will be suppressed, the licenses for a First Amendment
3    protected business must be issued within a reasonable period of time.

4        Unlike the Dallas case, the City of Salinas does not require that an adult entertainment
5    facility such as L'Amour obtain a license other than a simple business license required of all
6    businesses operating in the City.[1]  If L'Amour wanted to open a new business in a zoning district
7    that permits an Adult Entertainment Facility use, it would simply have to comply with the zoning
8    CUP and SPR regulations as described, all of which have discernible time limits and which
9    decisions may be appealed.  SMC §37-60.1300.

10        Plaintiff argues that the fact that its building permit for expansion of a non-conforming
11    use was denied equates to a denial of a license for an Adult Entertainment Facility.  Again,
12    Plaintiff is inaccurate.  The building permit was denied because it sought to expand a non-
13    conforming use, not because the applicant was an Adult Entertainment Facility.

14    **F.    _TOLLIS, INC. V. COUNTY OF SAN DIEGO_ IS DISTINGUISHABLE WTH REGARD TO THE COURT'S DECISION CONCERNING TIME LIMITS.**

15        In _Tollis Inc. v. County of San Diego_ 505 F.3d 935 (9th Cir. 2007), the court upheld San
16    Diego County's 2002 adult business ordinance, which among other things, required adult
17    businesses operating in the unincorporated area to relocate only in industrial zones.[2]  The Ninth
18    Circuit concurred, however, with the lower court's determination that San Diego County's adult
19    business licensing process was unconstitutional because it allowed for an unreasonably long
20    period of time (130 or more days) for county officials to consider a permit request for an adult
21    business.  _Tollis, Inc. supra_; _Fantasyland Video, Inc. v. County of San Diego_ 373 F. Supp.2d
22    1094, 1144 (2005).

---

24    [1] SMC §19-4 regulates business licenses and states: "There are hereby imposed upon the businesses, trades,
25    professions, callings and occupations specified in this chapter license taxes in the amounts hereinafter prescribed. It
shall be unlawful for any person to transact and carry on any business, trade, profession, calling or occupation in the
city without first having procured a license from the city so to do and paying the tax hereinafter prescribed or
26    without complying with any and all applicable provisions of this chapter.  This section shall not be construed to
require any person to obtain a license prior to doing business within the city if such requirement conflicts with
27    applicable statutes of the United States or of the state. Persons not so required to obtain a license prior to doing
business within the city nevertheless shall be liable for payment of the tax imposed by this chapter."

28    [2] Although this case is not mentioned in Plaintiff's brief, opposing counsel, Clyde DeWitt, represented
Plaintiff/Appellant Tollis, Inc. against the County of San Diego.

1         This ground is not present in the present case as the City does not require that an adult

2    entertainment business apply for an administrative permit.   The City simply requires that

3    Plaintiff adhere to the requirements of the zoning code that apply to all permitted users in a

4    zoning district.

5         Even if this Court were to determine that the SPR process or the CUP process used by the

6    City was unconstitutional as applied to an Adult Entertainment Facility, the provision could be

7    severed from the zoning ordinance as it applies to adult businesses until such time as a

8    constitutional permissible process is devised.    Salinas Municipal Code Section 37-10.230

9    provides:

10        "If any section, subsection, sentence, clause, phrase, or portion of this Zoning Code is for

11   any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such

12   portion shall be deemed a separate, distinct, and independent provision, and such decision shall

13   not affect the validity of the remaining portions thereof." As in *Tollis*, an offending provision, if

14   it can be found, can be severed and not invalid an entire ordinance.

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

---

City of Salinas' Memorandum of Opposition to                15                C08-01563-JW
Plaintiff's Motion for Injunction

IV.

## CONCLUSION

Plaintiff uses a thinly veiled argument of First Amendment rights in an attempt to expand its Adult Entertainment Facility. It may not do so by expanding L'Amour at its present location, as it is a non-conforming use. Expansion of Plaintiff's business may only be accomplished by moving to or opening a new Adult Entertainment Facility in a location appropriately zoned for that use. This is a reasonable alternative open to Plaintiff if it desires to expand and does not infringe on Plaintiff's right to free speech. Although Plaintiff claims that the City Zoning Code would unconstitutionally restrict an attempt to open in another district, the facts and the law do not support Plaintiff's arguments.    Accordingly, Defendant City respectfully requests that Plaintiff's Motion for Preliminary and Permanent injunctive and declaratory relief be denied.

Dated: September 8, 2008                    CITY OF SALINAS

By: _____
                                SUSAN J. MATCHAM
                                Assistant City Attorney
                                Attorney for Defendant
                                CITY OF SALINAS