Vanessa W. Vallarta, City Attorney, # 142404
Susan J. Matcham, Asst. City Attorney, #79562
Georgina B. Mendoza, Deputy City Attorney, #230940
CITY OF SALINAS
OFFICE OF THE CITY ATTORNEY
200 Lincoln Avenue
Salinas, CA 93901
Telephone: (831) 758-7256
Facsimile: (831) 758-7257

Attorneys for Defendant
CITY OF SALINAS

UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SEVEN CITIES ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SALINAS, <br><br> Defendant. | Case No. C-08-01563-JW <br><br> **DECLARATION OF ANDREW MYRICK IN SUPPORT OF CITY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION** <br><br> DATE: October 3, 2008 <br> TIME: 9:00 A.M. <br> ROOM: Courtroom 8, 4th Floor <br> JUDGE: Hon. James Ware |

I, ANDREW MYRICK, hereby declare:

1. I am an Associate Planner for Defendant City of Salinas ("City") and have been so employed for over two (2) years. I am competent to testify about the information set forth below:

2. L'Amour Shoppe ("L'Amour") is located at 325 E. Alisal Street in Salinas, California. Portions of the building are also addressed as 323 E. Alisal Street and 320 Rianda Street.

3. L'Amour was established in the City of Salinas on or about 1985 at which time it

1  was situated in a Commercial General (CG) zoning district. At that time, an Adult Entertainment Facility was a permitted use within a CG district. In 1993, the zoning district where L'Amour is located was rezoned from a CG district to a Commercial Retail (CR) district, as a part of the adoption of a new Zoning Code. Adult Entertainment Facilities are not a permitted use within the CR district under the 1993 and subsequent Zoning Codes. Therefore, L'Amour was deemed a legal nonconforming use as of the effective date of the rezone and was allowed to continue operation subject to compliance with the requirements of the 1993 Salinas Zoning Code.

4.   From approximately 2001 through 2004, an income tax service office (a Business and Professional Office use) operated from the portion of the building identified as 323 E. Alisal Street. This business was independent of and was not associated with L'Amour. Pursuant to the Salinas Zoning Code, the Adult Entertainment Facility use was "abandoned" in the area identified as 323 E. Alisal Street because the Adult Entertainment Facility use was discontinued for a continuous period of 180 days or more.

5.   In March 2007, James Vocelka, submitted a building permit application (#B07-0098) on behalf of Plaintiff to legally install and operate viewing booths in the portion of the building identified as 320 Rianda Street. I and other City staff from different City Departments/Divisions—including Planning, Fire, Engineering, Building, Police and Code Enforcement—reviewed the permit application and responded. Vocelka was advised that the permit check period expired on September 8, 2007, six months from the date of submittal. Revised plans were submitted to the City in August 2007 and an automatic extension was applied for review of the newly submitted plans.

6.   On October 16, 2007, I wrote a memorandum to Kristy Parker, Building Permit Specialist stating that Building Permit #B07-0098 should not be issued, primarily because the addition of viewing booths to the area of the building identified as 320 Rianda Street would constitute an unlawful expansion of a nonconforming use, in violation of SMC § 37-50.160(b)(6) and § 37-50.160(b)(3)', attached hereto as **Exhibit "A"**. Based upon this memorandum, Building Permit #B07-0098 was not approved.

7. The Salinas Zoning Code permits Adult Entertainment Facilities, including an Adult Bookstore, Adult Live Entertainment Establishment and Adult Motion Picture Theatre, all as defined under SMC § 37-50.020, to exist in two Industrial zoning districts: Industrial – General Commercial (IGC) and Industrial – General (IG). Development or expansion of an Adult Entertainment Facility within an IGC zoning district is subject to the Site Plan Review ("SPR") process, while development or expansion of an Adult Entertainment Facility within an IG zoning district is subject to the Conditional Use Permit ("CUP") process.

8. Applications for an SPR may be initiated by submitting a Development Review Application, an Operational/Environmental Statement that describes the proposed project with detail, and the appropriate application fees. Pursuant to SMC §37-60.270, an SPR is solely reviewed by Community Planning and Development ("CPD") City staff and shall be approved or approved with modifications if the application conforms to the requirements of the Zoning Code. The City Planner shall render a decision on an SPR application without public notice or hearing. If an application for an SPR is found not to be in compliance with the Zoning Code, comments from CPD and other applicable City Departments/Divisions are provided to the applicant detailing the specific provisions of the Code and/or other regulations that would need to be addressed prior to project approval. No conditions may be placed on the project, although comments clarifying the approved method by which Code compliance would be achieved are frequently included.

9. Upon review of City records, I did not find any evidence that the present business owner of L'Amour Shoppe has ever applied for either a CUP or an SPR to operate an Adult Entertainment Facility in an IG or IGC zoning district.

10. Pursuant to SMC §37.60.520, the City Planner or Planning Commission, as applicable, shall approve an application for a CUP on the basis of the application and testimony submitted and all the following findings can be made: (a) That the proposed location of the use is in accordance with the objectives of the Salinas general plan, this Zoning Code, and the purposes of the district in which the site is located; (b) That the proposed location of the conditional use

1  and the proposed conditions under which it would be operated or maintained are consistent with
2  the Salinas general plan and will not be detrimental to the public health, safety, or welfare of
3  persons residing or working in or adjacent to the neighborhood of such use, nor detrimental to
4  properties or improvements in the vicinity or the general welfare of the city; and (c) That the
5  proposed conditional use complies with the provisions of this Zoning Code, including any
6  specific conditions required for the proposed use.  In the event the Planning Commission denies
7  a CUP, then the applicant may appeal to the City Council.  An application for a CUP may be
8  submitted in the same fashion as a submittal for an SPR.

9      11.  CUP applications are subject to the timeframes specified in the Permit
10 Streamlining Act (California Government Code §§65943, 65950).  Specifically, once a project is
11 submitted, City staff must notify the applicant for a CUP in writing within 30 days whether the
12 application can be deemed complete.  In the event that an application cannot be deemed
13 complete, comments from CPD and other applicable City Departments/Divisions are provided to
14 the applicant detailing additional information, which is necessary, and the specific provisions of
15 the Code and/or other regulations that would need to be addressed prior to the application being
16 deemed complete.  Resubmittal of the application begins a new 30-day review period.  Once the
17 application is deemed complete, the project must be approved or denied within the timeframes
18 specified in the Permit Streamlining Act.  In the event that a project is exempt from California
19 Environmental Quality Act ("CEQA"), as would likely be the case in this instance, a decision to
20 approve or deny the project must be made within 60 days of the date the project was deemed
21 complete.

22     I declare under penalty of perjury under the laws of the United States and the State of
23 California that the foregoing is true and correct.

24     This declaration was executed on this 18th day of August 2008, in Salinas, California.

ANDREW MYRICK

Declaration of Andrew Myrick ISO City's
Opposition of Motion for Preliminary and Permanent Injunction

C08-01563-JW

EXHIBIT "A"

Chapter 37 ZONING*

## Article V. Supplemental Regulations Applying to All Districts.

Sec. 37-50.160. Nonconforming uses and structures.

### Sec. 37-50.160. Nonconforming uses and structures.

(a) **Purpose.** The purpose of this section is to limit the number and extent of nonconforming uses by controlling their enlargement, their reestablishment following abandonment, their alteration, and their restoration after cessation due to destruction of the structures containing them. This section, while permitting the use and maintenance of nonconforming structures, limits them by prohibiting their restoration following destruction and by prohibiting alteration, enlargement or relocation upon the site in any manner that would increase the discrepancy between the standards contained in this division and the conditions existing on the subject property.

(b) **Continuation and Maintenance of Nonconforming Uses.**

(1) A use, lawfully occupying a structure or a site on the effective date of the ordinance codified in this chapter, or of amendments thereto, that does not conform with the use regulations for the district in which it is located or the applicable lot area per dwelling unit regulations shall be deemed a nonconforming use. Nonconforming uses may only be continued subject to the requirements of this division.

(2) A use that does not conform with the parking, loading, screening, open space, or planting area regulations of the zoning district in which it is located shall not be deemed a nonconforming use solely on the basis of these deficiencies.

(3) No nonconforming use shall be enlarged or extended to occupy any part of a structure or site that it did not occupy on the effective date of the ordinance codified in this chapter, or of the amendments hereto that cause it to become a nonconforming use.

(4) No structure or use that fails to meet the performance standards of Section 37-50.180: Performance standards, shall be enlarged or extended unless conditions are imposed and implemented, which will result in elimination of the nonconformity with the required conditions.

(5) A structure containing or serving a nonconforming use shall not be relocated, enlarged, or structurally altered unless required by law or for health/safety reasons, or unless the relocation, enlargement, or alteration eliminates or reduces the extent of the nonconformity.

(6) No structure partially occupied by a nonconforming use shall be relocated, altered, or enlarged in such a way as to permit the enlargement or the expansion of the space occupied by the nonconforming use.

(7) A structure containing or serving a nonconforming use may be maintained and repaired, provided that the cost of the maintenance and repair does not exceed fifty percent of the cost to replace the structure as determined by the city planner in the same manner as the building official determines final valuation for the purposes of building permit fees.

(c) **Continuation and Maintenance of Nonconforming Structures.**

(1) A structure, lawfully occupying a site on the effective date of the ordinance codified in this chapter, or amendments thereto, which fails to meet certain development standards established in this chapter and enumerated in this section shall be deemed a nonconforming structure. Nonconforming structures may be continued, maintained, and expanded subject to the requirements of this division. Development standards addressed by this paragraph include: size of yards, height of structures, driveways, distance between structures, maximum floor area, and required parking or open space.

(2) A nonconforming structure may be structurally altered, enlarged, or reconstructed provided there is no increase in the discrepancy with the standards referenced in the section for the zoning district in which the structure is located and the structure is similar in character to the original structure. Routine maintenance and repairs may be performed on nonconforming structures.

(3) In the case of an enlargement or an addition, the development standards referenced in this section shall only be applicable to the enlargement or addition and not the entire structure.

(d) **Restoration of a Damaged Structure.**

(1) Where Damage Causes Less Than Fifty Percent of Replacement Cost. Whenever a structure that does not comply with the standards for front yards, side yards, rear yards, height of structures, maximum floor area, distances between structures, driveways, or usable open space prescribed in the regulations for the district in which the structure is located, or the use of which does not conform with the regulations for the district in which it is located, is destroyed by fire or other calamity to the extent of less than fifty percent of replacement cost, the structure may be restored and the nonconforming use may be resumed, provided that restoration is started within twelve months and diligently pursued to completion. Floodplain management requirements must also be met.

(2) Where Damage Causes Fifty Percent or Greater of Replacement Cost. Whenever a structure that does not comply with the standards for front yards, side yards, rear yards, height of structures, maximum floor area, distances between structures, driveways or usable open space prescribed in the regulations for the district in which it is located, or the use of which does not conform with the regulations for the district in which it is located, is destroyed by fire or other calamity, to an extent fifty percent or greater of replacement cost, the structure shall not be restored except in full conformity with the regulations for the district in which it is located, and the nonconforming use shall not be resumed except as follows:

(A) A property containing a single-family dwelling unit, multifamily consisting of up to four dwelling units, or a residential condominium structure in R, NU (NE, NG-1, and NG-2), and CO/R districts which does not conform to standards for setbacks, height of structures, distance between structures, usable open space, or lot area per dwelling unit may be rebuilt with the same floor area, whatever the extent of the damage, provided that the nonconformity is not enlarged to the extent it would increase the discrepancy between conditions existing at the time of the damage and the standards prescribed in this chapter.

(B) Commercial office structures which conform to parking requirements in effect prior to the adoption of this Zoning Code shall not be considered nonconforming structures as a result of the adoption of this Zoning Code and may be rebuilt with the same floor area, whatever the extent of the damage, provided that parking or parking lot landscaping is the only nonconformity.

(3) The extent of damage or partial destruction shall be determined by the city planner in the same manner as the building official determines final valuation for the purposes of building permit fees. Valuation shall be based upon the cost to replace the structure at the time the damage occurs. The determination of the city planner may be appealed in accordance with *Article VI, Division 17: Appeals*.

(e) **Elimination of Nonconforming Uses and Structures.**

(1) Nonconforming Use When No Structure Involved. In any district the nonconforming use of land shall be discontinued within one year from the date of notification in accordance with the provisions of this section.

(2) Nonconforming Use of a Structure. All nonconforming uses of a structure shall be discontinued within the time periods specified below, unless an exception is granted pursuant to Section 37-50.160(e)(3) below:

(A) R and NU (NE, NG-1, and NG-2) districts: three years from the date of notification in accordance with the provisions of this section, except that nonconforming residential uses located in residential zoning districts shall not be required to be discontinued as a result of this section;

(B) A, C, MU, NU (VC), I, OS, P, and PS districts: ten years from the date of notification in

accordance with the provisions of this section.

(3) Notification and Exception Procedures. The city planner may determine those properties for which lawfully existing uses were rendered nonconforming by reason of adoption of the ordinance codified in this chapter and the zoning map. Written notice of the city planner's determination of such nonconformance, the termination procedures, and the requirements of this section shall be mailed to all owners of record and to the occupant of each such property. Within one year of the date of mailing of such notice, any property owner, lessee with the consent of the owner, or purchaser of such property acting with the consent of the owner may apply to have such property excepted from the provisions of this section as follows:

(A) Application Requirements. An exception from the requirements of this section shall be initiated by submitting an application to community planning and development.

(B) Commission Action. The planning commission shall hold a duly noticed public hearing within a reasonable time on each application for an exception from the termination requirements of this section. Following the hearing, the commission may determine whether the use of the property on the date of adoption of the ordinance codified in this Zoning Code is compatible with and not detrimental to the land uses designated in the general plan for the surrounding area and properties, and may issue a certificate of exception. The commission may recommend such conditions as it may find necessary to ensure compatibility including, but not limited to, required improvement of or modifications to existing improvements on the property; limitations on hours of operations; limitations on the nature of operations; and a specified term of years for which the exception shall be granted.

(C) Appeal of Commission Action. The decision of the planning commission may be appealed in accordance with *Article VI, Division 17: Appeals*.

(f) **Abandonment of Nonconforming Use.**

(1) A nonconforming use that is abandoned, discontinued, or changed to a conforming use for a continuous period of one hundred eighty days or more shall not be re-established, and the use of the structure or site thereafter shall be in conformity with the regulations for the district in which it is located.

(2) The city planner may extend the one-hundred-eighty-day limit for re-establishing a nonconforming use if a property owner can demonstrate to the city planner's satisfaction based on substantial evidence that the use has not been abandoned, discontinued, or changed and that the re-establishment of the use is being diligently pursued or that a building permit for reconstruction, without alteration or enlargement, has been issued. The decision of the city planner may be appealed to the planning commission in accordance with *Division 17: Appeals*.

(g) **Minor Exceptions.**

(1) The planning commission or city planner may grant minor exceptions from certain regulations contained in this section as follows:

(A) Construction of raised grade stairways, architectural archways, architectural entry features and covered porches in required yards and required open space;

(B) Construction of a residential addition including a second or third story that will be equal to or less than the existing legal nonconforming setback. A residential addition includes attached or detached covered parking (garages and carports);

(C) Alteration of historic resources and landmarks whereby the structure's historical or architectural integrity may be affected;

(D) Replacement of an existing detached accessory structure that encroaches into required setbacks, when all of the following findings are made:

(i) The replacement detached accessory structure's encroachment(s) into the required setback(s) will be equal to or less than the existing detached accessory structure's respective setback(s) encroachment,

(ii) The roof of a detached accessory structure located within five feet of any property line shall be equipped with a rain gutter or otherwise designed to prevent roof runoff from draining onto adjacent property,

(iii) The replacement structure will not exceed the maximum square footage permitted for

accessory structures under Section *37-50.010(f)(3)*,
(iv) The replacement structure will be of the same nature as the original detached accessory structure (e.g., garage to garage, gazebo to gazebo).
(2) Application. Applications for a minor exception shall be initiated by submitting an application for a minor conditional use permit for a minor exception to community planning and development. (Ord. No. 2463 (NCS).)