1  Vanessa W. Vallarta, City Attorney, # 142404
   Susan J. Matcham, Asst. City Attorney, #79562
2  Georgina B. Mendoza, Deputy City Attorney, #230940
   CITY OF SALINAS
3  OFFICE OF THE CITY ATTORNEY
   200 Lincoln Avenue
4  Salinas, CA 93901
   Telephone: (831) 758-7256
5  Facsimile: (831) 758-7257

6  Attorneys for Defendant
   CITY OF SALINAS

7

8                    UNITED STATES DISTRICT COURT

9                 THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  SEVEN CITIES ENTERPRISES, INC.,          **Case No. C-08-01563-JW**

13                    Plaintiff,

14          v.                               **DECLARATION OF SUSAN
                                             MATCHAM IN SUPPORT OF CITY'S
15  CITY OF SALINAS,                         OPPOSITION TO PLAINTIFF'S
                                             MOTION FOR PRELIMINARY AND
16                    Defendant.             PERMANENT INJUNCTION**

17                                           **DATE:    October 3, 2008
                                             TIME:    9:00 A.M.**
18                                           **ROOM:    Courtroom 8, 4th Floor
                                             JUDGE:   Hon. James Ware**

19

20          I, SUSAN J. MATCHAM, hereby declare:

21          1.      I am the Salinas Assistant City Attorney and have been so employed for the past

22  year.  I am competent to testify about the information set forth below:

23          2.      I am familiar with the Salinas Municipal Code ("SMC"), including but not limited

24  to those regulations pertaining to Adult Entertainment Facilities, non-conforming uses and those

25  pertaining to conditional use permit ("CUP") and site plan review ("SPR") processes.

26          3.      Attached hereto as *Exhibit "A"* are the SMC sections referenced in the City's

27  Opposition to Plaintiff's Motion for Preliminary and Permanent Injunction, including, but not

28                                            1

1  limited to those sections relevant pertaining to Adult Entertainment Facilities, non-conforming

2  uses, and those related to CUP and SPR processes.

3      4.    I am familiar with the time frames for review and appeal required by the

4  California Permit Streamlining Act (California Government Code §65920 *et seq)* as it applies to

5  the City's CUP process.

6      I declare under penalty of perjury under the laws of the United States and the State of

7  California that the foregoing is true and correct.

8      This declaration was executed on this 8th day of September 2008, in Salinas, California.

9

10

11                                  SUSAN J. MATCHAM
                                    Assistant City Attorney
12                                  CITY OF SALINAS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
Declaration of Susan J. Matcham ISO of City's                          C08-01563-JW
Opposition to Plaintiff's Motion for Preliminary and Permanent Injunction

EXHIBIT "A"

<u>THE CHARTER</u>

---

## CHARTER OF SALINAS

<u>Sec. 107. Application of general laws.</u>

### Sec. 107. Application of general laws.

All general laws of the State applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this Charter, or with ordinances, or resolutions hereby continued in force, or hereafter enacted, shall be applicable to the city.

CHAPTER 19. LICENSES.*

---

**Article I. In General.**

Sec. 19-4. License and tax payment required.

### Sec. 19-4. License and tax payment required.

There are hereby imposed upon the businesses, trades, professions, callings and occupations specified in this chapter license taxes in the amounts hereinafter prescribed. It shall be unlawful for any person to transact and carry on any business, trade, profession, calling or occupation in the city without first having procured a license from the city so to do and paying the tax hereinafter prescribed or without complying with any and all applicable provisions of this chapter.

This section shall not be construed to require any person to obtain a license prior to doing business within the city if such requirement conflicts with applicable statutes of the United States or of the state. Persons not so required to obtain a license prior to doing business within the city nevertheless shall be liable for payment of the tax imposed by this chapter. (Ord. No. 1353 (NCS), § 1.)

### Sec. 19-41. Penalty for violation of chapter.

Any person violating any of the provisions of this chapter or knowingly or intentionally misrepresenting to any officer or employee of this city any material fact in procuring the license or permit herein provided for shall be deemed guilty of a misdemeanor and subject to the penalties provided for by Section 1-7. (Ord. No. 1353 (NCS), § 1.)

### Sec. 37-10.230. Severability.

If any section, subsection, sentence, clause, phrase, or portion of this Zoning Code is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such portion shall be deemed a separate, distinct, and independent provision, and such decision shall not affect the validity of the remaining portions thereof. (Ord. No. 2463 (NCS).)

## Article II. Establishment of Zoning Districts and Designations.

Sec. 37-20.010. Districts established.

### Sec. 37-20.010. Districts established.

The city is divided into the following districts for the purposes of classifying, regulating, restricting, and separating the use and development of land, buildings, and structures; regulating and limiting the type, height, and bulk of buildings, improvements, and structures; and regulating areas of yards and other open areas abutting and between buildings and structures.

(a) **Base Districts.** Every parcel shall have a base district that establishes the primary type and intensity of land use permitted, along with development regulations for that particular type and intensity of land use. **Table 37-20.10** lists the base zoning districts within Salinas.

| Table 37-20.10 Base Zoning Districts Established | |
| --- | --- |
| **Base District** | **District Symbol(s)** |
| **Agricultural (A) District** | |
| Agricultural | A |
| **Residential (R) Districts** | |
| Residential Low Density (RL) | R-L-5.5 |
| Residential Medium Density (RM) | R-M-3.6, R-M-2.9 |
| Residential High Density (RH) | R-H-2.1, R-H-1.8 |
| **Commercial (C) Districts** | |
| Commercial Office/Residential | CO/R |
| Commercial Office | CO |
| Commercial Retail | CR |
| Commercial Thoroughfare | CT |
| **Mixed Use (MU) Districts** | |
| Mixed Arterial Frontage | MAF |
| Mixed Use | MX |
| **Industrial (I) Districts** | |
| Industrial--General Commercial | IGC |
| Industrial--Business Park | IBP |
| Industrial--General | IG |
| **Parks (P) and Open Space (OS) Districts** | |
| Parks | P |
| Open Space | OS |
| **Public/Semipublic (PS) District** | |

| Public/Semipublic | PS |
|---|---|
| **New Urbanism (NU) Districts** | |
| Neighborhood Edge/Low Density Residential | NE |
| Neighborhood General 1/Medium Density Residential | NG-1 |
| Neighborhood General 2/High Density Residential | NG-2 |
| Village Center | VC |
| New Urbanism Interim | NI |

(b) **Overlay Districts.** An overlay district supplements the base district for the purpose of establishing special use or development regulations for a particular area in addition to the provisions of the underlying base district. In the event of conflict between the base district regulations and the overlay district regulations, the provisions of the overlay district shall apply. **Table 37-20.20** lists the overlay districts zoned within Salinas.

| Table 37-20.20<br>Overlay Districts Established | |
|---|---|
| **Overlay District** | **District Symbol** |
| Flood | F |
| Specific Plan | SP |
| Gateway | G |
| Focused Growth | FG |
| Central City | CC |
| East Romie Lane Corridor | ERL |
| Airport | AP |

(c) **New Urbanism Districts.** The Salinas general plan has integrated principles of new urbanism into the development goals and policies for the city's long-term growth. Two base districts and two overlay districts have been established that allow a mixture of land uses and a higher density and intensity of development standards than typically described for the other zoning districts in the city. These districts provide standards for growth for designated areas outside the city and existing urbanized areas within the city and are as follows:

(1) New Urbanism (NU) Districts. The new urbanism (NU) districts, consisting of five districts: neighborhood edge/low density residential (NE), neighborhood general 1/medium density residential (NG-1), neighborhood general 2/high density residential (NG-2), village center (VC), and new urbanism interim (NI) are applied to largely undeveloped areas outside of the existing city limits that the city wishes to see developed with a mixture of pedestrian-friendly uses. Development in the new urbanism districts will be subject to the preparation of specific plans that incorporate the design standards and development and use regulations of the new urbanism districts.

(2) Mixed Use (MU) Districts. The mixed use (MU) districts, consisting of mixed use (MX) and mixed arterial frontage (MAF), are applied to areas that the Salinas general plan has identified as appropriate for a mixture of commercial, office, institutional, and business uses emphasizing retail, entertainment, and service activities at grade in addition to medium and high density residential uses. Specific use regulations and development and design standards are applied to these properties to minimize conflicts between uses and facilitate pedestrian-oriented activity centers.

(3) Focused Growth (FG) Overlay District. The focused growth (FG) overlay district is applied to existing urbanized areas that the Salinas general plan has identified for

additional growth and/or redevelopment and revitalization. In addition to the general regulations of this Zoning Code, properties located in a focused growth (FG) overlay district are subject to the more specific standards identified in *Article IV, Division 4: Focused Growth (FG) Overlay District.*

(4) Central City (CC) Overlay District. The central city (CC) overlay district, consisting of two areas, the downtown core (DC) and downtown neighborhood (DN), are applied to the existing urbanized areas of the city's downtown. In addition to the general regulations of the Zoning Code, properties located within the central city (CC) overlay district are subject to the more specific development standards and design regulations identified in *Article IV, Division 5: Central City (CC) Overlay District.* (Ord. No. 2463 (NCS).)

.

Chapter 37 ZONING*

---

## Article III. Base District Regulations.

Sec. 37-30.200. Use classifications.

### Sec. 37-30.200. Use classifications.

**Table 37-30.90** identifies the use classifications for properties located in the commercial (C) districts:

| Table 37-30.90 Commercial (C) Districts Use Classifications | | | | | |
|---|---|---|---|---|---|
| **Land Use** | **CO/R** | **CO** | **CR** | **CT** | **Additional Use Regulations** |
| **Residential Uses** | | | | | |
| Day Care Homes, Family--Large | - | - | - | - | (1)(28) |
| Day Care Homes, Family--Small | - | - | - | - | (28) |
| Duplex Dwellings | SPR | SPR | CUP | NP | |
| Home Occupations | - | - | - | - | (33) |
| Interim Housing | CUP | CUP | CUP | NP | (3) |
| Manufactured Housing | SPR | CUP | CUP | NP | |
| Multiple Detached Dwellings | SPR | SPR | CUP | NP | |
| Multifamily Dwellings | SPR | SPR | CUP | NP | |
| Residential Care Facilities--Large | CUP | CUP | CUP | NP | |
| Residential Care Facilities--Small | - | - | - | - | (34) |
| Residential Service Facilities | CUP | CUP | CUP | NP | |
| Second Dwelling Units | SPR | NP | NP | NP | (2) |
| Single-family Dwellings--Attached | SPR | SPR | CUP | NP | |
| Single-family Dwellings--Detached | P | CUP | CUP | NP | |
| Single Room Occupancy Housing | CUP | CUP | CUP | NP | (21) |

| **Mixed Uses** | | | | | |
|---|---|---|---|---|---|
| Mixed Use Buildings and Developments | SPR | SPR | SPR | NP | (26) |
| **Public and Semipublic Uses** | | | | | |
| Clubs and Lodges | CUP | CUP | CUP | NP | (23) |
| Convalescent Hospitals/Nursing Homes | CUP | CUP | CUP | NP | |
| Cultural Institutions | CUP | CUP | SPR | NP | |
| Day Care Centers | CUP | SPR | SPR | NP | |
| Government Offices | SPR | SPR | SPR | NP | |
| Hospitals | CUP | CUP | CUP | NP | |
| Mural Exhibits | SPR | SPR | SPR | SPR | (18) |
| Park and Recreation Facilities | SPR | SPR | SPR | NP | |
| Parking Lots and Structures | CUP | SPR | SPR | NP | (27) |
| Public Safety Facilities | CUP | SPR | SPR | NP | |
| Public Utility Service Yards | NP | NP | NP | NP | |
| Religious Assembly | CUP | CUP | CUP | NP | |
| Schools--Public/Private | CUP | SPR | SPR | NP | |
| Schools--Trade | NP | SPR | SPR | NP | (7)(16) |
| Telecommunications Facilities: | | | | | |
| Major | NP | CUP | CUP | CUP | (24) |
| Minor | P | P | P | P | (24) |
| Utilities--Major | NP | NP | NP | NP | (29) |
| **Commercial Uses** | | | | | |
| Adult Entertainment Facilities | NP | NP | NP | NP | (5)(23) |
| Ambulance Services | NP | NP | CUP | NP | |
| Animal Sales and Services: | | | | | |
| Animal Boarding | NP | NP | SPR | NP | (7) |
| Animal Grooming | NP | NP | SPR | NP | (7) |
| Animal Hospitals | NP | CUP | SPR | NP | (7) |
| Animal Retail Sales | NP | NP | SPR | NP | (7) |
| Antique and Collectible Shops | NP | NP | SPR | NP | |
| Artists' Studios | SPR | SPR | SPR | NP | |

| | | | | | |
|---|---|---|---|---|---|
| Automated Teller Machines (ATMs) | SPR | SPR | SPR | SPR | (31) |
| Bakeries: | | | | | |
| Retail | NP | NP | SPR | NP | |
| Wholesale | NP | NP | CUP | NP | |
| Bars | NP | NP | CUP | CUP | (23) |
| Bed and Breakfast Inns | CUP | CUP | SPR | NP | (23) |
| Building Materials and Services | NP | NP | SPR | NP | (7)(9) |
| Catering Services | NP | NP | SPR | NP | |
| Commercial Filming | NP | NP | SPR | NP | |
| Commercial Recreation and Entertainment | NP | NP | CUP | NP | (6)(23) |
| Convenience Stores: | NP | NP | SPR | SPR | (20)(23) |
| With Gas Pumps | NP | NP | SPR | SPR | (7)(8)(20)(23) |
| Entertainment, Live (Excluding Adult Entertainment) | NP | NP | CUP | NP | (17)(23) |
| Equipment Sales, Services, and Rentals | NP | NP | NP | NP | (7) |
| Financial Services | NP | SPR | SPR | NP | (31) |
| Food and Beverage Sales | NP | NP | SPR | SPR | (20)(23) |
| Fortunetelling | NP | NP | SPR | NP | (10) |
| Funeral Services | NP | SPR | SPR | NP | (22) |
| Hotels and Motels: | NP | NP | SPR | SPR | (21) |
| Extended Stay | NP | NP | NP | CUP | (21)(25) |
| Kiosks: | | | | | |
| Permanent | NP | NP | CUP | CUP | (37) |
| Temporary or Semi-permanent | NP | NP | CUP | CUP | (37) |
| Laboratories | SPR | SPR | SPR | NP | |
| Laundries: | | | | | |
| Limited | NP | NP | SPR | NP | |
| Unlimited | NP | NP | NP | NP | |
| Live-work Units | CUP | CUP | CUP | CUP | (32) |
| Maintenance and Repair Services: | | | | | |
| Major | NP | NP | NP | NP | (7) |
| Minor | NP | NP | SPR | NP | (7) |

| Marine Sales and Services | NP | NP | SPR | NP | (7) |
|---|---|---|---|---|---|
| Nurseries | NP | NP | SPR | NP | (7) |
| Offices: | | | | | |
| Business and Professional | SPR | SPR | SPR | NP | |
| Medical and Dental | SPR | SPR | SPR | NP | |
| Pawn Shops | NP | NP | CUP | NP | (36) |
| Personal Improvement Services | SPR | SPR | SPR | NP | |
| Personal Services | SPR | SPR | SPR | NP | |
| Printing and Publishing: | | | | | |
| Limited | SPR | SPR | SPR | NP | |
| Unlimited | NP | CUP | CUP | NP | |
| Recreational Vehicle Parks | NP | NP | SPR | SPR | |
| Recycling Facilities | See Section 37-50.210: Recycling facilities. | | | | |
| Research and Development Services | NP | CUP | CUP | NP | |
| Restaurants: | NP | CUP | SPR | SPR | (23) |
| With Drive-through or Drive-in Facilities | NP | NP | SPR | SPR | (23) |
| Retail Sales | CUP | CUP | SPR | NP | (11)(23) |
| Secondhand or Consignment Stores | NP | NP | SPR | NP | (35) |
| Service Stations | NP | NP | SPR | SPR | (7)(8)(23) |
| Shopping Centers | NP | NP | SPR | NP | |
| Speculative Buildings | NP | SPR | SPR | NP | (12) |
| Tattoo and/or Body Piercing Parlors | NP | NP | CUP | NP | |
| Vehicle-related Retail Sales and Services | NP | NP | SPR | NP | (7)(8) |
| Vehicle Repair Facilities: | | | | | |
| Major | NP | NP | NP | NP | (7)(8) |
| Minor | NP | NP | SPR | NP | (7)(8) |
| Vehicle Sales and Services | NP | NP | SPR | NP | (7)(8) |
| Vehicle Storage | NP | NP | NP | NP | (7) |

| Vehicle Washing | NP | NP | SPR | NP | (7)(8) |
|---|---|---|---|---|---|
| Warehousing and Storage: | | | | | |
| Limited | NP | NP | CUP | NP | (7)(13) |
| Wholesale Distribution | NP | NP | NP | NP | (7) |
| **Industrial Uses** | | | | | |
| Industrial Complexes | NP | NP | NP | NP | |
| Industry--Limited | NP | NP | NP | NP | |
| Salvage and Wrecking Operations: | | | | | |
| Nonvehicular | NP | NP | NP | NP | (19) |
| Vehicular | NP | NP | NP | NP | (19) |
| **Accessory Uses and Structures** | | | | | (14) |
| Animals--Domestic | P | P | P | P | (30) |
| Utilities--Minor | P | P | P | P | (4) |
| **Temporary Uses** | TULP | TULP | TULP | TULP | (15) |
| **Nonconforming Uses and Structures** | See Section 37-50.160: Nonconforming uses and structures. | | | | |

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) See Section

*37-50.120: Large family day care homes*.

(2) See Section

*37-50.250: Second dwelling units*. Second dwelling units are only allowed when the principal use is a detached single-family dwelling.

(3) Interim housing serving six or fewer people allowed with a SPR.

(4) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(5) See Section

*37-50.020: Adult entertainment facilities*. Adult bookstores shall be subject to the same supplemental regulations applicable to adult entertainment facilities.

(6) Commercial recreation and entertainment uses less than two thousand square feet in floor area are allowed with a SPR.

(7) See Section

*37-50.170: Outdoor storage and display* for any outdoor activity or use. In the CR district, vehicle and equipment servicing, maintenance, and repair, and lumber yards shall be conducted wholly within an enclosed structure.

(8) See Section

*37-50.260: Service stations, vehicle repair, and vehicle washing*.

(9) Building materials and service uses shall not abut an R district unless accessory to a retail use. In the CR district, contractor yards shall not be permitted.

(10) No fortunetelling use shall be located any closer than within seven hundred fifty feet of another fortunetelling use.

(11) Retail sales (as a principal use) shall be limited to professional pharmacies in the CO and CO/R districts. Minor retail sales that directly relate to the principal use are permitted as an accessory use. Such sales shall not occupy more than ten percent of the total gross floor area of the structure(s) on a site and be clearly incidental to the principal use.

(12) See Section

*37-50.280: Speculative buildings*.

(13) See Section

*37-50.320: Warehousing limited*. The CUP for limited warehousing is not subject to administrative approval pursuant to Section

*37-60.500: Administrative conditional use permits*. Approval by the planning commission shall require an affirmative vote of five members. Any CUP application receiving an affirmative vote of four members of the planning commission shall automatically be set for hearing for a final determination by the city council. All other general appeal rights remain for these CUP applications.

(14) See Section

*37-50.010: Accessory uses and structures*. Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(15) See Section

*37-50.300: Temporary use of land*.

(16) Truck and heavy equipment driving schools shall not be permitted.

(17) (a) A live entertainment permit shall be issued for live entertainment uses in accordance with Section

*37-60.500: Administrative conditional use permits*.

(b) Live entertainment, excluding adult entertainment, may be allowed in the CT district as an accessory use. A live entertainment permit shall be obtained if the live entertainment is located within three hundred feet of a residential dwelling or zone. The distance shall be measured from the closest exterior wall of the building/suite or property line of the site (if there is no building) where the live entertainment is located to the nearest property line of the site containing the residential dwelling or zone.

(18) See Section

*37-50.150: Mural exhibits*.

(19) See Section

*37-50.230: Salvage and wrecking operations*.

(20) Food and beverage sales and convenience stores shall be limited to three thousand five hundred square feet in the CT district.

(21) See Section

*37-50.270: Single room occupancy (SRO) housing*.

(22) Funeral services with crematories shall require a CUP.

(23) See Section

*37-50.030: Alcohol license review*.

(24) See Section

*37-50.290: Telecommunication facilities*.

(25) Within the CT district, hotel and motel operators may allow occupant guest stays to exceed twenty-eight days subject to approval of a CUP provided the following conditions are satisfied and contained in the CUP:

(a) At any given time, no more than twenty-five percent of the total guest rooms shall exceed a twenty-eight-day stay.

(b) Operator shall require all guests as a condition of occupancy to execute an agreement in writing that the entire stay is a transient occupancy and all guests shall remit payment of TOT to the operator for each day of occupancy regardless of length of stay. The form of agreement shall be reviewed and approved by the city.

(c) Occupant guest stays shall not exceed one hundred eighty days either consecutive, continuous, or in total, in any calendar year.

(d) Transient occupancy tax (TOT) shall be paid for each occupied guest room regardless of length of stay.

(e) Operator shall submit an annual report no later than January 31 of each calendar year to the city of Salinas demonstrating compliance with the extended stay provisions for the previous calendar year.

(f) Off-street parking: 1.25 off-street parking spaces per guest room shall be provided plus one parking space per fifty square feet of banquet seating area plus parking for other uses and facilities as required by Section

*37-50.360: Off-street parking and loading spaces regulations.*

(26) Prohibited commercial uses in mixed use residential developments include vehicle-related uses including repair, sales, service, storage, and washing; animal sales and services; maintenance and repair services; pawn shops; tattoo and/or body piercing parlors; industrial uses; and other uses deemed inappropriate by the city planner. In mixed use buildings, commercial uses shall be limited to retail, restaurants, offices, services, and similar pedestrian-oriented uses, which are deemed by the city planner to be compatible with residential uses and are permitted under the applicable zoning district.

(27) Does not apply to the parking required to serve the use per Section

*37-50.360: Off-street parking and loading spaces regulations.*

(28) Small and large family day care homes are permitted uses when the principal use is a residential dwelling unit.

(29) Water well, drainage, and flood control facilities may be considered subject to the approval of a CUP.

(30) Not more than four domestic animals are permitted per residential dwelling unit except that newborn and baby animals up to the age of three months shall not be counted.

(31) Automated Teller Machines (ATMs) are permitted in the CO/R district subject to the approval of a SPR. ATM facilities, which are located entirely within a building and are not externally accessible shall be a permitted use.

(32) See Section

*37-50.130: Live-work units.*

(33) See Section

*37-50.100: Home occupations.* Home occupations are permitted uses when the principal use is a residential dwelling unit.

(34) Small residential care facilities are permitted uses when the principal use is a residential dwelling unit.

(35) No firearm or weapon sales shall be permitted.

(36) No pawnshop shall be located closer than seven hundred fifty feet from another pawn shop.

(37) Permanent or temporary kiosks that are designed and included as part of a larger development review application for another use (such as a shopping center, retail, or restaurant use) that involves the entire subject parcel or lot where the kiosk will be located shall be subject to the same development review process as required for that use. (Ord. No. 2463 (NCS).)

Chapter 37 ZONING*

_____

## Article III. Base District Regulations.

Division 1. Agricultural (A) District.

Sec. 37-30.300. Purpose.

### Sec. 37-30.300. Purpose.

In addition to the general purposes listed in *Article I, Division 1: General Provisions*, the purpose of the industrial (I) districts regulations is to:

(a) Provide appropriately located areas consistent with the general plan for a broad range of manufacturing and service uses;

(b) Strengthen the city's economic base, and provide employment opportunities close to home for residents of the city and surrounding communities;

(c) Minimize the impact of industrial uses on adjacent residential and commercial districts; and

(d) Promote safe industrial areas through the incorporation of crime prevention through environmental design (CPTED) features in development;

(e) The additional purposes of each industrial (I) district are as follows:

(1) Industrial-General Commercial (IGC) District. The industrial-general commercial (IGC) district provides for a range of retail, wholesale, and service businesses not generally suitable in commercial districts because they attract heavy automobile and truck traffic or have certain adverse impacts; and to provide opportunities for certain limited manufacturing uses that have impacts comparable to those of retail and service.

(2) Industrial-Business Park (IBP) District. The industrial-business park (IBP) district regulations allow development of sites with high architectural and landscape standards for industrial office centers, limited manufacturing, warehousing and large-scale, single destination retail and other limited retail uses which may not be appropriate in retail areas.

(3) Industrial-General (IG) District. The industrial-general (IG) district regulations provide for the full range of manufacturing, industrial processing, general service, and distribution uses deemed suitable for location in Salinas; and protect Salinas' general industrial areas from competition for space from unrelated commercial uses that could more appropriately be located elsewhere in the city. (Ord. No. 2463 (NCS).)

## Article V. Supplemental Regulations Applying to All Districts.

Sec. 37-50.020. Adult entertainment facilities.

Sec. 37-50.160. Nonconforming uses and structures.

### Sec. 37-50.020. Adult entertainment facilities.

(a) **Purpose.** The purpose of this section is to establish regulations governing adult entertainment facilities. The city council recognizes that certain types of adult entertainment facilities possess certain objectionable operational characteristics, which if such uses are allowed to concentrate, will have adverse effects upon the character of the affected area and adjacent neighborhoods. The city council further recognizes that locating adult entertainment facilities in close proximity to facilities frequented by minors will cause the exposure of minors to adult material that may adversely affect such minors due to their immaturity. Additionally, the city council recognizes that while certain adult entertainment enjoys limited protection under the First Amendment to the United States Constitution, substantial numbers of the citizens of the city are offended by the public display of sexually oriented material. Special and limited regulation of adult entertainment uses, consistent with the First Amendment rights of such uses, is therefore necessary to ensure that the adverse effects of adult entertainment uses will not (1) contribute to the blighting or downgrading of zones in which they are permitted or the downgrading of surrounding neighborhoods; (2) adversely affect minors; and (3) offend those citizens of the city who do not wish to be exposed to sexually oriented material.

(b) **Definitions.** The following definitions shall apply to this section:

(1) Adult Bookstore. An establishment where:

(A) Twenty percent or more of the establishment's stock, books, magazines, or other periodicals or films are devoted to "specified sexual activities" or "specified anatomical areas"; or

(B) Twenty percent or more of the establishment's films, peepshows, or other similar devices designed for individual viewing on the premises by up to five persons are devoted to "specified sexual activities" or "specified anatomical areas"; or

(C) Twenty percent or more of the establishment's actual display areas, including without limitation, the areas for the viewing of films, peepshows, or similar devices are substantially devoted to the exhibition of "specified sexual activities" or "specified anatomical areas." This definition does not apply to displays of up to ten periodicals or films in the premises, by title in which sales or rental of the same are incidental to other businesses. Nor does this definition include any art or photography publications depicting the specified anatomical areas defined in this section when such publication devotes at least twenty-five percent of the lineage of each edition to articles and advertisements dealing with the subjects of art or photography. Nor does this definition apply to any news periodical which reports or describes current events and which, from time to time, publishes photographs of nude or semi-nude persons when describing cultures in which nudity or semi-nudity is indigenous to the population. Nor does this definition apply to bona fide education or medical publications.

(2) Adult Entertainment Facility. Any facility which includes an adult bookstore, an adult motion picture theater, an adult live entertainment establishment or any other place of business of any similar purpose, operation, or function regardless of whether any other use is also conducted on the premises.

(3) Adult Live Entertainment Establishment. A building or structure or portion thereof used

or proposed to be used for presenting live entertainment in which more than forty-five days per calendar year there are live entertainment performances which are substantially devoted to the exhibition of the specified sexual activities or the specified anatomical areas, as defined in this section, for the observation and viewing by patrons therein.
(4) Adult Motion Picture Theater. An establishment, including a building, structure, drive-in theater, or part thereof used for presenting material in the form of motion picture film, video tape, or other similar means, designed for observation by five or more persons, in which more than forty-five days per calendar year any one or more programs are shown which are substantially devoted to the depiction of the specified sexual activities or specified anatomical areas as defined in this section. Whenever more than one screen or theater exists in any single premises, the total number of days that the films described in this section are shown on each screen or in all theaters on the premises shall be added together for the purpose of determining if the premises is an adult motion picture theater.
(5) Specified Anatomical Areas.
(A) Less than completely and opaquely covered human genitals, human buttocks, and human female breast below a point immediately above the top of the areola; and
(B) Human male genitals in a discernibly turgid state, even if completely and opaquely covered.
(6) Specified Sexual Activities.
(A) Human genitals in a state of sexual stimulation or arousal;
(B) Sexual intercourse, masturbation, oral copulation, or sodomy, whether between humans of the same or opposite sex or between humans and animals; and
(C) Fondling or other erotic touching or sexual stimulation of human genitals, pubic region, buttock, or female breast.

(c) **Location of Adult Entertainment Facilities.**
(1) No person shall own or operate any adult entertainment facility if that facility is located:
(A) Within two thousand feet of any other adult entertainment facility;
(B) Within one thousand feet of any pre-existing public or private school attended primarily by minors under eighteen years of age;
(C) Within one thousand feet of any pre-existing parcel in the central city overlay (downtown core area) district;
(D) Within two hundred fifty feet of any pre-existing church;
(E) Within two hundred fifty feet of any pre-existing public park or recreation facility which is available for use by minors; and
(F) Within two hundred fifty feet of any pre-existing residential district.
(2) The distance shall be measured from the closest exterior wall of the building/suite or property line of the site (if there is no building) where the adult entertainment facility is located to the nearest property line of the site containing those uses specified in *Section 37-50.020(c)(1)(A)* through (*F*) above.
(3) An adult entertainment facility shall only be permitted where the applicable zoning district regulations specifically provide for adult entertainment facilities.

(d) **Public Display of Certain Matter Prohibited.** Adult entertainment facilities shall not display or exhibit any material depicting specified anatomical areas or specified sexual activities in a manner that exposes such material to the view of persons outside the building in which such facility is located.

(e) **Notice Required.** On or near any public entrance to every adult entertainment facility there shall be a sign with letter sizes of one inch or greater stating:

**NOTICE:**

**THIS ESTABLISHMENT CONTAINS ADULT ENTERTAINMENT MATERIALS.
IF YOU ARE OFFENDED BY SUCH MATERIALS,
PLEASE REFRAIN FROM ENTERING.**

(f) **Determining Distances Between/From Adult Entertainment Facilities.** For the purpose of determining the distances between the public entrance into the adult entertainment facility, the measurement shall be from the nearest public entrance into the adult entertainment facility (as contrasted with a nonpublic entrance, an exit used solely for

egress, the nearest lot line of the parcel upon which the use is located or the nearest part of the structure in which it is housed) then along the nearest public street or streets to the nearest lot line of the use being measured. (Ord. No. 2463 (NCS).)

## Sec. 37-50.160. Nonconforming uses and structures.

(a) **Purpose.** The purpose of this section is to limit the number and extent of nonconforming uses by controlling their enlargement, their reestablishment following abandonment, their alteration, and their restoration after cessation due to destruction of the structures containing them. This section, while permitting the use and maintenance of nonconforming structures, limits them by prohibiting their restoration following destruction and by prohibiting alteration, enlargement or relocation upon the site in any manner that would increase the discrepancy between the standards contained in this division and the conditions existing on the subject property.

(b) **Continuation and Maintenance of Nonconforming Uses.**

(1) A use, lawfully occupying a structure or a site on the effective date of the ordinance codified in this chapter, or of amendments thereto, that does not conform with the use regulations for the district in which it is located or the applicable lot area per dwelling unit regulations shall be deemed a nonconforming use. Nonconforming uses may only be continued subject to the requirements of this division.

(2) A use that does not conform with the parking, loading, screening, open space, or planting area regulations of the zoning district in which it is located shall not be deemed a nonconforming use solely on the basis of these deficiencies.

(3) No nonconforming use shall be enlarged or extended to occupy any part of a structure or site that it did not occupy on the effective date of the ordinance codified in this chapter, or of the amendments hereto that cause it to become a nonconforming use.

(4) No structure or use that fails to meet the performance standards of Section 37-50.180: Performance standards, shall be enlarged or extended unless conditions are imposed and implemented, which will result in elimination of the nonconformity with the required conditions.

(5) A structure containing or serving a nonconforming use shall not be relocated, enlarged, or structurally altered unless required by law or for health/safety reasons, or unless the relocation, enlargement, or alteration eliminates or reduces the extent of the nonconformity.

(6) No structure partially occupied by a nonconforming use shall be relocated, altered, or enlarged in such a way as to permit the enlargement or the expansion of the space occupied by the nonconforming use.

(7) A structure containing or serving a nonconforming use may be maintained and repaired, provided that the cost of the maintenance and repair does not exceed fifty percent of the cost to replace the structure as determined by the city planner in the same manner as the building official determines final valuation for the purposes of building permit fees.

(c) **Continuation and Maintenance of Nonconforming Structures.**

(1) A structure, lawfully occupying a site on the effective date of the ordinance codified in this chapter, or amendments thereto, which fails to meet certain development standards established in this chapter and enumerated in this section shall be deemed a nonconforming structure. Nonconforming structures may be continued, maintained, and expanded subject to the requirements of this division. Development standards addressed by this paragraph include: size of yards, height of structures, driveways, distance between structures, maximum floor area, and required parking or open space.

(2) A nonconforming structure may be structurally altered, enlarged, or reconstructed provided there is no increase in the discrepancy with the standards referenced in the section for the zoning district in which the structure is located and the structure is similar in character to the original structure. Routine maintenance and repairs may be performed on nonconforming structures.

(3) In the case of an enlargement or an addition, the development standards referenced in this section shall only be applicable to the enlargement or addition and not the entire structure.

(d) **Restoration of a Damaged Structure.**

(1) Where Damage Causes Less Than Fifty Percent of Replacement Cost. Whenever a structure that does not comply with the standards for front yards, side yards, rear yards, height of structures, maximum floor area, distances between structures, driveways, or usable open space prescribed in the regulations for the district in which the structure is located, or the use of which does not conform with the regulations for the district in which it is located, is destroyed by fire or other calamity to the extent of less than fifty percent of replacement cost, the structure may be restored and the nonconforming use may be resumed, provided that restoration is started within twelve months and diligently pursued to completion. Floodplain management requirements must also be met.

(2) Where Damage Causes Fifty Percent or Greater of Replacement Cost. Whenever a structure that does not comply with the standards for front yards, side yards, rear yards, height of structures, maximum floor area, distances between structures, driveways or usable open space prescribed in the regulations for the district in which it is located, or the use of which does not conform with the regulations for the district in which it is located, is destroyed by fire or other calamity, to an extent fifty percent or greater of replacement cost, the structure shall not be restored except in full conformity with the regulations for the district in which it is located, and the nonconforming use shall not be resumed except as follows:

(A) A property containing a single-family dwelling unit, multifamily consisting of up to four dwelling units, or a residential condominium structure in R, NU (NE, NG-1, and NG-2), and CO/R districts which does not conform to standards for setbacks, height of structures, distance between structures, usable open space, or lot area per dwelling unit may be rebuilt with the same floor area, whatever the extent of the damage, provided that the nonconformity is not enlarged to the extent it would increase the discrepancy between conditions existing at the time of the damage and the standards prescribed in this chapter. (B) Commercial office structures which conform to parking requirements in effect prior to the adoption of this Zoning Code shall not be considered nonconforming structures as a result of the adoption of this Zoning Code and may be rebuilt with the same floor area, whatever the extent of the damage, provided that parking or parking lot landscaping is the only nonconformity.

(3) The extent of damage or partial destruction shall be determined by the city planner in the same manner as the building official determines final valuation for the purposes of building permit fees. Valuation shall be based upon the cost to replace the structure at the time the damage occurs. The determination of the city planner may be appealed in accordance with *Article VI, Division 17: Appeals*.

(e) **Elimination of Nonconforming Uses and Structures.**

(1) Nonconforming Use When No Structure Involved. In any district the nonconforming use of land shall be discontinued within one year from the date of notification in accordance with the provisions of this section.

(2) Nonconforming Use of a Structure. All nonconforming uses of a structure shall be discontinued within the time periods specified below, unless an exception is granted pursuant to *Section 37-50.160(e)(3)* below:

(A) R and NU (NE, NG-1, and NG-2) districts: three years from the date of notification in accordance with the provisions of this section, except that nonconforming residential uses located in residential zoning districts shall not be required to be discontinued as a result of this section;

(B) A, C, MU, NU (VC), I, OS, P, and PS districts: ten years from the date of notification in accordance with the provisions of this section.

(3) Notification and Exception Procedures. The city planner may determine those properties for which lawfully existing uses were rendered nonconforming by reason of adoption of the ordinance codified in this chapter and the zoning map. Written notice of the city planner's determination of such nonconformance, the termination procedures, and the

requirements of this section shall be mailed to all owners of record and to the occupant of each such property. Within one year of the date of mailing of such notice, any property owner, lessee with the consent of the owner, or purchaser of such property acting with the consent of the owner may apply to have such property excepted from the provisions of this section as follows:

(A) Application Requirements. An exception from the requirements of this section shall be initiated by submitting an application to community planning and development.

(B) Commission Action. The planning commission shall hold a duly noticed public hearing within a reasonable time on each application for an exception from the termination requirements of this section. Following the hearing, the commission may determine whether the use of the property on the date of adoption of the ordinance codified in this Zoning Code is compatible with and not detrimental to the land uses designated in the general plan for the surrounding area and properties, and may issue a certificate of exception. The commission may recommend such conditions as it may find necessary to ensure compatibility including, but not limited to, required improvement of or modifications to existing improvements on the property; limitations on hours of operations; limitations on the nature of operations; and a specified term of years for which the exception shall be granted.

(C) Appeal of Commission Action. The decision of the planning commission may be appealed in accordance with *Article VI, Division 17: Appeals*.

(f) **Abandonment of Nonconforming Use.**

(1) A nonconforming use that is abandoned, discontinued, or changed to a conforming use for a continuous period of one hundred eighty days or more shall not be re-established, and the use of the structure or site thereafter shall be in conformity with the regulations for the district in which it is located.

(2) The city planner may extend the one-hundred-eighty-day limit for re-establishing a nonconforming use if a property owner can demonstrate to the city planner's satisfaction based on substantial evidence that the use has not been abandoned, discontinued, or changed and that the re-establishment of the use is being diligently pursued or that a building permit for reconstruction, without alteration or enlargement, has been issued. The decision of the city planner may be appealed to the planning commission in accordance with *Division 17: Appeals*.

(g) **Minor Exceptions.**

(1) The planning commission or city planner may grant minor exceptions from certain regulations contained in this section as follows:

(A) Construction of raised grade stairways, architectural archways, architectural entry features and covered porches in required yards and required open space;

(B) Construction of a residential addition including a second or third story that will be equal to or less than the existing legal nonconforming setback. A residential addition includes attached or detached covered parking (garages and carports);

(C) Alteration of historic resources and landmarks whereby the structure's historical or architectural integrity may be affected;

(D) Replacement of an existing detached accessory structure that encroaches into required setbacks, when all of the following findings are made:

(i) The replacement detached accessory structure's encroachment(s) into the required setback(s) will be equal to or less than the existing detached accessory structure's respective setback(s) encroachment,

(ii) The roof of a detached accessory structure located within five feet of any property line shall be equipped with a rain gutter or otherwise designed to prevent roof runoff from draining onto adjacent property,

(iii) The replacement structure will not exceed the maximum square footage permitted for accessory structures under *Section 37-50.010(f)(3)*,

(iv) The replacement structure will be of the same nature as the original detached accessory structure (e.g., garage to garage, gazebo to gazebo).

(2) Application. Applications for a minor exception shall be initiated by submitting an

application for a minor conditional use permit for a minor exception to community planning and development. (Ord. No. 2463 (NCS).)

Chapter 37 ZONING*

_____

## Article VI. Administration.

Division 8. Conditional Use Permits.

Sec. 37-60.520. Required findings.

Division 17. Appeals.

Sec. 37-60.1270. Purpose.

Sec. 37-60.1300. Appellate authority.

### Sec. 37-60.520. Required findings.

The city planner or planning commission, as applicable, shall approve an application for a conditional use permit as it was applied for or in modified form if, on the basis of the application and testimony submitted, all of the following findings can be made:
(a) That the proposed location of the use is in accordance with the objectives of the Salinas general plan, this Zoning Code, and the purposes of the district in which the site is located;
(b) That the proposed location of the conditional use and the proposed conditions under which it would be operated or maintained are consistent with the Salinas general plan and will not be detrimental to the public health, safety, or welfare of persons residing or working in or adjacent to the neighborhood of such use, nor detrimental to properties or improvements in the vicinity or to the general welfare of the city; and
(c) That the proposed conditional use complies with the provisions of this Zoning Code, including any specific conditions required for the proposed use. (Ord. No. 2463 (NCS).)

### Division 17. Appeals.

### Sec. 37-60.1270. Purpose.

(a) The purpose of this division is to provide a process to govern the appeals of discretionary decisions of the city planner and planning commission; and
(b) To avoid results inconsistent with the purposes of this Zoning Code, decisions of the city planner may be appealed to the planning commission, and decisions of the planning commission may be appealed to the city council. **Figure 37-60.120** illustrates the appeals process. (Ord. No. 2463 (NCS).)



**Figure 37-60.120**
**Process for Appeals of Decisions**

### Sec. 37-60.1300. Appellate authority.

(a) **Hearing Date for Appeal.** An appeal shall be scheduled for a hearing before the appellate body within sixty days of the city's receipt of an appeal unless both applicant and appellant consent to a later date.

(b) **Notice and Public Hearing.** An appeal hearing shall be a public hearing. Notice of the public hearing shall be given in accordance with *Division 7: Public Hearing Notice* of this article.

(c) **Hearing.** The hearing before the appellate body shall be de novo. At a de novo hearing, the appellate body may hear all such testimony and evidence on the entirety of the application as may be presented by any person at that appeal hearing. If relevant new evidence that was not known and could have been known at the original hearing is presented at the appeal hearing the application may be returned to the planning commission. At the appeal hearing, the appellate body shall review the record of the decision and hear testimony of the appellant, the applicant, and any other interested party.

(d) **Decision and Notice.**

(1) The appellate body may reject an appeal for failure of the appellant to present all the evidence available to him or her at the time of the original hearing on the application if the appellant had notice of the original hearing.

(2) After the hearing, the appellate body shall affirm, affirm with conditions, modify, or reverse the original decision. When a decision is modified or reversed, the appellate body shall state the specific reasons and make findings as necessary to support its decision.

(3) The appellate body may designate such conditions, as it deems necessary to secure the purposes of this Zoning Code. Such conditions may include monitoring to assure compliance with the conditions set forth in the decision. Other conditions may include, but are not limited to, health and safety requirements, architectural and site approval, time limitations, street dedications, and street and drainage improvements. The appellate body may also require such security and guarantees, as it deems appropriate to assure compliance with the conditions imposed.

(4) The city planner shall mail notice of a planning commission decision and the city clerk shall mail notice of a city council decision. Such notice shall be mailed within ten working days after the date of the decision to the applicant, the appellant, and any other party requesting such notice.

(5) In the event that the planning commission is unable to affirm, modify, or reverse the original decision because a motion on the appeal fails to receive majority vote resulting in no action being taken by the planning commission, the appeal shall be forwarded directly to the city council with a record of the planning commission's vote and the proceedings thereon.

(6) A planning commission decision on an appeal may be appealed to the city council in accordance with the provisions of *Sections 37-60.1280: Initiation of appeal* and *37-60.1290: Time limits*. (Ord. No. 2463 (NCS).)

**Table *37-30.130*** identifies the use classifications for properties located in industrial (I) districts:

| Table *37-30.130* Industrial (I) Districts Use Classifications | | | | |
|---|---|---|---|---|
| **Land Use** | **IGC** | **IBP** | **IG** | **Additional Use Regulations** |
| **Public and Semipublic Uses** | | | | |
| Airports and Heliports | NP | CUP | CUP | (12) |
| Clubs and Lodges | CUP | NP | NP | (19) |
| Convalescent Hospitals/Nursing Homes | NP | NP | NP | |
| Cultural Institutions | NP | NP | NP | |
| Day Care Centers | SPR | CUP | CUP | (17) |
| Government Offices | SPR | SPR | SPR | |
| Hospitals | NP | NP | NP | |
| Mural Exhibits | SPR | SPR | SPR | (13) |
| Park and Recreation Facilities | CUP | NP | NP | |
| Parking Lots and Structures | SPR | SPR | SPR | (24) |
| Public Safety Facilities | SPR | SPR | SPR | |
| Public Utility Service Yards | SPR | NP | SPR | (9) |
| Religious Assembly | NP | NP | NP | |
| Schools--Public/Private | NP | NP | NP | |
| Schools--Trade | SPR | SPR | SPR | (9) |
| Telecommunications Facilities: | | | | |
| Major | CUP | CUP | CUP | (20) |
| Minor | P | P | P | (20) |
| Utilities--Major | CUP | CUP | CUP | |
| **Commercial Uses** | | | | |
| Adult Entertainment Facilities | SPR | NP | CUP | (3)(19) |
| Ambulance Services | SPR | SPR | SPR | |
| Animal Sales and Services: | | | | |

| | | | | |
|---|---|---|---|---|
| Animal Boarding | SPR | SPR | SPR | |
| Animal Grooming | SPR | NP | NP | |
| Animal Hospitals | SPR | SPR | SPR | |
| Animal Retail Sales | SPR | NP | NP | |
| Artists' Studios | SPR | SPR | SPR | |
| Automated Teller Machines (ATMs) | SPR | SPR | SPR | (18) |
| Bakeries: | | | | |
| Wholesale | SPR | SPR | SPR | |
| Bars | CUP | NP | NP | (19) |
| Building Materials and Services | SPR | NP | SPR | (1)(9) |
| Catering Services | SPR | NP | NP | |
| Commercial Recreation and Entertainment | CUP | CUP | CUP | (5)(19) |
| Convenience Stores: | CUP | NP | CUP | (19)(23) |
| With Gas Pumps | CUP | NP | CUP | (9)(19)(23) |
| Equipment Sales, Services, and Rentals | SPR | NP | SPR | (9) |
| Financial Services | CUP | SPR | CUP | (18) |
| Food and Beverage Sales | SPR | NP | NP | (19) |
| Laboratories | SPR | SPR | SPR | |
| Laundries: | | | | |
| Limited | SPR | NP | NP | |
| Unlimited | SPR | NP | SPR | |
| Maintenance and Repair Services: | | | | |
| Major | SPR | NP | SPR | (9) |
| Minor | SPR | SPR | SPR | (9) |
| Marine Sales and Services | SPR | NP | SPR | (4)(9) |
| Nurseries | SPR | NP | SPR | |
| Offices: | | | | |

| | | | | |
|---|---|---|---|---|
| Business and Professional | CUP | SPR | CUP | (26) |
| Medical and Dental | NP | CUP | NP | (26) |
| Printing and Publishing: | | | | |
| Limited | SPR | SPR | SPR | |
| Unlimited | SPR | SPR | SPR | |
| Recreational Vehicle Parks | SPR | NP | NP | |
| Recycling Facilities | See *Section 37-50.210: Recycling facilities.* | | | |
| Research and Development Services | SPR | SPR | SPR | |
| Restaurants: | SPR | CUP | CUP | (19) |
| With Drive-through or Drive-in Facilities | SPR | CUP | CUP | (19) |
| Retail Sales | SPR | SPR | SPR | (4)(19) |
| Service Stations | SPR | CUP | SPR | (4)(9)(19) |
| Speculative Buildings | SPR | SPR | SPR | (7) |
| Vehicle-related Retail Sales and Services | SPR | NP | NP | (6)(14) |
| Vehicle Repair Facilities: | | | | |
| Major | SPR | NP | SPR | (6)(9) |
| Minor | SPR | SPR | SPR | (6)(9) |
| Vehicle Sales and Services | SPR | NP | SPR | (6)(9)(22) |
| Vehicle Storage | CUP | CUP | CUP | (9) |
| Vehicle Washing | SPR | NP | SPR | (6)(9) |
| Warehousing and Storage: | | | | |
| Limited | CUP | CUP | CUP | (8)(9) |
| Wholesale Distribution | SPR | SPR | SPR | (9) |
| **Industrial Uses** | | | | |
| Chemical Manufacturing/Processing | NP | NP | CUP | |
| Industrial Complexes | SPR | SPR | SPR | (21) |
| Industry: | | | | |
| General | NP | NP | SPR | (4)(19)(25) |
| Limited | SPR | SPR | SPR | (4)(19) |

| Salvage and Wrecking Operations: | | | | |
|---|---|---|---|---|
| Nonvehicular | CUP | NP | CUP | (15)(16) |
| Vehicular | CUP | NP | CUP | (15)(16) |
| Speculative Buildings | SPR | SPR | SPR | |
| Transfer Stations: | CUP | NP | CUP | |
| Hazardous Waste | NP | NP | CUP | |
| Truck Depot | NP | NP | SPR | (6)(9) |
| **Accessory Uses and Structures** | | | | (11) |
| Utilities--Minor | P | P | P | (2) |
| **Temporary Uses** | TULP | TULP | TULP | (10) |
| **Nonconforming Uses and Structures** | See *Section 37-50.160: Nonconforming uses and structures*. | | | |

Notes:

P = Permitted Use

NP = Not Permitted Use

CUP = Conditional Use Permit Required

SPR = Site Plan Review Required

TULP = Temporary Use of Land Permit Required

(1) Building materials and service uses shall not adjoin any R district.

(2) Minor utilities shall not unreasonably interfere with the use, enjoyment, or aesthetics of adjacent uses.

(3) See Section

*37-50.020: Adult entertainment facilities*. Adult bookstores shall be subject to the same supplemental regulations applicable to adult entertainment facilities.

(4) In the industrial districts only accessory retail sales limited to thirty percent of the total square footage of all structures on a site or two thousand five hundred square feet, whichever is less, shall be allowed excluding convenience stores. Goods being sold at retail must be directly related to those uses, which are permitted uses requiring a SPR, or uses which require a CUP, on the site.

(5) Commercial recreation and entertainment uses less than two thousand square feet in floor area are allowed with a SPR.

(6) See Section

*37-50.260: Service stations, vehicle repair, and vehicle washing*.

(7) See Section

*37-50.280: Speculative buildings*.

(8) See Section

*37-50.320: Warehousing limited*. The CUP for limited warehousing is not subject to administrative approval pursuant to Section

*37-60.500: Administrative conditional use permits*. Approval by the planning commission shall require an affirmative vote of five members. Any CUP application

receiving an affirmative vote of our members of the planning commission shall automatically be set for hearing for a final determination by the city council. All other general appeal rights remain for these CUP applications.

(9) See Section

*37-50.170: Outdoor storage and display* for any outdoor activity or use.

(10) See Section

*37-50.300: Temporary use of land.*

(11) See Section

*37-50.010: Accessory uses and structures.* Accessory uses and structures will require a SPR or a CUP if required for the principal use.

(12) Heliports shall be located more than one thousand feet from an R district. Heliports used exclusively for emergency aircraft flights for medical purposes by law enforcement, fire fighting, military, or other persons who provide emergency flights for medical purposes do not require a CUP.

(13) See Section

*37-50.150: Mural exhibits.*

(14) The maximum floor area allowed for any structure devoted to vehicle-related retail sales and services is limited to seventy-five thousand square feet in the IGC district.

(15) See Section

*37-50.230: Salvage and wrecking operations.*

(16) Salvage and wrecking operations shall not adjoin an arterial street or U.S. Highway 101.

(17) Day care may be considered in the IBP and IG districts subject to approval of a CUP for an existing industrial facility which is at least six acres in size and where the day care facility will be located a minimum of five hundred feet from the nearest property line.

(18) ATM facilities, which are located entirely within a building and are not externally accessible shall be a permitted use.

(19) See Section

*37-50.030: Alcohol license review.*

(20) See Section

*37-50.290: Telecommunication facilities.*

(21) Uses within an industrial complex must be otherwise authorized by SPR within the zoning district.

(22) Vehicle sales and services (including vehicle rentals) in the IG district shall be limited to vehicles which meet one or more of the following requirements:

(a) The vehicle must have a minimum gross vehicle weight rating (GVWR) of twenty-six thousand one pounds or more; or

(b) The vehicle is designed or used for carrying more than ten passengers (including the driver); or

(c) The vehicle is designed or able to tow a vehicle or trailer which has a GVWR of ten thousand one pounds or more; or

(d) The vehicle is designed or able to tow any combination of two trailers or a vehicle and a trailer.

(23) Convenience stores shall be limited to two thousand five hundred square feet in the IGC and IG districts.

(24) Does not apply to the parking required to serve the use per Section

*37-50.360: Off-street parking and loading spaces regulations.*
(25) In the IG district, wineries may have tasting rooms as an accessory use limited to thirty percent of the total square footage of all structures on a site or two thousand five hundred square feet whichever is less.
(26) In the IGC and IG districts, accessory business and professional offices shall be limited to thirty percent of the total square footage of all structures on a site or two thousand five hundred square feet, whichever is less. Business and professional offices, which are not directly related to the principal use on-site or accessory offices that exceed the thirty percent limitation referenced above, may be considered subject to the approval of a CUP.
(Ord. No. 2463 (NCS).)